**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| 431 E PALISADE AVENUE REAL ESTATE, LLC and 7 NORTH WOODLAND STREET, LLC, on behalf of themselves and prospective residents, JOHN and JANE DOES 1-10 <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF ENGLEWOOD and CITY COUNCIL OF ENGLEWOOD, <br><br> Defendants. | Civil Action No. _____ <br><br> **VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs, 431 E Palisade Avenue Real Estate, LLC and 7 North Woodland Street, LLC ("Plaintiffs"),[1] as well as their prospective residents, John and Jane Does 1-10, who include individuals that practice Orthodox Judaism, by and through their undersigned counsel and by way of Verified Complaint against defendants, the City of Englewood (the "City") and the City Council of Englewood (the "Council" and, together with the City, collectively, "Defendants"), allege and state as follows:

I.   **INTRODUCTION**

1.      The City's facially unconstitutional zoning code (the "Code") impermissibly segregates assisted living facilities to a small portion of the City surrounded by industrial zones. By enforcing the Code, Defendants have prohibited the development of assisted living and memory care homes for elderly and handicapped individuals in residential neighborhoods.

2.      In that regard, enforcement of the Code's restrictions severely limits access to assisted living, memory care, and similar facilities by those who have serious impediments to

---

[1] "Plaintiffs" herein will generally refer to plaintiffs 431 E Palisade Avenue Real Estate, LLC and 7 North Woodland Street, LLC unless the prospective residents, John and Jane Does 1-10, are otherwise specified.

47967/0023-17493470v2

their ability to travel to the segregated industrial zones, especially members of the City's Orthodox Jewish community.

3.      Enforcement of the Code has, among other things: (i) perversely deprived elderly and handicapped residents of the right to live in residential neighborhoods while receiving assistance with life's daily activities; and (ii) precluded members of the City's Orthodox Jewish community from visiting elderly family, friends, and congregants on Shabbat.

4.      Such discrimination should not be countenanced.   Elderly and handicapped residents of the City, including members of the Orthodox Jewish community, should not be required to live isolated from their families and faith communities simply because they require assistance for their disabilities in a congregant living setting.   Federal and state laws recognize and protect these well-settled rights.   The City, however, has failed to do so and has instead continued to enforce the unconstitutional and discriminatory Code.

5.      For example, and as elaborated upon below, for the past two years, Plaintiffs have unsuccessfully pursued a reasonable accommodation from the Council to allow a 150-bed assisted living and memory care home to be built in a residential neighborhood in the City (the "Facility").

6.      If established, the Facility will reasonably accommodate housing for elderly, handicapped persons in a residential district in the City, as well as lift the substantial burden on religious exercise that the Code imposes.   The Code, however, excludes those uses from all residentially zoned land in the City.   As a result, no assisted living or memory care homes exist in any of the City's residential areas.

7.      But for the discriminatory Code, there would be no legitimate basis to prevent the Facility from being developed.   Plaintiffs' proposed assisted living and memory care home will

47967/0023-17493470v2

be located on a major road, replace vacant and dilapidated structures, and has been styled with Tudor architecture and landscaping to blend with and enhance its surroundings.  Nevertheless, despite Plaintiffs' repeated efforts, the Council will not take up Plaintiffs' proposal at all, much less provide any relief.

8.      Making matters worse, Plaintiffs are now in danger of losing a portion of the Property upon which the Facility is to be built.  Specifically, Plaintiffs have a contract to acquire one of the two parcels of land necessary to build the Facility (Plaintiffs already own the other parcel outright).  On August 9, 2019, however, Plaintiffs' time-period within which to obtain necessary approvals for the Facility will expire.  If Plaintiffs do not obtain necessary approvals or a Court order allowing development of the Facility to proceed by that time, Plaintiffs are at risk that the seller will exercise its right to terminate the sale agreement.

9.      The City cannot enforce zoning laws or policies that result in the segregation of its elderly and handicapped residents into industrial areas, or that impermissibly burden religious exercise and institutions.  Left with no alternative, and facing immediate, irreparable harm, Plaintiffs now turn to this Court to compel City's compliance with the law.

10.      Plaintiffs seek and are entitled to an order enjoining the Defendants' enforcement of the discriminatory Code, pending a full adjudication on the merits, at which time Plaintiffs will be entitled to permanent injunctive relief, compensatory damages, punitive damages, and attorneys' fees and costs, and asserts claims under the Constitution of the United States, 42 U.S.C. § 1983, 42 U.S.C. § 12132 (the "Americans with Disabilities Act" or "ADA"), 42 U.S.C. § 3601 (the "Fair Housing Act" and, as amended, the "FHAA"), 29 U.S.C. § 791 (the "Rehabilitation Act" or "RA"), the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc (the "RLUIPA"), the Constitution of the State of New Jersey, "the New Jersey

47967/0023-17493470v2

Municipal Land Use Law, N.J.S.A. 40:55D-62 *et seq.* (the "MLUL"), and N.J.S.A. 10:5-1 (the "New Jersey Law Against Discrimination" or "NJLAD").

## II.    JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over the federal claims alleged in this Complaint pursuant to 28 U.S.C. § 1331, in that the claims asserted herein are civil claims arising under 28 U.S.C. § 1343 (civil rights), the Americans with Disabilities Act, the Fair Housing Amendments Act, the Rehabilitation Act, as well as the United States Constitution as applied to state and/or local authorities through 42 U.S.C. § 1983.

12.    This Court has supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367, as those state law claims are related to the federal claims identified above and the state and federal claims form part of the same case or controversy under Article III of the United States Constitution.

13.    Venue is proper under:  (i) 28 U.S.C. § 1391(b)(1) because the City is a body politic within the District of New Jersey and the Council is located and operates within the District of New Jersey; and (ii) 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claims set forth herein occurred in the District of New Jersey and all of the real property that is the subject of the action is situated in the District of New Jersey.

## III.    THE PARTIES

14.    Plaintiffs are limited liability companies with offices at 173 Bridge Plaza North, Fort Lee, New Jersey 07024.  Plaintiffs are affiliated with CareOne, LLC, as well as the entity that will manage the Facility, 431 E. Palisade Avenue OpCo, LLC (collectively, "CareOne"), which also has offices at 173 Bridge Plaza North, Fort Lee, New Jersey 07024.

4

15. Plaintiffs also represent the interests of their future handicapped, elderly residents, as well as those future residents who reside in the City and practice Orthodox Judaism, referred to herein as John and Jane Does 1-10.

16. The City is a municipal corporation with an address of 2-10 North Van Buren Street, Englewood, New Jersey 07631. Under the MLUL, the City has the power to zone.

17. The Council is a municipal legislative body with an address of 2-10 North Van Buren Street, Englewood, New Jersey 07631. The Council is created by statute and is vested with the authority under the MLUL to, *inter alia*, pass zoning ordinances of general application and implement the Master Plan. Further, under the Charter of the City of Englewood (the "Charter"), "[a]ll powers of the municipality and the determination of all matters of policy shall be vested in the council, except as otherwise provided by the charter or by general law." Charter, Art. IV, § 4.1.

## IV. BACKGROUND AND FACTS

### A. Overview.

18. Like much of New Jersey and the nation, the City's population is becoming "grayer." As such, demand for assisted living and memory care continues to rise. See Certification of Thomas Herten ("Herten Cert."), ¶ 2, Exhibit B (Master Plan), p. 30.[2]

19. Plaintiffs propose to establish the Facility on four parcels of property in the City, one of which the Plaintiffs already have acquired and the other three of which the Plaintiffs are under contract to acquire (the "Property").

20. The Facility will provide the only assisted living and memory care option in any of the City's residential zones excepting a skilled nursing facility for former entertainers

---

[2] Plaintiffs have verified this Complaint and aver as to all facts set forth herein, other than those citing to the Herten Cert., filed simultaneously herewith. As set forth in the Herten Cert., Mr. Herten has personal knowledge and avers to the facts set forth therein.

47967/0023-17493470v2

developed in 1928, which also offer memory care and assisting living called the Actor's Home. The Facility also will be located in an area with a large number of Orthodox Jewish individuals as well as synagogues.  See Herten Cert., ¶ 2, Exhibit K (Transcript), p. 52.

21.     The State of New Jersey certified the need for the Facility based in part on "the [lack of] availability of facilities or services which may serve as alternatives or substitutes."  See Herten Cert., ¶ 2, Exhibit A, p.1.

22.     The Code, however, does not allow the Facility, or any assisted living facilities, to be built in residential zones.  See Herten Cert. ¶ 2, Exhibit C, Code § 250-3 – 250-7.  Rather, such facilities are segregated to a small portion of the City surrounded by industrial zones.  See Herten Cert., ¶ 2, Exhibit D (City Zoning Map).

23.     The City's segregation of assisted living and memory care facilities to industrial zones unduly limits creation of or access to assisted living and similar facilities and has a disparate impact upon those who cannot travel to the segregated area.  See e.g. Herten Cert. ¶ 2, Exhibit K, pp. 72-73.

24.     For example, the City's segregation of these facilities prevents Orthodox Jewish individuals from making full use of assisted living and memory care facilities because of religious limitations during Shabbat.  Id., at 30, 35-37, 51-52, 72-73.

25.     Establishing the Facility will reasonably accommodate housing for elderly, handicapped persons in a residential district in the City, and lift the substantial burden on religious exercise the Code imposes.

