# H

A-1



Thomas J. Herten
Member of New Jersey
and New York Bars
therten@archerlaw.com
201-498-8502 (Ext. 7502) Direct
201-342-6611 Direct Fax

Archer & Greiner, P.C.
Court Plaza South, West Wing
21 Main Street, Suite 353
Hackensack, NJ 07601-7095
201-342-6000 Main
201-342-6611 Fax
www.archerlaw.com

January 14, 2019

**VIA HAND DELIVERY**

Honorable Mayor Michael Wildes
Council President Katharine Glynn
Honorable Englewood City Council Members:
Charles Cobb, Cheryl Weiner Rosenberg, Michael D. Cohen, Wayne Hamer
City of Englewood Municipal Building
2-10 North Van Brunt Street
Englewood, NJ 07631

    Re:    7 North Woodland Street, LLC

Dear Mayor Wildes, Council President Glynn, and Englewood City Council Members:

    This firm represents both 431 East Palisade Avenue Real Estate, LLC, the owner of Block 1902, Lot 8, commonly known as 431 Palisade Avenue, Englewood, New Jersey and 7 North Woodland Street, LLC, the contract purchaser of Block 1902, Lots 5.01 and Lot 7 in the City of Englewood (Lot 5.01 is a vacant parcel and Lot 7 is commonly known as 405 E. Palisades Avenue). Both entities are affiliated with CareOne, a well recognized healthcare provider. These assembled parcels (the "Parcels") encompass 4.96 acres and are bordered on the west by the Dwight Englewood/Elizabeth Morrow School complex, on the east by the Borough of Englewood Cliff and on the north by a single family residence. The parcels, located in the R-AAA zone, are the easterly most properties in the City.

    On August 21, 2008, on behalf of CareOne and its affiliates, we made an informal presentation to the Council at a public meeting. We provided information concerning our client's intention to develop the Parcels for an assisted living/memory care facility, an inherently beneficial use that is well settled and well recognized under zoning standards and zoning law.

    We further advised that the facility was architecturally designed to "fit" into the neighborhood scheme. Following one of the goals of the Master Plan adopted by the City of Englewood in 2014 (the "Master Plan") -- to protect the neighborhood character through comparable building types and character defining features -- we explained how the architectural design, shown on Exhibit A, was a work in progress not only developed by studying comparable

Honorable Mayor Michael Wildes
Council President Katharine Glynn
Honorable Englewood City Council Members:
Charles Cobb, Cheryl Weiner Rosenberg, Michael D. Cohen, Wayne Hamer
January 14, 2019
Page 2

architecture in the zone but also by obtaining input directly from neighbors in the area. It is, in fact, a cooperative neighborhood design.

Referring to the Master Plan, we suggested that because of its unique location at the easterly limits of the City, the proposed development was an appropriate transition use, and was located on an appropriately identified arterial road. We presented engineering testimony, traffic testimony and architectural testimony to inform the Council that the proposed use would be adequately screened; would respect the setbacks of the R-AAA zone; and because of the nature of the use, would have minimal impact to the existing traffic patterns in the area. Consistent with the Master Plan's goal to encourage private land owners to cooperate with the City to advance community needs, we pointed out that the proposed facility would have a community room with a separate entrance that would be available for community events.

Further, consistent with the Master Plan's observation that there was a "graying" population in the City of Englewood (the "City") whose needs and those of their families begged to be accommodated by appropriate housing opportunities, we explained how the proposed facility would cater to the growing need of individuals who needed attentive care and who, as the Master Plan suggests, either wanted to remain in their neighborhoods or whose families wanted their senior and disabled loved ones to receive a high level of personal care in a facility within walking distance of their neighborhood. The Master Plan anecdotally refers to an individual named Irving who visits has wife on a daily basis. We suggest that there are many individuals who are similarly situated to Irving who would benefit from the proposed facility.