26.     By their acts and omissions, Defendants have and continue to:

a.     Deny or delay residential housing needed by the Plaintiffs' prospective elderly residents who reside in and around the City;

6

b.      Prevent Plaintiffs from associating with the handicapped and the elderly to whom Plaintiffs desire and intend to provide services;

c.      Deny Orthodox Jewish individuals and synagogues the right to free exercise of religion due to the impermissible government burdens the City zoning code imposes on siting the residential Facility on the Property near their homes and places of worship.

27.      Defendants also have jeopardized Plaintiffs' significant investment in the development of the Facility and exposed Plaintiffs to the imminent risk of irreparable harm, *i.e.*, not having approvals (or otherwise to have the right to develop the Facility) in place by August 9, 2019, thereby creating an immediate risk that the contract to acquire the second parcel of land necessary to build the Facility will be terminated by the seller.

**B.      <u>The City Impermissibly Zones Elder Care Out of Residential Districts Even Though the City's Master Plan Acknowledges that Citizens Require Assisted Living and Memory Care Services.</u>**

28.      In 2014, the City enacted a master plan (the "<u>Master Plan</u>").  <u>See</u> Herten Cert. ¶ 2, Exhibit B.  Under New Jersey law, the Master Plan guides future changes to the Code.[3]

29.      According to the Master Plan, the City's elderly population is large, "14% is 65 and above," and has increased "more than 20% over the past ten years."  The Master Plan also acknowledges that the elderly increasingly live alone in the City.  <u>Id.</u>, pp. 27-28.

30.      The Master Plan recognizes the challenges the City's aging population presents. <u>Id.</u>, p. 30.  Consequently, the Master Plan calls for more senior housing as one of its objectives. <u>Id.</u>, p. 72.

31.      Nevertheless, the City and the Council have continued to segregate and restrict senior housing, including assisted living, and memory care homes.

---

[3] Relevant excerpts of the City Code are attached as Exhibit D to the Herten Cert. and incorporated by reference.

32.     Under the Code, all City lands are assigned a zoning district.  See Code § 250-72.
The zoning district dictates the uses and bulk standards, such as height, setback and lot coverage
ratios for all City lands within the assigned designation.

33.     For example, under the Code, assisted living and memory care homes can only be
located on lands assigned the Research, Industrial and Medical ("RIM") designation; such
homes are not allowed in the R-AAA district or any other residential category.  Id., Exh. D,
§ 26-85(b)(5); Herten Cert. ¶ 2, Exhibit C.  The Property is zoned R-AAA.

34.     Worse still, all City RIM zones are clustered in an area in the southwest corner of
the City.  The RIM zoned lands are surrounded by "Light Industrial" zoned lands and a railroad
track.  The Zoning Map depicts all RIM lands as dark purple.  See Herten Cert. ¶ 2, Exhibit D
(Zoning Map).

35.     Only one small block of residential land even adjoins the RIM district, near
Williams Street and West Linden Avenue.  Id.

36.     The City has only one assisted living or memory care facility in development,
located along Route 4, in the RIM district.

37.     There exist no assisted living or memory care homes in any City residential zone,
even as a grandfathered, legal non-conforming use. [4]

38.     Moreover, no residential zoning designation under the Code allows assisted
living or memory care as a use by right, or even as a conditional use.  Herten Cert., ¶ 2, Exhibit
K, pp. 24-25.

39.     To build or operate a new assisted living or memory care home in a residentially-
zoned City district effectively requires rezoning under the Code.  Id., at 26.

---

[4] The Lillian Booth Actors Home, which moved to 75 West Hudson Avenue in 1928, serves former
entertainers and is a skilled nursing facility; it may be a narrow exception as the home does offer assisted living and
memory care services in addition to rehabilitation and skilled nursing.

40.     In theory, an applicant seeking to build or operate an assisted living or memory care home could seek a use variance, but that would not be sufficient here.  Because the Code has no established bulk standards for assisted living or memory care in residential districts, an applicant pursuing a use variance would also need to seek height, set back, lot coverage and similar variances from the single-family bulk standards in those districts in order to create a facility with enough beds to be financially viable, and have all the amenities the State of New Jersey requires.  Id., at 23-27 (testimony of Richard Preiss, a professional planner).

41.     Moreover, the Code does not contain standards for lighting, parking, opacity buffers, and other similar standards as may be appropriate when locating an assisted living or memory care home in a residential district.  Id.

42.     As a result, the Code makes obtaining the approvals to construct an assisted living or memory care facility in the City all but impossible outside the one zoning district that allows them (as further elaborated below in Section II(G)).

43.     After adopting the Master Plan, the Council introduced and passed of a number of implementing ordinances to change its Code.  None of those ordinances, however, addressed the topic of senior housing.  Id., at 23-24.

44.     Thus, absent rezoning, it remains virtually impossible to build or operate an assisted living or memory care home in or near a residential district in the City.  Id.

**C.**     **The City Code Burdens Orthodox Jewish Citizens' and Institutions' Religious Practices.**

45.     The City's segregation of assisted living and memory care homes particularly burdens the City's Orthodox Jewish population.  Id., at 51-52 (Rabbi Poupko), 57 (Rabbi Reichman); 72-74 (Rabbi Bousbib).

47967/0023-17493470v2

46.     Orthodox Jewish synagogues and congregants in the City face obstacles to worship and practicing key faith tenets.  Id.

47.     The following Orthodox Jewish synagogues are located in residential districts in the City:  Kehilat Kesher, Congregation Shomrei Emunah, Congregation Ahavath Torah, and East Hill Synagogue.

48.     There are no Orthodox Jewish synagogues located in any RIM zoned district in the City.

49.     Members of the Orthodox Jewish community observe several faith tenets associated with Shabbat, which is the period from sundown on Fridays to sundown on Saturdays.  One such tenet is that observers refrain from driving during Shabbat.

50.     Enforcement of the Code, therefore, places an unreasonable burden upon Orthodox Jews who wish to travel to or from an assisted living or memory care home on Shabbat.  Indeed, all RIM zoned land in the City is clustered in the southeast corner of the City, far from most Orthodox Jewish residential communities and synagogues.  See Herten Cert. ¶ 2, Master Plan, p. 59.

51.     Without an assisted living facility in walking distance of congregants' homes, Orthodox Jews in the City cannot join the elderly for worship during Shabbat, nor can those elderly persons who remain ambulatory visit a synagogue.

52.     Orthodox Jews must also not carry things outside their homes during Shabbat. As to this tenet, however, an exception exists if the person is walking within a religiously-designated geographic area called an "eruv."  An eruv typically includes residential areas around a synagogue, and it usually is bounded by string or wire.

53.     The City's eruv only encompasses residential zoning districts.

47967/0023-17493470v2

54.     Enforcement of the Code, therefore, prevents Orthodox Jews from carrying anything to a friend or family member in an assisted living or memory care home on Shabbat. Indeed, even if an Orthodox Jew could feasibly walk to an assisted living or memory care home in an RIM district, because no such facilities are within the eruv, neither a Torah nor food could be carried.

55.     Likewise, enforcement of the Code precludes Orthodox Jews residing in an assisted living home in an RIM district from leaving the facility carrying anything, even a cane or medication, because the RIM district is outside of the eruv.

56.     Consequently, enforcement of the Code deprives the City's elderly residents within the Orthodox Jewish community of contact with family and their faith community, even on high holy days such as Yom Kippur.  Herten Cert, ¶ 2, Exhibit K, pp. 51-52 (Rabbi Poupko), p. 57 (Rabbi Reichman); pp. 72-74 (Rabbi Bousbib).

### D.     **Englewood Could Accommodate Residential Senior Living Near Synagogues.**

57.     Nothing about the City's geography, zoning scheme, or existing development pattern prevents it from providing a reasonable accommodation as to housing for the elderly in residential areas.  See Herten Cert., ¶ 2, Exhibit K, pp. 24-25.

58.     Nor is the City prevented from removing the burdens the Code imposes on religious practice.

59.     The City is five square miles, roughly divided into quarters by bisecting "Regional Arterial" roads.  Grand Avenue/South Van Brunt Street and Engle Street run east and west, and Palisade Avenue runs north and south.  See Herten Cert., ¶ 2, Exhibit B, pp. 1, 25, 82, 90, 91.

60.     Engle Street and East Palisade Avenue bound the City's northeast quadrant (the "Northeast Quadrant"), where a number of synagogues and a large portion of the City's eruv are located.  Id.  See also Herten Cert., ¶ 12, Exhibit G.

61.     Engle Street turns into Grand Avenue as it goes south. Grand Avenue and East Palisade Avenue bound the southeast quadrant of the City (the "Southeast Quadrant").  The eruv covers much of the Southeast Quadrant as well.  Id.

62.     Both the Northeast and Southeast Quadrants are heavily single family residential, except along East Palisade Avenue.  Herten Cert. ¶ 2, Exhibit B, p. 50.

63.     Because at least two Regional Arterial roads exist in the Northeast Quadrant, an assisted living or memory care home can be sited there on a Regional Arterial road (rather than on a quiet, neighborhood street).  Such neighborhood streets are designated as "Private Roads," or an "Urban Collector" in the Master Plan.  See id., p. 80.

64.     East Palisade Avenue and Engle Street (and those running closely parallel), however, are the primary Regional Arterial roads in the Northeast Quadrant. To avoid having road frontage on a true neighborhood road, any assisted living or memory care home serving the Northeast Quadrant must be sited on either Engle Street, Dean Street or on East Palisade Avenue, which is where the Property is situated.  See id., p. 81.