We also suggested that the well-conceived and neighborhood vetted plan (a copy of which is enclosed as Exhibit B), follows the "good neighbor" references in Englewood's Master Plan.

Now that the Council has reorganized for 2019, our client formally requests that the Parcels be rezoned either to allow assisted living/memory care as a permitted use in the R-AAA zone or to allow the parcels to be developed as a conditional use in the R-AAA zone with appropriate standards adopted to allow building coverage and lot coverage for its development. Suggested standards are respectfully set forth on Exhibit C.

Such a request supports the goals of zoning by both making available to aging and disabled individuals a quality facility and also by fulfilling a need that is becoming more and more an essential step in the continuum of the life cycle of residents in Englewood and in the region. This necessity is also recognized under the Fair Housing Amendments Act 42 U.S.C.A. §3601, et seq.

We had previously submitted a memorandum of law to William Bailey, Esq., your City Attorney, detailing the propriety of our request (attached as Exhibit D) and I will not restate what is presented there. We do point out, however, that your most recent Master Plan, while acknowledging that the issue of the "graying" residents of Englewood needed to be addressed, neither specifically mentioned nor specifically considered the growing need in the community for assisted living/memory care facilities. Such an oversight does not, however, render the use which we propose inconsistent with the Master Plan. On the contrary, the lack of mention in the Master

0005

Honorable Mayor Michael Wildes
Council President Katharine Glynn
Honorable Englewood City Council Members:
Charles Cobb, Cheryl Weiner Rosenberg, Michael D. Cohen, Wayne Hamer
January 14, 2019
Page 3

Plan combined with the requirement of the Fair Housing Amendment Act, provide an affirmative basis to support the rezoning request made herein.

Additionally, by virtue of the Certificate of Need required to operate the proposed assisted living/memory care facility, and its 10% Medicaid obligation, the goals of zoning are further fostered by providing additional avenues for affordable housing and its resultant credits within the City.

CareOne acknowledges that the City of Englewood, without specific reference to its Master Plan, permits assisted living/skilled nursing in the RIM zone. While this recognition is laudatory, the limitation of the use to that particular zone does not, in our opinion, fully advance the overaching zoning goals of the Municipality Land Use Law, (See N.J.S.A. 40:55D-66.1), the State's affordable housing goals, or the requirements of the Fair Housing Amendments Act as it relates to the zoning amendment which we seek. In appropriate circumstances, the law recognizes that when developments intending to aid those who fit within the definition of N.J.S.A. 40:55D-66.1(f) and (g), the isolation of a use to a particular limited area of the community or an outright denial to allow such use in a particular zone can be and has been considered as disparate treatment to those families who choose to seek a higher level of care for themselves or their loved one in their neighborhood but for religious reasons or otherwise only have the ability to walk to the facility to visit or celebrate with family members. See generally, Assisted Living Associates of Moorestown, LLC v. Moorestown Township, 996 F. sup. 409 (D.N.J. 1998). See also, Blake Gardens, LLC v. New Jersey, 309 F. Supp. 3d 240 (D.N.J. 2018).

Since, your decision could not be made in a vacuum, we came before you in August to make an informal presentation to give some context to our proposal. We are prepared to again make a more formal presentation at a council meeting to provide whatever additional information which you may require. We are prepared to meet with your professionals including your Attorney and City Planner to initiate the rezoning process and its necessary referral to the City's Planning Board for a consistency determination. In that regard, we welcome the opportunity to address any questions which you may have with respect to this request and we will timely respond to any request for additional information.

We stand ready to appear at any public session of the Mayor and Council to which we are invited and look forward to working with your professionals in what we submit is a "win-win" for the City and our client. To the extent required, CareOne shall post an appropriate escrow to address the City's professional fees incurred with respect to the application.

Respectfully submitted,
THOMAS J. HERTEN

TJH:ev
Attachments
cc: Edward Hynes, City Manager
Yancy Wazirmas, City Clerk
CareOne Management, LLC