65.     Notably, the City has limited numbers of lots fronting Regional Arterial roads suitable for developing the Facility given its committed development pattern and zoning.

66.     Within the Northwest Quadrant, East Palisade Avenue contains schools, apartments, and some commercial uses as well as some remaining single-family homes, as it slopes down to the City's central business district.

67.     Because the City as a whole is 75% residential in its present development pattern and zoning, any assisted living or memory care home serving the Northeast Quadrant or Southeast Quadrant will unavoidably abut single family uses along the rear lot lines, even when located on a Regional Arterial Road.   See id., Exhibit B, Master Plan Introduction 1 – "Englewood at a Glance".

68.     Siting the Facility on a Regional Arterial road like East Palisade Avenue is the best option for serving residential neighborhoods while protecting single family character in the City.

**E.      The Property and its Surroundings.**

69.     The Property consists of the lands located at 431 East Palisade Avenue, 405 East Palisade Avenue and 7 North Woodland Street in the City, and shown on the tax map as Block 1902, Lots 5.01 and Lot 7.

70.     Three lots comprise the Property, for a total of 4.96 +/- acres.

71.     Presently the 431 East Palisade Avenue lot contains a vacant home with a swimming pool and tennis court.   The lot at 405 East Palisade Avenue contains an occupied residence owned by the Han moory Church.

72.     Plaintiffs acquired fee title to 431 E Palisade Avenue on or about May 10, 2017. See Herten Cert. ¶ 2, Exhibit E.

73.     Presently two vacant lots comprise 7 North Woodland Street.

74.     The Dwight Englewood/Elizabeth Morrow School borders the Property on the West side, so institutional uses already form the neighborhood fabric.

75.     A single family residence borders the Property on the north.

76.     To the east of the Property lies the Borough of Englewood Cliffs, and a sliver of the Property that will remain undeveloped lies in that Borough.

77.     Moreover, the Property is ideal for the Facility because of the Property's location down-grade; homes abutting the rear of the Property and the side opposite Woodland Avenue sit higher, so the Facility will not be as readily visible.

**F.     The Agreement of Sale.**

78.     Plaintiffs' predecessor-in-interest, Green Field, LLC, entered into a contingent agreement for the acquisition of the portion of the Property at 7 North Woodland Street and 405 East Palisade Avenue required for the Facility, dated as of April 20, 2017 (the "Agreement of Sale").  Herten Cert. ¶ 2, Exhibit F.

79.     On or about April 28, 2017, Green Field, LLC assigned its interest in the Agreement of Sale to Plaintiffs.  Id.

80.     Pursuant to the Agreement of Sale, Plaintiffs are required to obtain all necessary approvals for the development of the Facility by a date certain (the "Approval Period").  Failure to obtain such approvals or take other action before the expiration of the Approval Period allows the seller to terminate the Agreement of Sale.  Id., §§ 4.1, 4.2, and 8.1.

81.     The Approval Period is set to expire on August 9, 2019.

82.     Seller's termination of the Agreement of Sale, which would be entirely the result of the City's enforcement of the unconstitutional Code, will result in irreparable harm to the Plaintiffs, *i.e.*, their loss of real property.

83.     Moreover, John and Jane Does 1-10 will be irreparably harmed if the Agreement of Sale terminates and the Facility is not developed, because they will be deprived of housing necessary to support their religious and physical needs.

14

G. **The Facility.**

84.     Plaintiffs plan to demolish the existing dilapidated residential structure now at 405 East Palisade Avenue, as well as the long-vacant house at 431 East Palisade Avenue, construct the new Facility, add parking and landscaping details, and thereafter operate the Facility on the Property in a campus-like setting.

85.     The Facility will provide 150-beds for assisted living and memory care within an R-AA (residential), zoning district.

86.     The Facility would also lie within the eruv and the Northeast Quadrant.

87.     CareOne will develop and operate the facility long-term.

88.     Aesthetically, the Tudor-style Facility building and the landscaping will improve the Property and fit in with surrounding architectural styles. See Herten Cert., ¶ 2, Exhibit K, pp. 21-25 (testimony of planner and architect).

89.     Because the Property fronts on a busy arterial road, it is unlikely an investor will restore the vacant structure or the dilapidated one to viable, single-family use that supports surrounding aesthetics or property values, or replace them with new single family homes.

90.     The Facility will provide for supportive care twenty-four hours a day, seven days a week for its memory care patients, as well as social workers, clinical and family therapists, counselors and patient support staff.

91.     The Facility's focus will be the day-to-day support of its residents, treatment, rehabilitation, safety and special services for patients suffering from memory loss.

92.     The assisted living care the Plaintiffs will provide supports residents who need help with basic personal tasks of everyday life, or activities of daily living ("ADLs"), often required by the elderly and handicapped.

93.     The New Jersey State Department of Health will license and regulate the Facility.

94.     On June 13, 2019, the State of New Jersey issued CareOne its CON for the Facility with 150-beds.  See Herten Cert., ¶ 2, Exhibit H, CON.

95.     Plaintiffs' plans for the Facility are nearly identical to plans that could be approved "by right" on City lands zoned RIM in terms of use and all bulk requirements.  See Herten Cert., ¶ 2, Exhibit K, p. 24.

96.     The Facility will reasonably accommodate housing for elderly, handicapped persons in a residential district in the City, and lift the substantial burden on religious exercise the Code imposes.

**H.     The Application Process and Public Hearings.**

97.     Plaintiffs, their legal counsel and development professionals have met numerous times with City officials since 2017 to discuss approving the Facility.

98.     In January 2018, Plaintiffs were asked to present the project to Council, but were pulled off the agenda at the last minute.

99.     On January 14, 2019, Plaintiffs submitted a written request to the Council seeking to rezone the Property for the Facility (the "Application").  See Herten Cert. ¶ 2, Exhibit H.

100.    The Application proposes a new zoning designation for assisted living in what are now residentially zoned districts and further proposes to change the Property's zoning to that new designation.

101.    The Application includes details of the Facility's aesthetics, traffic impact, fit with the community, landscaping, stormwater management, and similar matters.

102.    Defendants refused to act on the Application, however, instead raising spurious concerns about spot zoning and illegally demanding that Plaintiffs pursue numerous variances through the City's independent quasi-judicial board, the City's Zoning Board of Adjustment ("Board of Adjustment").

103.    In fact, since Plaintiffs' January 14, 2019 rezoning submission, Defendants have taken no formal action on the Application.

104.    Instead, Defendants have told Plaintiffs on numerous occasions that Plaintiffs should abandon the Application as a rezoning and instead apply to the Board of Adjustment.

105.    Plaintiffs have not made application to the Board of Adjustment as the City demanded, which would be futile for the reason explained below.

106.    The City's process to obtain a use variance from the Board of Adjustment differs considerably from the rezoning process.  Although the Council can act by a simple majority on a rezoning application, the Board of Adjustment must have a super-majority to approve a use variance.  N.J.S.A. 40:55D-70(b); Code § 250-27(B).

107.    Unlike the Council's ability to take all necessary actions under the law, the Board of Adjustment must conduct a four-part balancing test to determine whether to grant a variance for an inherently beneficial use, to wit: (1) the Board must identify the public interest at stake; (2) the Board must identify the detrimental effect, if any, that will ensue if the variance is granted; (3) the Board may reduce the detrimental effect by imposing reasonable conditions on the use; and (4) the Board must weigh the identified public interest against the identified detrimental effects to determine if the variance would cause substantial detriment.

108.    In practice, the Board of Adjustment hearing process typically spans months, or even years.  See Herten Cert. ¶ 6.

109.    The Board of Adjustment also can impose conditions on approval if one is forthcoming.  Such conditions could scale the Facility down to the point where it would not be financially feasible and/or that would not comply with the State of New Jersey's mandates, the ADA, or other regulatory requirements.  Plaintiffs would not know what conditions would be imposed until after a substantial investment in the approval process (beyond their significant investment to date), and the passage of many months, at a minimum.  Herten Cert., ¶ 6.

110.    Thus, requiring an application to the Board of Adjustment for the Facility places a burden on handicapped persons in the City not faced by non-handicapped persons who want to reside in residential districts.

111.    The Board of Adjustment also cannot alter the Code, which impermissibly clusters handicapped persons into a commercial district.

112.    Nor does the Board of Adjustment have authority to implement the Master Plan or to make the City comply with its fair housing or other statutory compliance obligations.

113.    Worse yet, the Code does not merely impose certain discrete bulk or use requirements creating a hardship unique to the Property, which the Board of Adjustment could reasonably consider.  Rather, the Code establishes no meaningful criteria for Plaintiffs' proposed use in *any* residential zone.

114.    New Jersey municipal boards of adjustment may not usurp zoning powers, and their decisions may be reversed if a court deems that has occurred.  Thus, an application to the Board of Adjustment would be futile in view of the facially unconstitutional and discriminatory Code, as well as the lengthy and uncertain hearing process.

115.    In a further attempt to avoid Council action on the Application, Defendants also have asserted that the zoning change and the Application would be illegal spot zoning.

116.    In response, on March 15, 2018, Plaintiffs' counsel, Thomas Herten, Esq., submitted for the record a legal memorandum at the request of the City's attorney explaining that rezoning the Property is not illegal spot zoning (the "Spot Zoning Memo").  See Herten Cert., Exh. I.  As set forth in the Spot Zoning Memo, rezoning to accommodate a fair share housing requirement is not illegal spot zoning under well-settled New Jersey law.

117.    The City did not formally respond to the Spot Zoning Memo.

118.    Finally, after Plaintiffs' numerous demands, the Council agreed to allow a public presentation on May 7, 2019.  Plaintiffs were told Council would allow only thirty (30) minutes for Plaintiffs to explain the Application and present its expert witnesses (the "May 2019 Hearing").  Because no rezoning ordinance had been introduced, the May 2019 Hearing was not an official consideration of the Application by Council.

119.    On May 2, 2019, in advance of the hearing, Mr. Herten, submitted a letter to Council explaining the Application (the "May 2 Letter") so Council would have the materials prior to the May 2019 Hearing.  Herten Cert. ¶ 2, Exhibit J.[5]  The Letter included the following documentation for the record, in addition to the Spot Zoning Memo:

a.  Presentation summary letter dated May 1, 2019 from the Project Engineer, Michael J. Fowler, P.E. – See Herten Cert. ¶ 2, Exhibit J, beginning at Bates page 0020;

b.  Résumé of Michael J. Fowler– See Herten Cert. ¶ 2, Exhibit J, beginning at Bates page 0022;

c.   Full site plans prepared by Langan Engineering dated April 30, 2019, 16 Sheets– See Herten Cert. ¶ 2, Exhibit J, beginning at Bates page 0026;

---

[5] Exhibit J has been bates stamped 0001-0098 for convenience of reference, and all references herein are to those page numbers.

47967/0023-17493470v2

d.  Site plan rendering dated August 15, 2018 prepared by Langan Engineering–
    See Herten Cert. ¶ 2, Exhibit J, beginning at Bates page 0042;

e.  Aerial Map dated September 12, 2017, prepared by Langan Engineering– See
    Herten Cert. ¶ 2, Exhibit J, beginning at Bates page 0043;

f.  Résumé of Ronald A. Fuerst, PLA, RLA, ASLA, Managing Principal of Langan
    Engineering– See Herten Cert. ¶ 2, Exhibit J, beginning at Bates page 0044;

g.  Traffic and Parking Statement dated April 29, 2019, prepared by Daniel D.
    Disario, P.E., PTOE of Langan Engineering– See Herten Cert. ¶ 2, Exhibit J,
    beginning at Bates page 0048;

h.  Résumé of Daniel D. Disario– See Herten Cert. ¶ 2, Exhibit J, beginning at
    Bates page 0072;

i.  Presentation summary letter dated May 1, 2019 from Dan E. King, AIA,
    principal, Meyer Design, Inc. – See Herten Cert. ¶ 2, Exhibit J, beginning at
    Bates page 0074;

j.  Résumé of Dan E. King, AIA– See Herten Cert. ¶ 2, Exhibit J, beginning at
    Bates page 0075;

k.  Architectural elevations by Meyer Design, Inc., consisting of four slides– See
    Herten Cert. ¶ 2, Exhibit J, beginning at Bates page 0076;

l.  Floor plans for the proposed project developed by Meyer Design, Inc.,
    consisting of four slides– See Herten Cert. ¶ 2, Exhibit J, beginning at Bates
    page 0080;

m. Planning statement dated May 1, 2019 prepared by Richard M. Preiss, Vice President of Phillips, Preiss, Grygiel, Leheny Hughes, LLC– See Herten Cert. ¶ 2, Exhibit J, beginning at Bates page 0084;

n. Résumé of Richard M. Preiss, P.P. – See Herten Cert. ¶ 2, Exhibit J, beginning at Bates page 0088; and

o. Legal analysis dated May 1, 2019 prepared by A. Kimberly Hoffman, Esq. – See Herten Cert. ¶ 2, Exhibit J, beginning at Bates page 0089.

120.    Mr. Herten caused a transcript of the May 2019 Hearing to be prepared by a certified court reporter.  See Herten Cert. ¶ 2, Exhibit K.

121.    During the May 7, 2019 hearing, the Plaintiffs' principal, their legal counsel, and various development professionals made a presentation on the Application.  Individual Council members then questioned Plaintiffs' development professionals on various topics.  Id.

122.    A traffic safety expert confirmed during the May 2019 Hearing that the Facility would not notably increase peak hour trips, nor would it impact the safety of the roadways.  In fact, the Facility does not generate enough traffic to require roadway improvements.  See Herten Cert. ¶ 2, Exhibit J, at Bates no. 0051, et seq.; Exhibit K, p. 25.

123.    The undisputed expert witness testimony from an architect, engineer, land planner and traffic safety expert, at the May 7, 2019 hearing, as supported by the May 2, 2019 paper submissions, Herten Cert. ¶ 2, Exhibit J, established: (i) a rezoning was necessary to allow assisted living and memory care in a residential zone in the City; (ii) why the Property was particularly suited for its proposed use; (iii) how the Facility conforms to the overall planning purpose of the Code and Master Plan; and (iv) that the Application meets appropriate Code health, safety and welfare standards.  See Herten Cert. ¶ 2, Exhibit J, Bates no. 0090, et seq.

124.     Moreover, the undisputed expert witness testimony at the May 2019 Hearing established that the Code imposes an impermissible burden on religious exercise by persons and religious institutions in the City.  See Herten Cert. ¶ 2, Exhibit J, Bates no. 0097, *et seq*.

125.     The May 2 Letter and presentation at the May 2019 Hearing gave the legal rationale, including relevant statutes and judicial interpretations, as to why the City's Code and exclusionary zoning practices violate, *inter alia*, the FHAA and RLUIPA.  See Herten Cert. ¶ 2, Exhibit J, Bates no. 0089, *et seq*.

126.     Individual Council members also asked questions during the May 7th Hearing. Herten Cert., ¶ 2, Exhibit K.

127.     For example, Wayne Scott, the City's Zoning Officer, spoke against the Application during the May 2019 Hearing's public comment portion.  Mr. Scott stated, "When I heard the presentation that was made by [Plaintiffs], I heard some misinformation that was given."  Id., p. 80.

128.     Mr. Scott did not identify any "misinformation" except to correct a mistake as to what "RIM" stands for, as a previous speaker had used the term "mechanical" not "medical". Id.

129.     Mr. Scott stated several times he did not believe the Council had sufficient knowledge of land use to act in zoning matters, including regarding the Application, and that "[applications] normally come [    ] before the zoning official, he reviews it and sends it to the appropriate board."  Id., p. 82.

130.     Mr. Scott then complained the Application had not come to him for a referral to a board, which would allow him to derail Plaintiffs' proposed rezoning.  Id., pp. 81-82.

131.     Mr. Scott's testimony indicates he supports the *status quo*: congregating assisted living and memory care residents in commercial districts exclusively, and that he will not support legislative or quasi-judicial efforts to allow such uses in residential districts.   His comments also indicate he considers the RIM zoning district to be the only appropriate zone for the Facility.

132.     Neither Council members, Mr. Scott, nor the City's attorney offered any evidence or comments contradicting Plaintiffs' factual testimony or explanation of the law as it relates to RLUIPA or the FHAA.

133.     At the conclusion of the May 2019 Hearing, public comments were received by the Board from City residents.  Some speakers supported, while others opposed, the Application. See Herten Cert. ¶ 2, Exhibit K, pp. 42; 48-62; 66-79; 95-99; 101-102; 104.

134.     The Council has not introduced a rezoning ordinance that would be necessary to actually consider the Application, despite two (2) years of meetings and discussions, and two public Council meetings taking place since the May 2019 Hearing.

135.     Defendants have provided no reason for their refusal.  It is now obvious, however, that Defendants' acts and omissions are a clear example of "the familiar conflict between the legal principle of non-discrimination and the political principle of not-in-my-backyard."  New Directions Treatment Serv. v. City of Reading, 490 F.3d 293, 296 (3d Cir. 2007).

I.     **The City Still Refuses to Act on the Application to the Detriment of Plaintiffs and Their Prospective Residents.**

136.     Ignoring expert testimony, the law and the objective evidence presented over several hearings, the Council, concerned only with its reputation among the residents, refused to

consider rezoning the Property or creating any criteria for allowing assisted living or memory care in residential zones.

137.    The Council has articulated no specific reasons in public for failing to move the Application forward to a vote.

138.    The Council's actions deny Plaintiffs a reasonable accommodation in any residential district in the City, not just at the location of the Property, as all the same objections regarding residential character will arise in any location with residential zoning.

139.    No independent evidence was presented at any of the Council's informal hearings on the Application to challenge Plaintiffs' experts' testimony or give objective reasons for the Council to refrain from providing a reasonable accommodation.

140.    The lack of evidentiary support for the Council's inaction further proves that Defendants' decision was based solely on political considerations, the unsupported subjective opinions of residents and the Council members themselves.

141.    In sum, the Council acted to illegally deny a reasonable accommodation it could have made by approving the Application, preferring to direct Plaintiffs to the futile "alternative" of applying to the Board of Adjustment, which does not have the ability to provide the necessary relief.

142.    The Council's actions have resulted in significant harm to Plaintiffs and Plaintiffs' prospective residents, and exposed Plaintiffs to potentially losing necessary parcels of land on August 9, 2019.

143.    Plaintiffs have invested substantially in the Property and Facility, including expenses to purchase one lot, engineering, architectural and other professional services, and facilities expenses, in amounts to proven at trial.

144.     Thus, separate and apart from the irreparable harm to Plaintiffs, Defendants' actions are also causing Plaintiffs to suffer substantial economic damages, including substantial lost profits, which may be difficult to calculate with a reasonable degree of certainty.

145.     Defendants' conduct, as aforesaid, was in clear dereliction of duty, intentionally taken, and in bad faith such that it is sufficiently outrageous as to justify the imposition of punitive damages.

146.     Plaintiffs and their prospective patients do not have an adequate remedy at law and will suffer immediate and irreparable harm in the absence of equitable relief, thereby justifying the grant of preliminary relief, enjoining the enforcement of the discriminatory Code pending a full adjudication on the merits.  At that time, Plaintiffs will be entitled to permanent injunctive relief to allow Plaintiffs to construct and operate the Facility on a unique piece of real property, which is perfectly suited for Plaintiffs' intended use, and for Plaintiffs' prospective residents to receive desperately needed support in daily activities and memory care close to their homes, families, faith communities, and support networks.

147.     In addition to injunctive relief and damages, Plaintiffs are also entitled to declaratory relief against Defendants pursuant to 28 U.S.C. § 2201, because Defendants' acts and omissions described above have created an actual controversy with Plaintiffs, within this Court's jurisdiction.  Plaintiffs face real, immediate and negative consequences unless this Court declares that Defendants' discriminatory zoning decisions and improper actions regarding Plaintiffs' Application constituted violations of the ADA, FHAA and RLUIPA, and that Plaintiffs and its residents are entitled to reasonable accommodations to facilitate the construction and operation of the Facility as planned.

47967/0023-17493470v2

## FIRST CLAIM FOR RELIEF
### (Violation of Title II of the ADA, 42 U.S.C. § 12101 *et seq.*)

148.     All preceding paragraphs of the Complaint are incorporated by reference, as if fully set forth herein.

149.     The American with Disabilities Act provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the service, program, or activity of a public entity, or be subjected to discrimination by any such entity.

150.     The ADA makes it unlawful for a public entity, in determining the site or location of a facility, to make selections that have the purpose or effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination, including the right to receive care in a residential area.  28 C.F.R. § 35.130(b)(4).

151.     Plaintiffs' anticipated residents are qualified persons under the ADA with disabilities that substantially impair one or more major life activities.

152.     Plaintiffs' anticipated residents are "qualified persons with disabilities" within the meaning of the ADA, 42 U.S.C. § 12102(2) and 28 C.F.R. § 35.104.

153.     Plaintiffs has taken several, concrete steps to open the Facility and fully intend to open the Facility as soon as possible and, therefore, Plaintiffs intend to imminently establish relationships and otherwise associate with qualified persons with disabilities.

154.     The City is a qualifying public entity within the meaning of the ADA.  42 U.S.C. § 12131(1)(A).

155.     Section 12132 of the ADA constitutes a general prohibition against discrimination on the basis of disability by public entities.

47967/0023-17493470v2

156.    Defendants have violated, and are continuing to violate the ADA, by, *inter alia*: (i) refusing to provide reasonable accommodations to disabled individuals; (ii) allowing prejudice against disabled individuals to dictate the outcome of zoning decisions and hearings; and (iii) discriminating against disabled individuals by clustering housing that services them in one non-residential zoning district surrounded primarily by industrial and commercial uses.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, and request that the Court grant the following relief:

i.    Preliminarily enjoining Defendants' enforcement of any provisions contained in the Code against Plaintiffs to the extent related to allowed land uses or dimensions in any review of Plaintiffs' request for approvals to develop, construct, and operate an assisted living and memory care facility on those certain lands located at 405 East Palisade Avenue, 431 East Palisade and 7 North Woodland Street so long as such requests for approvals are consistent with the site plan prepared by Langan Engineering dated April 30, 2019 pending a full adjudication on the merits;

ii.    Permanent injunctive relief permitting Plaintiffs' construction and operation of the Facility as planned, and enjoining Defendants from obstructing or interfering with Plaintiffs' construction and operation thereof;

iii.    Declaring that Defendants' discriminatory zoning decisions and improper actions regarding Plaintiffs' Application constitute violations of the ADA, and that Plaintiffs and their residents are entitled to reasonable accommodations to facilitate the construction and operation of the Facility as planned; as well as awarding:

iv.    Compensatory damages;

v.    Punitive damages;

vi. Attorneys' fees and costs pursuant to, among other authorities, 42 U.S.C. § 12205; and

vii. Such other and further relief as the Court deems necessary and appropriate.

## SECOND CLAIM FOR RELIEF
### (Violation of the Fair Housing Act of 1988, 42 U.S.C. § 3601, *et seq.*)

157. All preceding paragraphs of the Complaint are incorporated by reference, as if fully set forth herein.

158. The Fair Housing Act guarantees fair housing to handicapped individuals.

159. Under the FHAA, the term "handicap" means, with respect to a person, a "physical or mental impairment which substantially limits one or more of such person's major life activities, . . . a record of having any such impairment, . . . or being regarded as having such an impairment." 42 U.S.C. § 3602(h).

160. The term "physical or mental impairment" includes status as an elderly person or one experiencing memory loss, as well as those who need help with one or more ADL's.

161. Plaintiffs' prospective residents are qualified handicapped individuals within the meaning of 42 U.S.C. § 12101.

162. Under the FHAA, it is unlawful to discriminate against or otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap of that buyer, renter, or person residing in or intending to reside in that dwelling after it is sold, rented, or made available. 42 U.S.C. § 3604(f)(1).

163. The Facility qualifies as a dwelling under the FHAA as it will be the primary residence for its inhabitants.

164. Plaintiffs are entitled to act on behalf of the individuals that would reside in the Facility that Plaintiffs plans to develop.

28

165.    Approval of the Application by the Council would have been a reasonable accommodation, but inaction and an informal referral of the Application to the Board of Adjustment were not.

166.    Handicapped Englewood citizens, whose interests Plaintiffs represent, need not beg a discretionary, quasi-judicial Board of Adjustment that can only give relief by a super majority vote to be relieved from the facially discriminatory Code as to their housing rights.

167.    Moreover, it is antithetical to the FHAA and the purpose of a reasonable accommodation to require handicapped persons to go through a more onerous process.

168.    The City illegally zoned assisted living and memory care out of all residential districts, without providing a reasonable accommodation for handicapped persons wishing to live in residential areas.

169.    Plaintiffs need not seek a "variance" from a Code that is facially illegal and discriminatory.

170.    Defendants' policies have created restrictions on the establishment of homes in residential neighborhoods for individuals who are elderly or handicapped or both.

171.    Defendants and their policies have placed burdens on those persons with disabilities (having to apply for conditional use permits or variances, lobby for changes to the Code and having to attend meetings and hire attorneys, etc.) that have a disparate impact on individuals who are elderly or handicapped or both.

172.    Defendants have violated, and are continuing to violate the FHAA, by, inter alia: (i) refusing to provide reasonable accommodations to disabled individuals; (ii) allowing prejudice against disabled individuals to dictate the outcome of the zoning decisions and hearings; and (iii) discriminating against disabled individuals by clustering housing that services

them in one non-residential zoning district surrounded primarily by industrial and commercial uses.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, and request that the Court grant the following relief:

i.  Preliminarily enjoining Defendants' enforcement of any provisions contained in the Code against Plaintiffs to the extent related to allowed land uses or dimensions in any review of Plaintiffs' request for approvals to develop, construct, and operate an assisted living and memory care facility on those certain lands located at 405 East Palisade Avenue, 431 East Palisade and 7 North Woodland Street so long as such requests for approvals are consistent with the site plan prepared by Langan Engineering dated April 30, 2019 pending a full adjudication on the merits;

ii.  Permanent injunctive relief permitting Plaintiffs' construction and operation of the Facility as planned, and enjoining Defendants from obstructing or interfering with Plaintiffs' construction and operation thereof;

iii.  Declaring that Defendants' discriminatory zoning decisions and improper actions regarding Plaintiffs' Application constitute violations of the FHAA, and that Plaintiffs and their residents are entitled to reasonable accommodations to facilitate the construction and operation of the Facility as planned; as well as awarding:

iv.  Compensatory damages;

v.  Punitive damages;

vi.  Attorneys' fees and costs pursuant to, among other authorities, 42 U.S.C. § 3613; and

vii.  Such other and further relief as the Court deems necessary and appropriate.

47967/0023-17493470v2

### THIRD CLAIM FOR RELIEF
**(Violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.*)**

173.   All preceding paragraphs of the Complaint are incorporated by reference, as if fully set forth herein.

174.   The Rehabilitation Act, provides that no qualified individual with a disability shall, solely by reason of her or his disability, be excluded from participation in or be denied the benefits of or be subjected to discrimination under any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a).

175.   The City of Englewood receives federal financial assistance, including through federal grant programs such as the Community Development Block Grant program, which is funded by the U.S. Department of Housing and Urban Development.

176.   Section 508 of the Rehabilitation Act defines "program or activity" as "all of the operations" of specific entities, including "a department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b)(1)(A).

177.   Zoning decisions by a municipality are normal functions of a governmental entity and thus are covered by the Rehabilitation Act.

178.   Plaintiffs have taken several, concrete steps to open the Facility and fully intends to open the Facility as soon as possible and, therefore, Plaintiffs intend to imminently establish relationships and otherwise associate with qualified persons with disabilities.

179.   Plaintiffs' anticipated residents are qualified persons under the Rehabilitation Act with disabilities that substantially impair one or more major life activities.  For example, persons must be elderly or otherwise disabled to qualify for admission to the Facility.

180.   The City is a qualifying public entity within the meaning of the Rehabilitation Act.

47967/0023-17493470v2

181.    The Council is a qualifying public entity within the meaning of the Rehabilitation Act.

182.    Section 508 of the Rehabilitation Act constitutes a general prohibition against discrimination on the basis of disability by public entities.

183.    Defendants have violated, and are continuing to violate the Rehabilitation Act by, *inter alia*: (i) refusing to provide reasonable accommodations to disabled individuals; (ii) allowing prejudice against disabled individuals to dictate the outcome of zoning decisions and hearings; and (iii) discriminating against disabled individuals by clustering housing that serves them in one non-residential zoning district surrounded primarily by industrial and commercial uses.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, and request that the Court grant the following relief:

i.    Preliminarily enjoining Defendants' enforcement of any provisions contained in the Code against Plaintiffs to the extent related to allowed land uses or dimensions in any review of Plaintiffs' request for approvals to develop, construct, and operate an assisted living and memory care facility on those certain lands located at 405 East Palisade Avenue, 431 East Palisade and 7 North Woodland Street so long as such requests for approvals are consistent with the site plan prepared by Langan Engineering dated April 30, 2019 pending a full adjudication on the merits;

ii.    Permanent injunctive relief permitting Plaintiffs' construction and operation of the Facility as planned, and enjoining Defendants from obstructing or interfering with Plaintiffs' construction and operation thereof;

iii. Declaratory relief stating that Defendants' discriminatory zoning decisions and improper actions as to Plaintiffs' Application constituted violations of the Rehabilitation Act, and that Plaintiffs and their patients are entitled to reasonable accommodations to facilitate the construction and operation of the Facility as planned; as well as awarding*:*

iv. Compensatory damages;

v.  Punitive damages;

vi. Attorneys' fees and costs pursuant to, among other authorities, 29 U.S.C. § 794a; and

vii. Such other and further relief as the Court deems necessary and appropriate.

<u>**FOURTH CLAIM FOR RELIEF**</u>
**(Violation of 42 U.S.C. § 1983 – Policy Decisions by the Council)**

184.    All preceding paragraphs of the Complaint are incorporated by reference, as if fully set forth herein.

185.    Municipal bodies are liable for constitutional violations under 42 U.S.C. § 1983 when execution of its official policy or custom deprives an individual of its rights protected under the Constitution.

186.    The Council is the final policy making authority for the City.

187.    The Council improperly applied zoning laws to prevent Plaintiffs' association with handicapped persons.

188.    The Council improperly applied zoning laws to effectuate discrimination against handicapped persons.

189.    The Council improperly applied zoning laws to violate Plaintiffs' rights.

190.    The actions of the Council represent a deliberate choice to follow a course of action from among various alternatives. The Application could have been allowed to proceed in the normal course or could have been approved.

191.    The Council acted under color of law.

192.    The actions and decisions of the Council represent the actions and decisions of the City.

193.    Defendants' actions are illegal because they prevent, frustrate, and impede Plaintiffs' use and enjoyment of its Property and Facility as a residential home.

194.    Defendants' actions are illegal because they prevent, frustrate, and impede Plaintiffs' ability to associate with handicapped individuals.

195.    Defendants' illegal and improper actions unduly deprive Plaintiffs of their constitutional rights far beyond what is reasonable, legal, or necessary.

196.    Accordingly, the Defendants' actions violate the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

197.    Defendants' actions are the proximate cause of Plaintiffs' injuries and Plaintiffs' residents' injuries.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, and request that the Court grant the following relief:

i.   Preliminarily enjoining Defendants' enforcement of any provisions contained in the Code against Plaintiffs to the extent related to allowed land uses or dimensions in any review of Plaintiffs' request for approvals to develop, construct, and operate an assisted living and memory care facility on those certain lands located at 405 East Palisade Avenue, 431 East Palisade and 7 North Woodland Street so long as such

requests for approvals are consistent with the site plan prepared by Langan Engineering dated April 30, 2019 pending a full adjudication on the merits;

ii. Permanent injunctive relief permitting Plaintiffs' construction and operation of the Facility as planned, and enjoining Defendants from obstructing or interfering with Plaintiffs' construction and operation thereof;

iii. Declaratory relief stating that Defendants' discriminatory zoning decisions and improper actions as to of Plaintiffs' Application constitute violations of the Constitution and 42 U.S.C. § 1983, and that Plaintiffs and their residents are entitled to reasonable accommodations to facilitate the construction and operation of the Facility as planned; as well as awarding:

iv. Compensatory damages;

v. Punitive damages;

vi. Attorneys' fees and costs pursuant to, among other authorities, 42 U.S.C. § 1988; and

vii. Such other and further relief as the Court deems necessary and appropriate.

## FIFTH CLAIM FOR RELIEF
### (Violation of 42 U.S.C. § 1983 – Rule/Regulation Promulgated by the Council)

198.    All preceding paragraphs of the Complaint are incorporated by reference, as if fully set forth herein.

199.    Municipal bodies are liable for constitutional violations under 42 U.S.C. § 1983 when a rule or regulation promulgated by the municipality's legislative body deprives an individual of its rights protected under the Constitution.

200.    The Code segregates elderly, handicapped persons within RIM districts, violating the rights of Plaintiffs and Plaintiffs' residents.

201.   The Council is the final policy making authorities for the City.

202.   The Council adopted the provisions of the Code that prevent Plaintiffs' association with handicapped persons. Additionally and alternatively, the Council adopted the provisions of the Code that have the effect of preventing Plaintiffs' association with handicapped persons.

203.   The Council adopted the provisions of the Code to effectuate discrimination against handicapped persons. Additionally and alternatively, the Council adopted the provisions of the Code that have the effect of discrimination against handicapped persons

204.   The Council adopted the provisions of the Code that violate Plaintiffs' rights. Additionally and alternatively, the Council adopted the provisions of the Code that have the effect of violating Plaintiffs' rights.

205.   The Council adopted the provisions of the Code that violate Plaintiffs' residents' rights. Additionally and alternatively, the Council adopted the provisions of the Code that have the effect of violating Plaintiffs' residents' rights.

206.   The actions of the Council represent a deliberate choice to follow a course of action from among various alternatives. To wit, the Council was informed that their actions violated the rights of Plaintiffs and Plaintiffs' residents, yet the Council refused numerous opportunities to remedy the situation.

207.   The Council acted under color of law.

208.   The actions and decisions of the Council represent the actions and decisions of the City.

209.   Defendants' actions are illegal because they prevent, frustrate, and impede Plaintiffs' use and enjoyment of its Property and Facility as a residential home.

210.   Defendants' actions are illegal because they prevent, frustrate, and impede Plaintiffs' ability to associate with handicapped individuals.

211.   Defendants' illegal and improper actions unduly deprive Plaintiffs of their constitutional rights far beyond what is reasonable, legal, or necessary.

212.   Accordingly, Defendants' actions violate the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

213.   Defendants' actions are the proximate cause of Plaintiffs' injuries and Plaintiffs' residents' injuries.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, and request that the Court grant the following relief:

i.   Preliminarily enjoining Defendants' enforcement of any provisions contained in the Code against Plaintiffs to the extent related to allowed land uses or dimensions in any review of Plaintiffs' request for approvals to develop, construct, and operate an assisted living and memory care facility on those certain lands located at 405 East Palisade Avenue, 431 East Palisade and 7 North Woodland Street so long as such requests for approvals are consistent with the site plan prepared by Langan Engineering dated April 30, 2019 pending a full adjudication on the merits;

ii.   Permanent injunctive relief permitting Plaintiffs' construction and operation of the Facility as planned, and enjoining Defendants from obstructing or interfering with Plaintiffs' construction and operation thereof;

iii.   Declaratory relief stating that Defendants' discriminatory zoning decisions and improper actions as to of Plaintiffs' Application constituted violations of the Constitution and 42 U.S.C. § 1983, and that Plaintiffs and their residents are entitled

to reasonable accommodations to facilitate the construction and operation of the Facility as planned; as well as awarding:

iv. Compensatory damages;

v. Punitive damages;

vi. Attorneys' fees and costs pursuant to, among other authorities, 42 U.S.C. § 1988; and

vii. Such other and further relief as the Court deems necessary and appropriate.

## SIXTH CLAIM FOR RELIEF
### (42 U.S.C. § 1983 – Violations Fifth and Fourteenth Amendments and Substantive Due Process by Council)

214.    All preceding paragraphs of the Complaint are incorporated by reference, as if fully set forth herein.

215.    Municipal bodies are liable for constitutional violations under 42 U.S.C. § 1983 when execution of its official policy or custom deprives an individual of its rights protected under the Constitution.

216.    The Council is the final policy making authorities for the City.

217.    Plaintiffs, having acquired a beneficial interest in the Property, have the right to the use and enjoyment thereof.

218.    Plaintiffs' right to use and enjoy the Property includes the ability to develop the Property and operate the Facility.

219.    Plaintiffs have distinct and definite investment-backed expectations in their ability to develop, use and enjoy the Property and Facility.

220.    Under the Fifth and Fourteenth Amendments, Plaintiffs have a right to use and develop its Property and Facility.

47967/0023-17493470v2

221.    Plaintiffs also have a right to substantive due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution to be free from arbitrary, irrational and unreasonable interference with its right to use and develop its Property and Facility.

222.    The Council is improperly applying zoning laws in a manner that arbitrarily, irrationally and unreasonably interferes with Plaintiffs' right to use and develop its Property and Facility.

223.    The Council improperly denied Plaintiffs the right to substantive due process.

224.    The Council improperly applied zoning laws to violate Plaintiffs' rights.

225.    The actions of the Council represent a deliberate choice to follow a course of action from among various alternatives. To wit, the Application could have been allowed to proceed in the normal course or could have been approved.

226.    The Council acted under color of law.

227.    The actions and decisions of the Council represent the actions and decisions of the City.

228.    The City's actions were undertaken in bad faith and shock the conscience.

229.    The City's actions, which were arbitrary, capricious, illegal and conscience-shocking, directly interfered with Plaintiffs' legitimate investment-backed expectations.

230.    The City's actions, including its improper denials of Plaintiffs' Application, have deprived Plaintiffs of an economically beneficial use of the Property.

231.    By virtue of the City's arbitrary, capricious, and unreasonable exercise of its powers, the City has violated the Fifth and Fourteenth Amendments of the United States Constitution, and 42 U.S.C. § 1983.

232.    The City's actions were the proximate cause of Plaintiffs' injury.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, and request that the Court grant the following relief:

i.   Preliminarily enjoining Defendants' enforcement of any provisions contained in the Code against Plaintiffs to the extent related to allowed land uses or dimensions in any review of Plaintiffs' request for approvals to develop, construct, and operate an assisted living and memory care facility on those certain lands located at 405 East Palisade Avenue, 431 East Palisade and 7 North Woodland Street so long as such requests for approvals are consistent with the site plan prepared by Langan Engineering dated April 30, 2019 pending a full adjudication on the merits;

ii.  Permanent injunctive relief permitting Plaintiffs' construction and operation of the Facility as planned, and enjoining Defendants from obstructing or interfering with Plaintiffs' construction and operation thereof;

iii. Declaratory relief stating that Defendants' improper zoning decisions and constituted violations of the Constitution and 42 U.S.C. § 1983, and that Plaintiffs and their residents are entitled to reasonable accommodations to facilitate the construction and operation of the Facility as planned; as well as awarding:

iv.  Compensatory damages;

v.   Punitive damages;

vi.  Attorneys' fees and costs pursuant to, among other authorities, 42 U.S.C. § 1988; and

vii. Such other and further relief as the Court deems necessary and appropriate.

## SEVENTH CLAIM FOR RELIEF
### (Violation of State Law)

233.   All preceding paragraphs of the Complaint are incorporated by reference, as if fully set forth herein.

47967/0023-17493470v2

234.    As detailed above, the City was wrong as a matter of law, palpably abused its discretionary authority and acted in an arbitrary and capricious manner when it directed Plaintiffs to apply for a variance that is not needed and refused to consider Plaintiffs' Application.

235.    The City illegally zoned assisted living and memory care out of all residential districts, without providing a reasonable accommodation for handicapped persons wishing to live in residential areas.

236.    Plaintiffs need not seek a "variance" from a Code that is facially illegal and discriminatory.

237.    The MLUL does not authorize the Board of Adjustment to fashion remedies for illegal exclusionary zoning, nor does referring an applicant to such a board allow the City to shirk its responsibilities to provide a reasonable accommodation. See N.J.S.A. 40:55D-70(d).

238.    The City abused its discretion in effectively denying Plaintiffs' Application by refusing to consider it as a rezoning after Plaintiffs have made proper application for the same. As detailed above, no reason has been publicly given for the City's inaction on the Application, and Plaintiffs presented ample evidence to address the City's informally raised concerns.

239.    The City acted in direct contravention to its zoning Code and the laws of the State of New Jersey.  The City did not dispute that the application would provide for senior housing, nor that the Master Plan requires the City to pursue additional senior housing as an objective.

240.    The City Council is a legislative body charged with providing applicants with a fair and impartial hearing on matters before it, and whose function is to apply the facts presented at the hearing to the legal requirements so that it may decide whether Plaintiffs' Facility is in compliance with the objectives of the Master Plan Code, and applicable law.

241.    The City has ignored uncontroverted substantial evidence establishing that the Facility should be permitted in a residential zone, and has yet to act on the Application.

242.    The Council ignored the uncontroverted evidence establishing that its Code must allow assisted living and memory care in residential districts unless it can meet specific burdens as to the Facility's potential to damage to the City's finances, services or general zoning scheme, which it has not done.

243.    The City may not segregate handicapped persons in a single zoning district with a commercial character that is geographically remote from the City's single family residential communities.

244.    Defendants' actions are conscience shocking and in direct contravention of the MLUL, the Code, and the laws of the State of New Jersey.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, and request that the Court grant the following relief:

i.   Preliminarily enjoining Defendants' enforcement of any provisions contained in the Code against Plaintiffs to the extent related to allowed land uses or dimensions in any review of Plaintiffs' request for approvals to develop, construct, and operate an assisted living and memory care facility on those certain lands located at 405 East Palisade Avenue, 431 East Palisade and 7 North Woodland Street so long as such requests for approvals are consistent with the site plan prepared by Langan Engineering dated April 30, 2019 pending a full adjudication on the merits;

ii.  Permanent injunctive relief permitting Plaintiffs' construction and operation of the Facility as planned, and enjoining Defendants from obstructing or interfering with Plaintiffs' construction and operation thereof;

47967/0023-17493470v2

iii. Entry of an Order approving the Application;

iv. Declaratory relief stating that the City's actions were arbitrary, capricious, unreasonable, and in violation of the MLUL, the Code, Master Plan and the laws of the State of New Jersey; as well as awarding:

v. Compensatory damages;

vi. Punitive damages;

vii. Attorneys' fees and costs; and

viii. Such other and further relief as the Court deems necessary and appropriate.

## EIGHTH CLAIM FOR RELIEF
### (Violation of State Law)

245.    All preceding paragraphs of the Complaint are incorporated by reference, as if fully set forth herein.

246.    The City erred as a matter of law and acted in an arbitrary and capricious manner when it directed Plaintiffs to apply for a variance and did not formally consider the rezoning Application.

247.    The Council improperly disregarded the competent and uncontroverted testimony of multiple expert witnesses who established that the Facility will fundamentally serve the public health, welfare and good, especially given Englewood's critical need for such a facility, and the public policies in favor of making available such facilities, including N.J.S.A. 30:8.

248.    The City improperly disregarded the testimony of multiple expert witnesses that the Facility will not have a negative impact on the surrounding community or undermine the residential character of nearby neighborhoods.

249.    The Council failed to act properly in its legislative capacity when it did not act upon Plaintiffs' Application.

43

250.   The Council's actions are conscience shocking and in direct contravention of the MLUL, the Code, and the laws of the State of New Jersey.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, and request that the Court grant the following relief:

i.   Preliminarily enjoining Defendants' enforcement of any provisions contained in the Code against Plaintiffs to the extent related to allowed land uses or dimensions in any review of Plaintiffs' request for approvals to develop, construct, and operate an assisted living and memory care facility on those certain lands located at 405 East Palisade Avenue, 431 East Palisade and 7 North Woodland Street so long as such requests for approvals are consistent with the site plan prepared by Langan Engineering dated April 30, 2019 pending a full adjudication on the merits;

ii.   Permanent injunctive relief permitting Plaintiffs' construction and operation of the Facility as planned, and enjoining Defendants from obstructing or interfering with Plaintiffs' construction and operation thereof;

iii.   Declaratory relief stating that the City's actions were arbitrary, capricious, unreasonable, and in violation of the MLUL, the Code, and the laws of the State of New Jersey;

iv.   Entry of an Order approving Plaintiffs' Application by City Ordinance, to be entered into the records of the City Clerk; as well as awarding:

v.   Compensatory damages;

vi.   Punitive damages;

vii.   Attorneys' fees and costs; and

viii.    Such other and further relief as the Court deems necessary and appropriate.

## NINTH CLAIM FOR RELIEF
### (Violation of New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 *et seq.*)

251.    All preceding paragraphs of the Complaint are incorporated by reference, as if fully set forth herein.

252.    The NJLAD, N.J.S.A. 10:5-1 *et seq.*, prohibits a "municipality, county or other local civil or political subdivision of the State of New Jersey, or an officer, employee, or agent thereof, to exercise the power to regulate land use or housing in a manner that discriminates" on the basis of disability. N.J.S.A. 10:5-12.5(a).

253.    Under the NJLAD, disability means "physical disability, infirmity, malformation or disfigurement which is caused by bodily injury, birth defect or illness" or "any mental, psychological or developmental disability . . . resulting from anatomical, psychological, physiological or neurological conditions which prevents the normal exercise of any bodily or mental functions or is demonstrable, medically or psychologically," N.J.S.A. 10:5-5(q), which definition has been construed by the courts to include the elderly.

254.    The City violated Plaintiffs' rights and violated the NJLAD by directing Plaintiffs to apply for a variance and refusing to legislatively consider or approve the Application in contravention of the MLUL and based upon improper discrimination against Plaintiffs and its residents.

255.    The City has exercised its powers to regulate land use in a way that discriminates against disabled persons without justification or cause when it enacted a discriminatory Code and then applied it to Plaintiffs, preventing development of a residential assisted living and memory care facility that is necessary for their care and well-being.

256.    The City's conduct was arbitrary, capricious, unreasonable, malicious and in bad faith, and shocks the conscience.

257.    The City's wrongful actions prohibit Plaintiffs from providing a residential facility on a property where it should be permitted to operate, an action that is discriminatory on its face against persons with disabilities, a discrete and insular minority that faces restrictions and limitations and has been subjected to a history of purposeful unequal treatment.

258.    Because of the City's failure to act on or approve Plaintiffs' Application, Plaintiffs have expended significant time and financial resources, has lost the opportunity to timely conduct their business and provide a much-needed service, and is incurring substantial damages.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, and request that the Court grant the following relief:

i.    Preliminarily enjoining Defendants' enforcement of any provisions contained in the Code against Plaintiffs to the extent related to allowed land uses or dimensions in any review of Plaintiffs' request for approvals to develop, construct, and operate an assisted living and memory care facility on those certain lands located at 405 East Palisade Avenue, 431 East Palisade and 7 North Woodland Street so long as such requests for approvals are consistent with the site plan prepared by Langan Engineering dated April 30, 2019 pending a full adjudication on the merits;

ii.    Permanent injunctive relief permitting Plaintiffs' construction and operation of the Facility as planned, and enjoining Defendants from obstructing or interfering with Plaintiffs' construction and operation thereof;

47967/0023-17493470v2

iii.    Declaratory relief stating that the City's actions were arbitrary, capricious, unreasonable, and in violation of the NJLAD;

iv.    Entry of an Order overturning the City's improper denial of Plaintiffs' Application; as well as awarding:

v.    Compensatory damages;

vi.    Punitive damages;

vii.    Attorneys' fees and costs; and

viii.    Such other and further relief as the Court deems necessary and appropriate.

<u>**TENTH CLAIM FOR RELIEF**</u>
**(Violation of Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc)**

259.    All preceding paragraphs of the Complaint are incorporated by reference, as if fully set forth herein.

260.    By imposing and implementing the City's Code in the manner described above, and by the conduct described above, Defendant has imposed a substantial burden on the religious exercise of Orthodox Jews and Orthodox Jewish institutions in Englewood, including Plaintiffs' potential future residents (collectively, the "<u>Residents</u>")  in violation of 42 U.S.C. § 2000cc(a)(1).

261.    Defendant's imposition of a substantial burden on the Residents' religious exercise is not in furtherance of a compelling governmental interest, nor is it the least restrictive means of furthering a compelling governmental interest as required by 42 U.S.C. § 2000cc(a)(1).

262.    Defendant imposes a substantial burden on the religious exercise by Englewood Residents through implementation of a system of land use regulations Defendant enacts, and the formal and informal land use procedures or practices that permit it to prevent Orthodox Jews

from residing, worshipping, and engaging in key tenants of religious practice in Englewood's residential zoning districts.

263.    This substantial burden on the religious exercise of Englewood Residents affects interstate commerce as contemplated by 42 U.S.C. § 2000cc(a)(2)(B).

264.    By virtue of the foregoing conduct, Defendant has also violated the Residents rights under RLUIPA, 42 U.S.C. § 2000cc(b)(1) and (b)(2) by treating the Residents on less than equal terms with the City's other citizens, assemblies and institutions, all of which have been allowed to establish uses in the City's residential zoning districts, practice key tenants of faith, and integrate religious life with residential living.  The Code, as well as the City's actions as described herein, constitutes an unreasonable limitation on religious assembly in violation of RLUIPA. 42 U.S.C. § 2000cc(b)(3).

265.    Segregating Orthodox Jews, who also happen to be handicapped and need help with ADL's, to one zoning district in an industrial area, remote from their families and synagogues violates RLUIPA.

266.    RLUIPA, 42 U.S.C. § 2000cc-2(a), allows the Court to fashion any appropriate remedy for the City's violations.

267.    By virtue of the foregoing conduct, Defendants has violated the Residents' rights under RLUIPA, 42 U.S.C. § 2000cc(a)-(b) and Plaintiffs are accordingly entitled to such relief as the Court finds to be appropriate.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, and request that the Court grant the following relief:

i.      Preliminarily enjoining Defendants' enforcement of any provisions contained in the Code against Plaintiffs to the extent related to allowed land uses or

dimensions in any review of Plaintiffs' request for approvals to develop, construct, and operate an assisted living and memory care facility on those certain lands located at 405 East Palisade Avenue, 431 East Palisade and 7 North Woodland Street so long as such requests for approvals are consistent with the site plan prepared by Langan Engineering dated April 30, 2019 pending a full adjudication on the merits;

ii.    Permanent injunctive relief permitting Plaintiffs' construction and operation of the Facility as planned, and enjoining Defendants from obstructing or interfering with Plaintiffs' construction and operation thereof;

iii.   Declaratory relief stating that the City's actions were arbitrary, capricious, unreasonable, and in violation of the RLUIPA;

iv.    Entry of an Order overturning the City's improper denial of Plaintiffs' Application; as well as awarding:

v.     Compensatory damages;

vi.    Punitive damages;

vii.   Attorneys' fees and costs pursuant to, among other authorities, 42 U.S.C. § 1988; and

viii.  Such other and further relief as the Court deems necessary and appropriate.

## ELEVENTH CLAIM FOR RELIEF
### (Violation of the Fourteenth Amendment, 42 U.S.C. § 1983)

268.   All preceding paragraphs of the Complaint are incorporated by reference, as if fully set forth herein.

269.   Defendant has deprived and continues to deprive Plaintiffs' future residents of their right to free exercise of religion, as secured by the Fourteenth Amendment to the United

States Constitution, which amendment itself makes the rights it guarantees applicable to the states, by imposing and implementing the City's land use regulations in the matter described above, and by the conduct described above.

270.    The Code is discriminatory on its face and as applied towards the Residents. Residential zoning districts in the City allow a variety of uses which are not residential at all, such as houses of worship and schools; the Code also allows residential uses other than single family residential, such as apartments. However, housing for the handicapped - assisted living and memory care - cannot be established in those same districts without discretionary hearings. The Code thereby segregates handicapped residents within commercial areas and prevents them from enjoying housing, with Orthodox Jews and synagogues impacted the most due to Shabbat observance.  Non-handicapped persons who do not need assistance with ADLs are able to enjoy housing opportunities in residential districts.

271.    Segregation of assisted living and memory care exclusively within the City's RIM zoning district, while other residential and commercial uses are allowed in residential districts, results in disparate treatment of the Residents.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, and request that the Court grant the following relief:

ix.    Preliminarily enjoining Defendants' enforcement of any provisions contained in the Code against Plaintiffs to the extent related to allowed land uses or dimensions in any review of Plaintiffs' request for approvals to develop, construct, and operate an assisted living and memory care facility on those certain lands located at 405 East Palisade Avenue, 431 East Palisade and 7 North Woodland Street so long as such requests for approvals are consistent

with the site plan prepared by Langan Engineering dated April 30, 2019 pending a full adjudication on the merits;

x.     Permanent injunctive relief permitting Plaintiffs' construction and operation of the Facility as planned, and enjoining Defendants from obstructing or interfering with Plaintiffs' construction and operation thereof;

xi.     Declaratory relief stating that Defendants' improper zoning decisions and constituted violations of the Constitution and 42 U.S.C. § 1983, and that Plaintiffs and their residents are entitled to reasonable accommodations to facilitate the construction and operation of the Facility as planned; as well as awarding:

xii.     Compensatory damages;

xiii.     Punitive damages;

xiv.     Attorneys' fees and costs pursuant to, among other authorities, 42 U.S.C. § 1988; and

xv.     Such other and further relief as the Court deems necessary and appropriate.

[remainder of page left intentionally blank]

47967/0023-17493470v2

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiffs 431 E. Palisade Avenue Real Estate, LLC and 7 North Woodland Street, LLC, hereby demand a trial by jury as to all issues so triable in this case.

Respectfully submitted,

COLE SCHOTZ P.C.

*/s/ Warren A. Usatine*
Warren A. Usatine, Esq.
Michael R. Yellin, Esq.
25 Main Street
Hackensack, New Jersey  07601
201-489-3000
201-489-1536  Facsimile

MORRIS JAMES, LLP
Kimberly Hoffman, Esq.
      (*pro hac vice* application
      forthcoming)
500 Delaware Avenue
Suite 1500
Wilmington, DE 19801
Tel.: (302) 888-5209
Fax: (302) 571-1750
*Attorneys for Plaintiffs, 431 E Palisade*
*Avenue Real Estate, LLC and*
*7 North Woodland Street, LLC*

47967/0023-17493470v2

## VERIFICATION

STATE OF NEW JERSEY  :
                           :    ss.
COUNTY OF BERGEN  :

       Alberto Lugo, being duly sworn, deposes and says that I am an officer of 431 E Palisade Avenue Real Estate, LLC and 7 North Woodland Street, LLC, the plaintiffs named in this Verified Complaint and am authorized to make and execute this Verification and cause the Verified Complaint to be filed in this action on plaintiffs' behalf.  I have reviewed the allegations made in the Verified Complaint, and to those allegations of which I have personal knowledge, I believe them to be true.  As to those allegations of which I do not have personal knowledge, I relied on information provided by counsel, including the Certification of Thomas Herten, Esq., with exhibits thereto, which is being filed contemporaneous with the Verified Complaint, and I believe all such allegations to be true.

                                             Alberto Lugo
                                             Authorized representative of 431 E Palisade Avenue Real Estate, LLC and 7 North Woodland Street, LLC

Sworn to me on this 28th day of June, 2019.

Notary Public
Name: Jacqueline Elisberg
Commission expires: 2/26/2022

**JACQUELINE ELISBERG**
**NOTARY PUBLIC OF NEW JERSEY**
**Comm. # 2356427**
**My Commission Expires 2/26/2022**

47967/0023-17493470v2