**ANTONELLI KANTOR, P.C.**
Daniel Antonelli (00684-1997)
Vivian Lekkas (01487-2009)
1000 Stuyvesant Avenue, Suite #1
Union, New Jersey 07083
Tel.: 908-623-3676
Fax: 908-866-0336
Attorneys for Defendants,
City of Englewood and City Council of Englewood

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| 431 E PALISADE AVENUE REAL ESTATE, LLC and 7 NORTH WOODLAND STREET, LLC, on behalf of themselves and prospective residents, JOHN and JANE DOES 1-10 <br><br> Plaintiff, <br><br> v. <br><br> CITY OF ENGLEWOOD, and CITY COUNCIL OF ENGLEWOOD, <br><br> Defendants. | **CIVIL ACTION** <br><br> **Civil Action No.: 2:19-cv-14515-BRM-JAD** |

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' ORDER TO SHOW CAUSE SEEKING PRELIMINARY RESTRAINTS AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS

**ANTONELLI KANTOR, PC**
Attorneys for Defendants,
City of Englewood, City Council of Englewood
Daniel Antonelli
1000 Stuyvesant Avenue, Suite 1
Union, New Jersey 07083
Tel.: (908) 623-3676
dantonelli@aknjlaw.com

**Of Counsel and On the Brief:**
    Daniel Antonelli, Esq. (00684-1997)
    Vivian Lekkas, Esq. (01487-2009)

**On the Brief:**
    Daniel H. Kline, Esq. (27820-2018)

## **TABLE OF CONTENTS**

Table of Contents……………………………………………………………………….i, ii

Table of Authorities……………………………………………………………… iii-vii

Preliminary Statement……………………………………………………………………1

Statement of Facts……………………………………………………………………….3

POINT I: THE DOCTRINE OF RIPENESS PREVENTS JUDICIAL INTERVENTION
………………………………………………………………………………………….3

    A.  PLAINTIFFS' ORDER TO SHOW CAUSE MUST BE DENIED AS A MATTER
       OF LAW AS PLAINTIFFS' CLAIMS ARE NOT RIPE FOR JUDICIAL
       DETERMINATION…………………………………………………………..3

    B.  THE MUNICIPAL LAND USE LAW AND THE CASE LAW REQUIRES
       PLAINTIFFS TO SUBMIT THEIR APPLICATION BEFORE THE ZONING
       BOARD OF ADJUSTMENT………………………………………………….6

    C.  PLAINTIFFS' ATTEMPT TO CIRCUMVENT THE ZONING BOARD'S
       AUTHORITY ON THE BASIS OF FUTILITY MUST BE REJECTED…………11

POINT II: PLAINTIFFS HAVE FAILED TO MEET THE BURDEN OF PROOF REQUIRED
FOR THE GRANTING OF A PRELIMINARY INJUNCTION AND AS SUCH THIS COURT
SHOULD NOT ISSUE TEMPORARY RESTRAINTS………………………………….13

    A.  PLAINTIFFS CANNOT ESTABLISH A REASONABLE PROBABILITY OF
       SUCCESS ON THE MERITS………………………………………………..14

    B.  DEFENDANTS' ENFORCEMENT OF THE ZONING CODE DOES NOT
       VIOLATE THE FAIR HOUSING ACT……………………………………..15

       1.  The Zoning Code is Not Discriminatory on its Face and Does Not Create a Case
          of Disparate Treatment Against the City's Elderly and Handicapped Citizens…15

       2.  Plaintiffs Fail To Show A Reasonable Probability of Success That Enforcement
          Of The Zoning Code Has A Disparate Impact On Elderly And Handicapped
          Citizens. ……………………………………………………………..18

       3.  Plaintiffs Failed to Appropriately Request a Reasonable Accommodation and
          Nonetheless, Fail to Assert Allegations Sufficient to Establish that Their Request
          is Reasonable and Necessary……………………………………………22

    C.  DEFENDANTS HAVE NOT VIOLATED THE REHABILITATION ACT OR
       AMERICANS WITH DISABILITIES ACT………………………………..26

    D.  PLAINTIFFS DO NOT HAVE STANDING TO SUE UNDER THE AMERICANS
       WITH DISABILITIES ACT………………………………………………..27

    E.  PLAINTIFFS CANNOT SHOW THAT DEFENDANTS VIOLATED RLUIPA….28

    F.  ENFORCEMENT OF THE ZONING CODE DOES NOT VIOLATE THE
       FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE…………..30

G. PLAINTIFFS WILL SUFFER NO IRREPARABLE HARM..........................31

H. THE BALANCE OF HARDSHIPS WEIGHS DECISIVELY AGAINST APPROVING PLAINTIFFS' "APPLICATION".......................................33

I. THE PUBLIC INTEREST STRONGLY FAVORS DENYING THE INJUNCTIVE RELIEF REQUESTED BY PLAINTIFFS.................................................34

POINT III: DEFENDANTS ARE ENTITLED TO JUDGMENT ON THE PLEADINGS............................................................................................35

A. THE LEGAL STANDARD APPLICABLE TO A MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO F.R.C.P 12(C)....................................35

B. PLAINTIFFS' CLAIMS ADDRESSED UNDER POINTS I AND II CANNOT SURVIVE A MOTION FOR JUDGMENT ON THE PLEADINGS..................37

C. PLAINTIFFS' FOURTH AND FIFTH CLAIMS FOR RELIEF, VIOLATIONS OF 42 U.S.C. § 1983 – POLICY DECISIONS BY THE COUNCIL AND RULE/REGULATION PROMULGATED BY THE COUNCIL, CANNOT SURVIVE A MOTION FOR JUDGMENT ON THE PLEADINGS..................37

D. PLAINTIFF'S SIXTH CLAIM FOR RELIEF, 42 U.S.C. § 1983, VIOLATIONS OF SUBSTANTIVE DUE PROCESS OF THE FIFTH AND FOURTEENTH AMENDMENTS BY COUNCIL, CANNOT SURVIVE A MOTION FOR JUDGMENT ON THE PLEADINGS.......................................................38

E. PLAINTIFFS' SEVENTH AND EIGHTH CLAIMS FOR RELIEF, VIOLATIONS OF STATE LAW, CANNOT SURVIVE A MOTION FOR JUDGMENT ON THE PLEADINGS........................................................................................39

F. PLAINTIFFS' NINTH CLAIM FOR RELIEF, VIOLATION OF THE NJLAD, CANNOT SURVIVE A MOTION FOR JUDGMENT ON THE PLEADINGS AS THIS COURT LACKS JURISDICTION..............................................39

G. PLAINTIFFS' ELEVENTH CLAIM FOR RELIEF, VIOLATION OF 42 U.S.C. § 1983, UNDER THE FREE EXERCISE CLAUSE AND THE FOURTEENTH AMENDMENT, CANNOT SURVIVE A MOTION FOR JUDGMENT ON THE PLEADINGS........................................................................................40

CONCLUSION............................................................................................40

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

Abbott Labs., Inc. v. Gardner,
387 U.S. 136 (1967) ............................................................................................. 3

Acierno v. Mitchell,
6 F.3d 970 (3d Cir. 1993)................................................................................. 8, 12

American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.,
42 F.3d 1421 (3d Cir. 1994), cert. denied, 514 U.S. 1103 (1995) ..................... 13

Arc of New Jersey, Inc. v. State of N.J.,
950 F.Supp. 637 (D.N.J. 1996) ........................................................................ 13

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ......................................................................................... 36

Assisted Living Assoc.'s of Moorestown, L.L.C. v. Moorestown Twp.,
996 F.Supp. 409 (D.N.J. 1998) .................................................................... 15, 25

Bay Area Addiction Research and Treatment, Inc v. City of Antioch,
179 F.3d 725 (9th Cir. 1999) .............................................................................. 6

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007) ......................................................................................... 36

Bryant Woods Inn, Inc. v. Howard County,
124 F.3d 597 (4th Cir. 1997) ............................................................................ 23

Califano v. Sanders,
430 U.S. 99 (1977) ............................................................................................. 3

Caron Found. Of Fla. Inc., v. City of Delray Beach,
879 F.Supp.2d 1353 (S.D.Fla. 2012) ................................................................ 32

Cherry Hill Towers, L.L.C., v. Twp. of Cherry Hill,
407 F.Supp.2d 648 (2006) ............................................................................... 38

City of Cleburne, Texas v. Cleburne Living Ctr.,
473 U.S. 432 (1985) ......................................................................................... 30

Civil Liberties for Urban Believers v. City of Chicago,
342 F.3d 752 (7th Cir. 2003) ............................................................................ 29

Cmty. Servs., Inc. v. Heidelberg Tp.,
439 F.Supp. 2d 380 (M.D. Pa. 2006) ............................................................... 16

Cmty. Servs., Inc. v. Wind Gap Mun. Auth.,
421 F.3d 170 (3d Cir. 2005) ............................................................................ 16

Congregation Anshei Roosevelt v. Planning and Zoning Bd. of Borough of Roosevelt,
338 Fed.App'x. 214 (3d Cir. 2009) ............................................................. 3, 4, 5

Congregation of Kol Ami v. Abington Twp.,
309 F.3d 120 (3d. Cir. 2002) ........................................................................... 31

Continental Group, Inc. v. Amoco Chemicals Corp.,
614 F.2d 351 (3d Cir. 1980) ........................................................................................ 31

County Concrete Corp. v. Twp. of Roxbury,
442 F.3d 159 (3d Cir. 2006) .................................................................................. 30, 31

DeBlasio v. Zoning Bd. of Adj.,
53 F.3d 592 (3d Cir. 1995) .......................................................................................... 38

Doe v. City of Butler,
892 F.2d 315 (3d Cir. 1989) ........................................................................................ 15

Easter Seal Soc. v. Twp. of N. Bergen,
798 F.Supp. 228 (D.N.J. 1992) .................................................................................... 32

Employment Div. v. Smith,
494 U.S. 872 (1990) ..................................................................................................... 40

Feiler v. Fort Lee Bd. of Adj.,
240 N.J. Super. 250 (1990) .......................................................................................... 12

Ferraro v. Zoning Bd. of Adj. of Twp. of Holmdel,
119 N.J. 61 (1990) ......................................................................................................... 7

Finn v. Wayne Twp.,
45 N.J. Super. 375 (App. Div. 1957) ............................................................................. 7

Fowler v. UPMC Shadyside,
578 F.3d 203 (3d Cir. 2009) .......................................................................................... 7

Gerardi v. Pelullo,
16 F.3d 1363 (3d Cir. 1994) ........................................................................................ 14

Hedges v. United States,
404 F.3d 744, 750 (3d Cir. 2005) ................................................................................ 35

House of Fire Christian Church v. Zoning Bd. of Adj. of City of Clifton,
379 N.J. Super. 526 (App. Div. 2005) ........................................................................... 5

Hovsons, Inc. v. Twp. of Brick,
89 F.3d 1096 (3d Cir. 1996) ................................................................... 4, 9, 20, 22, 23, 24

In re Arthur Treacher's Franchisee Litigation,
689 F.2d 1137 (3d Cir. 1982) ...................................................................................... 31

In re Burlington Coat Factory Sec. Litig.,
114 F.3d 1410 (3d Cir. 1997) ...................................................................................... 35

In re Four Three Oh, Inc.,
256 F.3d 107 (2001) ............................................................................................... 31, 32

Kessler Inst. for Rehab. Inc. v. Mayor and Council of Borough of Essex Fells,
876 F.Supp. 641 (1995) .................................................................................. 27, 28, 39, 40

King v. Christie,
981 F.Supp.2d 296 (D.N.J. 2013) ................................................................................ 40

Lapid-Laurel, LLC v. Zoning Bd. of Adj. of Twp. of Scotch Plains,
284 F.3d 442 (3d Cir. 2002) ........... 5, 7, 8, 9, 10, 11, 12, 18, 19, 20, 21, 22, 23, 24, 25, 32

Lauderbaugh v. Hopewell Twp.,
391 F.3d 568 (3d Cir. 2003) ................................................................................. 5

Lighthouse Institute for Evangelism Inc. v. City of Long Branch,
100 Fed. App'x. 70 (3d Cir. 2004) ....................................................................... 29

Lighthouse Institute for Evangelism, Inc. v. City of Long Branch,
510 F.3d 253 (3d Cir. 2007) ........................................................................... 29, 30

Marriott Senior Living Serv.'s v. Springfield Twp.,
78 F.Supp.2d 376 (E.D. Pa. 1999) ................................................................ 9, 10, 12

McLarty v. Borough of Ramsey,
270 F.2d 232 (3d Cir. 1959) ................................................................................. 5

Messiah Baptist Church v. County of Jefferson,
859 F.2d 820 (10th Cir.1988) ............................................................................... 5

Murphy v. New Milford Zoning Comm'n,
402 F.3d 342 (2d Cir. 2005) ....................................................................... 3, 4, 5, 12

Myers v. Ocean City Zoning Bd. of Adj.,
439 N.J. Super. 96 (App. Div. 2015) ..................................................................... 6

Nami v. Faulver,
82 F.3d 63 (3d Cir. 1996) ................................................................................... 35

Nestor Colon Medina & Sucesores, Inc. v. Custodio,
964 F.2d 32 (1st Cir. 1992) ................................................................................. 38

New Directions Treatment Servs. v. City of Reading,
490 F.3d 293 (3d Cir. 2007) ............................................................................... 26

Newman v. GHS Osteopathic, Inc.,
60 F.3d 153 (3d Cir. 1995) ................................................................................. 26

Nutrasweet Co. v. Vit-Mar Enterprises,
176 F.3d 151 (3d Cir. 1999) ............................................................................... 14

Oburn v. Shapp,
521 F.2d 142 (3d Cir. 1975) ............................................................................... 14

Opticians Ass'n v. Independent Opticians of America,
920 F.2d 187 (3d Cir. 1990) ............................................................................... 14

P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC,
428 F.3d 504 (3d Cir. 2005) ............................................................................... 14

Pace Resources, Inc. v. Shrewsbury Twp.,
808 F.3d 1023 (3d Cir. 1987) ............................................................................. 37

Pennsylvania Care, LLC v. Ashley Borough,
2010 WL 4955601 (M.D. Pa. 2010) ...................................................................... 5

Punnett v. Carter,
621 F.2d 578 (3d Cir. 1980) ............................................................... 5

Revell v. Port. Auth. of N.Y. and N.J.,
598 F.3d 128 (3d Cir. 2010) ............................................................... 31

Rose v. Bartle,
871 F.2d 331 (3d Cir. 1989) ............................................................... 35

Santiago v. Warminster Twp.,
629 F.3d 121, 128 (3d Cir. 2010) ....................................................... 35

Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment,
152 N.J. 309 (1998) ............................................................................ 19

Taylor Inv., Ltd. v. Upper Darby Twp.,
983 F.3d 1285 (3d Cir. 1993) ............................................................. 5

Thomas v. Union Carbide Agric Prods. Co.,
473 U.S. 568 (1985) ........................................................................... 3

TWC Realty v. Zoning Bd. of Adjustment,
315 N.J. Super. 205 (Law Div. 1998),
aff'd o.b. 321 N.J. Super. 216 (App. Div. 1999) ............................... 6

United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA,
316 F.3d 392 (2003) ........................................................................... 38

United States v. Village of Palatine,
37 F.3d 1230 (7th Cir. 1994) ............................................................. 11

Village of Belle Terre v. Boraas,
416 U.S. 1 (1974) ............................................................................... 4

Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,
473 U.S. 172 (1985) ........................................................................... 4

**Federal Rules of Civil Procedure**                                    **Page(s)**

F.R.C.P. 12(b)(1) ........................................................................ 27, 40
F.R.C.P. 12(b)(6) ........................................................................ 35, 36

**Federal Statutes**                                                    **Page(s)**

29 U.S.C. § 504 ............................................................................... 5
29 U.S.C. § 749 ............................................................................... 27
42 U.S.C. § 12132 ........................................................................... 27
42 U.S.C. § 12133 ........................................................................... 27
42 U.S.C. § 1983 ........................................................................ 5, 37, 38, 40
42 U.S.C. § 2000cc(a)(1) ............................................................ 28, 29
42 U.S.C. § 2000cc(b)(1) ............................................................ 29
42 U.S.C. § 2000cc(b)(2) ............................................................ 30
42 U.S.C. § 2000cc(b)(3) ............................................................ 30
42 U.S.C. § 2000cc-3(g) .............................................................. 28

42 U.S.C. § 2000cc-5(7)(A) ................................................................ 28
42 U.S.C. § 2000cc-5(7)(B) ................................................................ 28
42 U.S.C. § 3601 ....................................................................... 5, 15
42 U.S.C. § 3604(f) ...................................................................... 15

**State Statutes**                                                  **Page(s)**

N.J.S.A. 30:8 ............................................................................ 39
N.J.S.A. 40:55D-1 ........................................................................ 6
N.J.S.A. 40:55D-26(a) ................................................................... 21
N.J.S.A. 40:55D-62(a) .................................................................... 6
N.J.S.A. 40:55D-62.1 ................................................................... 21
N.J.S.A. 40:55D-64 ..................................................................... 21
N.J.S.A. 40:55D-70(d) ............................................................... 9, 39
N.J.S.A. 40:55D-77 ....................................................................... 7

**Local Ordinance(s)**                                              **Page(s)**

Englewood General Ordinances Ch. 250 Art. II § 250-3 ............................... 10

## **PRELIMINARY STATEMENT**

Plaintiffs 431 E. Palisade Avenue Real Estate, LLC and 7 North Woodland Street, LLC ("Plaintiffs") come before this Court seeking extraordinary judicial relief to: (1) preliminarily invalidate the City of Englewood's ("City") zoning code and (2) for approval of "their present zoning application" by avoiding established laws and case precedent which require them to seek approval from the City's Zoning Board of Adjustment ("Zoning Board").

Plaintiffs cannot establish any of the required elements necessary to grant them the extraordinary relief they seek. Plaintiffs come to court with unclean hands claiming that the City has "refused to act on Plaintiffs' request for approval of the Facility." This is a completely meritless claim that Plaintiffs ironically refer to in their brief as their "zoning application," when it is undisputed that Plaintiffs never filed any application before the Zoning Board. As such, Plaintiffs' Order to Show Cause, seeking preliminary restraints and other relief, is not ripe for consideration by this Court and should be dismissed. Controlling cases in this District and the Third Circuit cited by Plaintiffs and relied on by Defendants have one common and important fact that has been conveniently ignored by the Plaintiffs. In each case, the plaintiffs made applications before a land use board.

However, in this case, Plaintiffs seek to construct a 150-bed, six-story building contrary to the Master Plan, while circumventing all procedural requirements applicable to all other applicants and in total contravention of the Municipal Land Use Law and the City's own ordinance requirements. It is imperative that Plaintiffs not be permitted to use the litigation process as a sword in an attempt to contravene the City's land use regulations as the Zoning Board is the sole authority empowered under the law to rule on Plaintiffs' application and is the entity with the requisite expertise and localized knowledge to render such decisions.

1

As Plaintiffs have failed to make an application before the Zoning Board, the Doctrine of Ripeness requires a dismissal of Plaintiffs' claims. Moreover, any claims by Plaintiffs that an application before the Zoning Board would be futile is wholly unsupported and must be rejected. To the contrary, the Zoning Board has a history of acting favorably to applicants before it, and Plaintiffs fail to set forth record evidence that would indicate even an indicium of futility by proceeding before this Zoning Board.

Notwithstanding the aforementioned, Plaintiffs inaccurately state that assisted living and memory care facilities are zoned out of all residential districts in the City when in fact assisted living facilities are permitted as of right in the Research, Industry and Medical ("RIM") zone, which includes residential housing, namely apartment and condominium communities for senior citizens. Despite the City spanning a mere five square miles, it is undisputed that the City of Englewood approved the Bristal, which has opened and expanded in the RIM zone, the Lillian Booth Actors Home which already exists in a single-family residence zone, and the Zoning Board has approved various other uses contrary to the zoning code.   Moreover, nothing prevents disabled individuals or those requiring assistance from residing in any of the one-family or multiple residential districts within the City.

Plaintiffs also assert that they will suffer irreparable harm on the basis that their contract of sale could potentially expire on August 9, 2019, which it did not. Nonetheless, any such loss would be compensable through money damages and is therefore, not irreparable.

For these reasons and the reasons more fully set forth below, Defendants ask that this Court deny Plaintiffs' Order to Show Cause and grant Defendants' Motion for Judgment on the Pleadings, dismissing Plaintiffs' Complaint.

## STATEMENT OF FACTS

Defendants rely upon the pleadings and Certifications submitted in support of their opposition to Plaintiffs' Order to Show Cause and in support of their Cross-Motion for Judgment on the Pleadings. Those facts are incorporated here by reference and are not repeated here for purposes of brevity.

## LEGAL ARGUMENT

### POINT I
### THE DOCTRINE OF RIPENESS PREVENTS JUDICIAL INTERVENTION

**A. PLAINTIFFS' ORDER TO SHOW CAUSE MUST BE DENIED AS A MATTER OF LAW AS PLAINTIFFS' CLAIMS ARE NOT RIPE FOR JUDICIAL DETERMINATION**

As this Court is well aware, ripeness is a jurisdictional inquiry that is rooted in both the case or controversy requirement of the United States Constitution's Article III as well as court decisions placing limitations on the exercise of judicial authority. See Congregation Anshei Roosevelt v. Planning & Zoning Bd., 338 Fed Appx. 214, 216-17 (3d Cir. 2009). The doctrine of ripeness seeks "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements…" Abbott Labs v. Gardner, 387 U.S. 136, 148 (1967), overruled on other grounds, Califano v. Sanders, 430 U.S. 99 (1977).

In making a determination as to ripeness, the Court is required to "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005) (citations omitted). The fitness of the issues for judicial decision respects the restraints that Article III places on this Court. It requires this Court to weigh "the sensitivity of the issues presented and whether there exists a need for further factual development. See, e.g., Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 581 (1985). The hardship to the parties addresses prudential

considerations, "requiring courts to gauge the risk and severity of injury to a party that will result if the exercise of jurisdiction is declined." Murphy, supra. at 347.

      The United States Supreme Court first developed specific ripeness requirements for land use disputes in Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnston City, 473 U.S. 172 (1985). Although Williamson involved a challenge to a regulatory taking, the Third Circuit has subsequently applied the ripeness doctrine to land use disputes involving other constitutional claims, and has adopted the first prong of Williamson with regard to constitutional claims. See e.g., Congregation Anshei, supra. at 217. The question of ripeness is a determination of whether "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." (the "Williamson finality prong"). Id. at 186. The Third Circuit has explained that the purpose of finality is to: (1) aid in the development of a full record; (2) provide the court with knowledge as to how a regulation will be applied to a particular property; (3) it may obviate the need for the court to decide constitutional disputes; and (4) it shows the judiciary's appreciation that land use disputes are uniquely matters of local concern." Congregation Anshei, supra., at 217.

      In the context of zoning codes, the Supreme Court has recognized that zoning codes are entitled to a considerable amount of deference. Village of Belle Terre v. Boraas, 416 U.S. 1, 7-8 (1974). Moreover, it has been recognized that Congress did not intend to "give handicapped persons carte balance to determine where and how they would live regardless of zoning ordinances to the contrary." Hovsons, Inc. v. Township of Brick, 89 F.3d 1096 (1996) (internal quotations omitted). Courts hold that cases are premature on account of the ripeness doctrine. For example, the Congregation Anshei Court determined that the factual record was not sufficiently developed as plaintiffs had not applied for a variance where the zoning board would have been able to develop

4

a record to determine the potential effect of the use and whether the use was permitted. Congregation Anshei, supra., at 218-19.

In House of Fire Christian Church v. Zoning Bd. of Adjustment of City of Clifton, 379 N.J. Super. 526, 547-48 (App. Div. 2005), a church's claim that the city zoning board violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by requiring it to comply with a conditional use ordinance or successfully seek variance relief was held to be premature. In Lauderbaugh v. Hopewell Twp., 391 F.3d 568 (3d Cir. 2003), the Court held that the finality rule bars constitutional claims by property owners who have challenged the denial of a permit by an initial decision-maker but failed to take advantage of available, subsequent procedures. Several other courts have found claims to be premature on the basis of finality. See Murphy, 402 F.3d at 350 (First Amendment Free Exercise Claim, state claims, and RLUIPA claim); Taylor Inv., Ltd. v. Upper Darby Twp., 983 F.2d 1985 (3d Cir. 1993) (claims brought under 42 U.S.C. § 1983 for violations of the due process and equal protection clauses); Lapid-Laurel v. Zoning Bd. of Adjustment of the Tp. of Scotch Plains, 284 F.3d 442, 451-52 (3d Cir. 2002) (Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, et seq.); and Pennsylvania Care, LLC v. Ashley Borough, 2010 WL 4955601 (M.D. Pa. 2010) (due process and equal protection under 42 U.S.C. § 1983, discrimination claims under Section 504 of the Rehabilitation Act, 29 U.S.C. § 504, and the ADA); McLarty v. Borough of Ramsey, 270 F.2d 232, 234 (3d Cir. 1959) (affirming dismissal for lack of jurisdiction on constitutional challenge to a municipal zoning ordinance where there was no application to the zoning board).

Plaintiffs attempt to paint an incomplete picture with broad brush strokes in an ill-conceived attempt to avoid the requirements of ripeness. Plaintiffs Picasso-like distortion of law is made in bad faith in light of the Doctrine of Ripeness. Plaintiffs incorrectly claim that the City's

Code impermissibly zones assisted living and memory care facilities out of <u>all</u> residential districts and that the code runs afoul of Federal and state anti-discrimination laws. These claims are unsupported by the facts of the instant matter and contradicted by Plaintiffs' own Complaint. <u>See</u> Pl.'s Compl. at ¶ 37 FN4 (admitting that the Lillian Booth Actors Home, a skilled nursing facility that also offers assisted living, memory care, and rehabilitation services, is situated in a residential zone). Moreover, the RIM zone provides for multi-residential housing. The fact remains that in all of the land use cases cited by Plaintiffs to support their position, all plaintiffs made an application before a land use board.[1] It remains undisputed that here, Plaintiffs refuse to do so, yet are required to do so by the Municipal Land Use Law as further briefed under Point I(B) below. Plaintiffs' attempt to circumvent the laws, requires a dismissal of all claims as they are not ripe.[2]

## B. THE MUNICIPAL LAND USE LAW AND THE CASE LAW REQUIRES PLAINTIFFS TO SUBMIT THEIR APPLICATION BEFORE THE ZONING BOARD OF ADJUSTMENT

The Municipal Land Use Law, <u>N.J.S.A.</u> 40:55D-1 *et seq.*, sets forth certain requirements that Plaintiffs have completely failed to abide by despite being advised by the City of the appropriate action to be taken.

First, as to Plaintiffs' request to amend the existing ordinances, there is simply no requirement that the City Council takes any action on such a request. <u>See generally</u>, <u>N.J.S.A.</u> 40:55D-62(a); <u>see also</u> <u>Myers v. Ocean City Zoning Bd. of Adjustment</u>, 439 N.J. Super. 96 (App. Div. 2015) (nothing in the plain language of the statute requires a governing body to affirmatively act or to provide reasons for its inaction); <u>TWC Realty v. Zoning Bd. of Adjustment</u>, 315 N.J.

---

[1] The only exception to this statement is <u>Bay Area Addiction Research and Treatment, Inc v. City of Antioch</u>, 179 F.3d 725, 730-31 (9th Cir. 1999), which is non-precedential. Nonetheless, in that case the facts are completely different than the case at hand since the contested ordinances were enacted in direct response to plaintiff's purchase of property. In this case, there has been no such action. In fact in 2014, the RIM zone was amended to specifically include assisted living facilities as a permitted use, and the Zoning Board approved the Bristal shortly thereafter.

[2] The only exception to the ripeness argument pertains to Plaintiffs' claim under the New Jersey Law Against Discrimination ("LAD") at Count Nine. However, that claim independently fails as this court lacks jurisdiction as argued under Point III below.

Super. 205, 215 (Law Div. 1998), aff'd o.b. 321 N.J. Super. 216 (App. Div. 1999). In Finn v. Wayne Twp., 45 N.J. Super. 375, 379 (App. Div. 1957), the Court held that "although the authority exists to adopt a zoning ordinance, the determination to do so or to refrain therefrom rests in the discretion of the governing body. Courts have no general supervisory over the exercise of that discretion." While the plaintiffs in that case argued that the inaction of the committee left them without remedy in the wake of discriminatory action against their property, the Appellate Division noted the availability of the variance procedure. Based upon the foregoing, the Council's decision not to take action on Plaintiffs' request was wholly appropriate.

Second, while it is undisputed that Plaintiffs made a request to the City Council to amend the ordinance, it is disputed as to whether Plaintiff made a request for a reasonable accommodation to the City Council; however, notwithstanding same, such a request needed to be presented to the Zoning Board of Adjustment, the appropriate authority with localized knowledge capable of rendering such a decision.[3] Had Plaintiffs done so, all of the land use procedures would have been implemented including proper notice to those within 200 feet of the proposed project.

In Lapid-Laurel, supra., the Third Circuit addressed numerous issues germane to the matter before this Court. The developer in that case unsuccessfully sought approval from the zoning board to build a 95-bed care facility for the elderly. Id. More specifically, in determining that the Court should not look outside the administrative record when reviewing plaintiff's reasonable

---

[3]   Although the aforementioned arguments alone are adequate to defeat Plaintiffs' claims on the grounds of ripeness, Plaintiffs are faced with yet another incurable defect. Plaintiffs' property is located in both Englewood and Englewood Cliffs. See Pl.'s Compl. at ¶ 76. This is important because, upon information and belief, Plaintiffs have made no formal application before the Englewood Cliffs governing body or land use body regarding their Property. New Jersey Courts have found that in the absence of an intermunicipal zoning agreement, an applicant is required to pursue approval from all municipalities where the property is situated. See generally Ferraro v. Zoning Bd. of Adj. of Twp. of Holmdel, 119 N.J. 61 (1990). Without a cooperative response from both municipalities, the property may not be susceptible to development. Id. at 72-73. Therefore, in the absence of an intermunicipal cooperative zoning agreement, or in the alternative, an intermunicipal regional land use board, both pursuant to N.J.S.A. 40:55D-77, a developer must apply to the land use boards of each municipality that their property is in.

accommodation claim under the FHA, the Third Circuit reviewed the various procedural requirements set forth in the MLUL which further support Defendants' ripeness argument. Id. at 454.

Significantly, in Lapid-Laurel, plaintiff had submitted applications for variances to the zoning board before instituting its federal action. Plaintiff argued that the federal court should permit it to supplement the administrative record below where the zoning board denied its variance and site plan applications. Id. at 448-50. As a matter of first impression as to the proper scope of review for a federal court reviewing an FHA reasonable accommodations challenge to a decision of a local land use board, the Third Circuit held that "federal courts should limited their review to the materials that were presented to the local land use board, except in circumstances where the board prevents applicants from presenting sufficient information." Id. at 450. "This rule permits local land use boards to have the initial opportunity to provide reasonable accommodations to facilitate housing for the handicapped; it also comports with the tradition in American law that land use decisions are quintessentially local in nature. Id. at 452 (internal citations omitted). The Third Circuit, in part, relied upon Acierno v. Mitchell, 6 F.3d 970 (3d Cir. 19993) (stating that courts should not insert themselves in "delicate area[s]," subject to local regulation until local authorities have "had the opportunity to apply authoritatively" their specific regulations).

The Third Circuit emphatically stated that "most importantly," it agreed with the district court that "Lapid-Laurel was given a full and fair opportunity to present its case before the Zoning Board. Over the course of four hearings, Lapid…presented five witnesses and various exhibits." Id. at 454. The Third Circuit further noted that the information relied upon by the board in denying the variances included concerns about traffic safety and emergency vehicle access which would certainly be relevant to the question of whether the variance would cause "substantial detriment to

the public good" pursuant to N.J.S.A. 40:55D-70(d). The Third Circuit stated that its holding limited review to the administrative record assumes that **plaintiffs who bring reasonable accommodations claims against localities must usually first seek redress through variance applications to the local land use authority.** Id. at n. 5 (emphasis added).

In Hovsons, Inc. v. Township of Brick, 89 F.3d 1096, 1099-100 (Third Cir. 1996), another case cited by Plaintiffs, and which was decided before Lapid-Laurel, the Third Circuit addressed plaintiff's claim only *after* plaintiff had applied for a variance, which was ultimately denied after being debated extensively over a total of seventeen public hearings.  In Hovsons, even after the Law Division reversed the denial of plaintiff's application, the matter was remanded back to the zoning board for further reconsideration. Id. at 1100.  While the Third Circuit found that the blanket exclusion of nursing homes from its residential areas coupled with the zoning board's refusal to permit the construction of this specific facility in question defied the purpose of the FHAA, the Third Circuit recognized that in order to establish that the accommodation was not reasonable, the Township of Brick was required to prove that it could not have granted the variance "without imposing undue financial and administrative burdens." In this case, the Zoning Board has never even been afforded any opportunity whatsoever to address Plaintiffs' proposal.

In the case of Marriott Senior Living Serv.'s v. Springfield Twp., 78 F.Supp.2d 376 (E.D. Pa. 1999), the District Court held that where plaintiff only made informal inquiries of Township officials, never formally submitted its proposed plan for review to the appropriate Township authorities, and failed to seek variances or other relief from the Township's Zoning Code, plaintiff's FHA "reasonable accommodation" claim was not ripe for judicial review. Id. at 379, 389. Despite having made numerous inquiries to the Township, including but not limited to, attempting to win support from the Commissioners to permit the use, proceeding with an

application for an amendment to the Zoning Code, providing an informal engineering sketch, issuing a report to the President of the Planning Commission, and making a presentation to the Planning Commission, the Marriott Court held that, "… the applicant must show that under the circumstances it has afforded the appropriate local authority a reasonable opportunity to consider the project in some final form, to seek the input of the public and of other affected persons, and to state the reasons for its decision." Marriott, 78 F.Supp.2d at 385-86 (internal citations omitted). The plaintiffs in Marriott were required by Township Ordinances to submit a Preliminary Plan and Final Plan, and since defendants were not given a meaningful opportunity to review a formal proposal, to solicit comments from the public and others, or to issue a written decision, it was held that the Township had not issued a final decision on plaintiff's reasonable accommodation request. Id. at 389.

The Plaintiffs in this case similarly must be required to adhere to the land use regulations. In the instant matter, the City's General Ordinances Ch. 250 Art. II § 250-3 "Applications", require that all applications for development shall be initially presented to the Zoning Officer. (See Certification of Thomas Herten, Esq., attached to Plaintiffs' moving papers, Exhibit C, docket entry 2-5, p. 3). Additionally, § 250-3 requires the Zoning Officer to refer the application to the appropriate municipal agency and to assist the applicant in processing the application for development. Id. Despite the MLUL and the City's own Ordinance requirements, the Plaintiffs in this case completely failed to abide by these procedures. If they had abided by such requirements, notice would have been provided to the neighbors so that they had opportunity to express their opinions, hearings held with opportunity for all parties to elicit valuable information, and the Zoning Board would have rendered a decision. Plaintiffs' inaction has left this Court with absolutely no administrative record to review and the Zoning Board has been deprived of applying

its particularized knowledge to Plaintiffs' proposed project. As stated in the former Mayors' Declaration submitted in support of Defendants, there is a long history of upzoning lands in several zones in the City and changes have been made to the Master Plan. This is the type of localized knowledge a Zoning Board is empowered to apply to applications before it. In no way did this Zoning Board prevent Plaintiffs from presenting sufficient information; rather, Plaintiffs were advised to submit their application to the Zoning Board but simply failed to do so completely circumventing its authority.

By granting Plaintiffs' request for extraordinary relief, the Defendants would be deprived of carrying out their official duties and addressing issues such as the positive and negative criteria as applied to the objectives of the Master Plan, traffic safety concerns, safety concerns as related to the Dwight Englewood School, which is located across the street, the effect on property values, the public need for such a facility, and other factors that Zoning Boards are empowered to review.

## C. PLAINTIFFS' ATTEMPT TO CIRCUMVENT THE ZONING BOARD'S AUTHORITY ON THE BASIS OF FUTILITY MUST BE REJECTED

While Plaintiffs gloss over their duty to apply to the Zoning Board of Adjustment, their Verified Complaint asserts, without any basis, that it would be futile to apply to the Zoning Board of Adjustment. At pages 10-11 of their brief, Plaintiffs attempt to argue futility simply because their project would require a variance from the bulk standards set in R-AAA and because after considerable time and expenses the approvals obtained "could" be rendered invalid because such aggressive relief would veer into exercising zoning powers committed by statute to Council. Such arguments are baseless, speculative, and simply are not grounded in any law. In Lapid-Laurel, the Third Circuit recognized the Seventh Circuit's decision in United States v. Village of Palatine, 37 F.3d 1230 (7th Cir. 1994), where the court identified two exceptions where the claim would be ripe even if the plaintiff had not first sought a variance: (1) if the claim was a challenge to the variance

application itself; and (2) if the variance application was demonstrably futile. Lapid-Laurel, 284 F.3d at n. 5.

In Marriott, the Court reasoned that plaintiff's reasonable accommodation claim was not ripe because plaintiffs had not shown that pursuing a final decision would be futile. Id. This is identical to the instant matter because Plaintiffs have not shown that pursuing a final decision would be futile. The Court held that "the property owner has a high burden of proving that a final decision has been reached by the agency before it may seek compensatory or injunctive relief in federal court". Id., citing, Acierno, 6 F.3d at 975. This "high burden" is one that Plaintiffs simply cannot meet. Id. In finding that future attempts by plaintiff would not be futile, the Marriott Court stated that the "evidence in this case does not show that the Township attempted to undermine the approval process or refused to consider Marriott's proposal or that in the past the Township had dismissed similar types of proposed developments." Marriott, 78 F.Supp.2d at 386.

The Second Circuit in Murphy stated that because plaintiffs failed to submit a single variance application, it foreclosed any argument of futility. Murphy, supra., 402 F.3d at n. 7 [emphasis added]. **In reversing the district court, the Second Circuit held that until the variance and appeals process was exhausted and a final, definite decision from local zoning authorities was rendered, the dispute remained a matter of unique local import for which the court lacked jurisdiction.** Id. at 354.

Plaintiffs cite to Feiler v. Fort Lee Bd. of Adj., 240 N.J. Super. 250 (1990) to support their inane argument that applying to the Zoning Board would be futile. Feiler is wholly distinguishable from the instant matter. In Fieler, plaintiffs' proposed project, a mixed commercial and high-rise residential development, would have encompassed the entire R-4A zone (one and two-family residential zone). Id. at 252. The Fieler Court held that by granting plaintiffs' variances, the zoning

board radically altered the <u>entire</u> R-4A zone by converting via variance the low density one and two-family zone into a high density residential tower district, and because the <u>entire</u> zone was impacted, this constituted a *de facto* rezoning of the <u>entire</u> district, a power expressly delegated to the governing body, not the zoning board. <u>Id.</u> at 256-57 (emphasis added).

Plaintiffs do not even allege facts sufficient to support a futility argument nor do any such facts exist. During the May 7, 2019 Council meeting, Zoning Officer Scott encouraged Plaintiffs to submit their application to the appropriate land use board. (See Herten Certification, Exhibit K, 81:25-82:2). Plaintiffs' baseless allegations are easily defeated by the fact that the Zoning Board has passed numerous use variances and expansions in the R-AAA zone. For example, the Moriah School, an Orthodox Jewish school, was approved and has been dramatically expanded now holding a capacity of up to 1,000 students in 46 classrooms. (See Scott Declaration, ¶¶ 12-13). The Dwight Englewood School, was approved for expansion in 2015 and 2018 and the Actors Fund Home, an assisted living facility, also obtained a use variance in 2014 and later was approved for an expansion adding a nursing care facility of 20 beds. (See Scott Declaration, ¶¶ 14-19). In 2014, following an amendment to the RIM zone to permit assisted living facilities as a permitted use, the Bristal, was approved for 309 beds in 2016. (See Scott Declaration, ¶ 21).  Based upon the foregoing, Plaintiffs' futility argument is meritless and must be rejected.

## POINT II
### PLAINTIFFS HAVE FAILED TO MEET THE BURDEN OF PROOF REQUIRED FOR THE GRANTING OF A PRELIMINARY INJUNCTION AND AS SUCH THIS COURT SHOULD NOT ISSUE TEMPORARY RESTRAINTS.

Injunctive relief is an "extraordinary remedy," that should be granted only in limited circumstances. <u>See</u> <u>American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.</u>, 42 F.3d 1421, 1426-27 (3d Cir. 1994), cert. denied, 514 U.S. 1103 (1995). In assessing whether a preliminary injunction is warranted, the Court must consider: (1) the likelihood that the plaintiff will prevail

on the merits; (2) the extent to which the plaintiff is being irreparably harmed by the conduct

complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary

injunction is issued; and (4) the public interest. See Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir.

1994); Opticians Ass'n v. Independent Opticians of America, 920 F.2d 187, 191-92 (3d Cir. 1990).

The Court may order the "extraordinary remedy" of a preliminary injunction only if the moving

party establishes all four factors in its favor. P.C. Yonkers, Inc. v. Celebrations the Party and

Seasonal Superstore, LLC, 428 F.3d 504, 508 (3d Cir. 2005). The burden lies with the plaintiff to

establish **every element** in its favor, or the grant of a preliminary injunction is inappropriate. See

Nutrasweet Co. v. Vit-Mar Enterprises, 176 F.3d 151, 153 (3d Cir. 1999) (internal citations

omitted).

Plaintiffs cannot meet any single factor required for this Court to grant a preliminary

injunction, let alone all four factors. As discussed at length under Point I, notwithstanding that

Plaintiffs' claims are not ripe, the Plaintiffs also independently fail to show a reasonable

probability of success on the merits, irreparable harm, that granting preliminary relief will not

result in even greater harm to the nonmoving party, and that granting preliminary relief would be

in the public interest. Therefore, for the reasons set forth already under Point I and at length below,

Plaintiffs cannot meet any factors for a preliminary injunction, and we respectfully request that

this Court deny Plaintiffs' request for a preliminary injunction.

## A. PLAINTIFFS CANNOT ESTABLISH A REASONABLE PROBABILITY OF SUCCESS ON THE MERITS

As briefed above, Plaintiffs must establish all of the required elements for the granting of

a preliminary injunction, which is an extraordinary remedy. In order for Plaintiffs to meet the first

criteria for a preliminary injunction, "the burden is on the party seeking relief to make a prima

facie case showing a reasonable probability that it will prevail on the merits." Oburn v. Shapp, 521

F.2d 142, 148 (3d Cir. 1975) (internal citations omitted). In this case, Plaintiffs cannot make such a showing, both because their claims are not ripe as argued under Point I, but also because the allegations fail independently on their merits as argued below.

## B. DEFENDANTS' ENFORCEMENT OF THE ZONING CODE DOES NOT VIOLATE THE FAIR HOUSING ACT

At Point I(A) of their brief, Plaintiffs make multiple baseless accusations alleging discrimination in violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"). The FHA declares that it is unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter" because of a physical disability or handicap. Id. at § 3604(f). A plaintiff can bring a claim under the FHA for: (i) disparate impact; (ii) disparate treatment; and (iii) refusal to make a reasonable accommodation. See Assisted Living Assocs. of Moorestown, LLC v. Moorestown Twp, 996 F.Supp. 409, 441 (D.N.J. 1998). Plaintiffs are alleging violations of all three (3) of the aforementioned FHA claims. However, as set forth below, Plaintiffs have failed to demonstrate a likelihood of success, therefore failing to meet this prong for injunctive relief.

### 1. The Zoning Code is Not Discriminatory on its Face and Does Not Create a Case of Disparate Treatment Against the City's Elderly and Handicapped Citizens.

First, at Point I(A)(1)(a) of their brief, Plaintiffs allege that the City's Zoning Code is facially discriminatory against the handicapped and that enforcement of the Zoning Code creates a case of disparate treatment against the handicapped. However, Plaintiffs provide no facts to support that the ordinance on its face is discriminatory. A plaintiff makes out a prima facie case under Title VIII, as amended by the FHA, by showing either: (1) intentional disparate treatment of the handicapped with regard to housing; or (2) disparate impact alone, without proof of discriminatory intent. Doe v. City of Butler, 892 F.2d 315, 323 (3d Cir. 1989). In order to establish a case of disparate treatment against a public entity, the plaintiff must demonstrate "that a given

legislative provision discriminates against the handicapped on its face, i.e. applies different rules to the disabled than are applied to others." Arc of New Jersey, supra., 950 F.Supp. 637, 643 (D.N.J. 1996). In such a situation, "the proper focus is on the explicit terms of the legislation." Arc of New Jersey, Inc. v. State of N.J., 950 F.Supp. 637, 643 (D.N.J. 1996). "A plaintiff must demonstrate that some discriminatory purpose was a motivating factor behind the challenged action." Cmty. Servs., Inc. v. Wind Gap Mun. Auth., 421 F.3d 170, 177 (3d Cir. 2005) (internal citations omitted).

In Community Services, Inc. v. Heidelberg Tp., 439 F.Supp. 2d 380 (M.D. Pa. 2006), which is non-binding authority, the plaintiff, a regional healthcare provider, brought an action on behalf of eight mentally disabled individuals alleging that a zoning board intentionally interpreted a zoning ordinance to prevent, and refused to grant a reasonable accommodation to permit, the individuals from moving into a home within the Township. Significantly, the plaintiff in that case first went before the Zoning Board of Adjustment. Id. While the court found a high probability of success on the intentional discrimination claim based upon discriminatory purpose, it relied upon the fact that plaintiff would not disclose the exact nature of the residents' mental illnesses, and other evidence of record from the underlying hearings before the Zoning Board showing that the residents disabilities were a "motivating factor" in the decision to deny the application. Id. at 396-97. The court also found a strong likelihood of success demonstrating intentional discrimination through application of a facially discriminatory zoning ordinance, but the court based this finding on the fact that the classifications were not permitted as of right in any of the Township's zoning areas and the language of the ordinance specifically targeted disabled individuals. Id. at 397.

However, in this case it is undisputed that assisted living facilities are permitted as of right in the RIM zone **and** that Plaintiffs have failed to submit any formal application to either the Planning Board, the Zoning Officer, or the Zoning Board. At page 7 of Plaintiffs' brief, Plaintiffs'

only argument in support of facial discrimination is that assisted living facilities are only permitted

in the RIM zone; yet, even Plaintiffs recognize that residential zoning is permitted in the RIM zone

as they assert that this district is where institutional and industrial uses "predominate." In other

words, the RIM zone does not exclude residential housing; in fact, it explicitly provides for

residential housing, namely apartment and condominium communities for senior citizens, as of

right.[4] The pre-amble to the RIM Zone states the following:

> Purpose. The purpose of this section, with respect to the Research, Industry &
> Medical (RIM) District, is to permit land uses that reflect contemporary light
> industrial economies and development trends in research and medicine; to
> strengthen the identity of this district as a base of local and regional employment;
> to broaden the presence of research, development, and manufacturing enterprises;
> and to foster the development of medical and health care facilities that complement
> the existing medical and health care services located throughout the City. Senior
> housing is permitted to complement future medical and health care services and to
> contribute to a sense of a health care village that offers care and living opportunities
> for older persons. **This district already encompasses several multifamily**
> **residential complexes created through planned unit developments (PUDs).**
> Therefore, this district also intends, through careful attention to site design and
> urban design principles appropriate for a city of Englewood's scale and the scale of
> the blocks and streets within the RIM, to improve the physical appearance of the
> area, create an orderly developed environment with an engaging public realm and
> active open spaces, and to foster internal connectivity, mobility, and safety for all
> modes of transportation within and between properties.

(See Herten Certification, Exhibit C, docket entry 2-5, pp.139-140)

Currently, not only is the Bristal in the RIM zone, but also other multi-residential units

such as The Brownstones and The Sheffield. (See Herten Certification, Exhibit B, docket entry 2-

3, p. 48).   While at pages 7 and 8 of their brief, Plaintiffs argue that they have been treated

differently since the Bristal was approved and their alleged "application" still has not been heard,

Plaintiffs conveniently do not address the fact that they have not submitted any "application" to

---

[4] The permitted uses within the RIM Zone include, light industrial uses, wholesale trade, warehousing, distribution, agricultural uses, motor vehicle-related uses, arts, entertainment and recreation, offices, nonmedical, Medical and health care, retail trade, eating and drinking establishments, education, emergency services, lodging, and residential. (See Herten Certification, Exhibit C, docket entry 2-5, pp. 140-141; and Scott Declaration, ¶ 8)

any appropriate authority to either deny or approve their application. All that Plaintiffs have done

is submit a request for re-zoning and an informal presentation to the Council. Nothing prevents

Plaintiffs from applying to the Zoning Board of Adjustment for variances, which they have failed

to do despite being urged to do so and as so many other entities have done and have been approved.

Of paramount importance is that there are simply no factual allegations nor any evidence

to suggest any discriminatory motive on the part of Defendants. Plaintiffs readily admit that the

Bristal Assisted Living Facility (the "Bristal"), which is located in the RIM zone, received prompt

approval from the City. (See Pl.'s OTSC at 7). Moreover, the Lilian Booth Actors Home exists in

the R-D (single family residential zone), was expanded upon, and there have been several other

use variances approved in the zone - the Moriah School and the Dwight Englewood School. The

Housing Element and Fair Share Plan was also adopted in 2014. (See Scott Declaration, ¶ 23).

### 2. Plaintiffs Fail To Show A Reasonable Probability of Success That Enforcement Of The Zoning Code Has A Disparate Impact On Elderly And Handicapped Citizens.

When a plaintiff alleges a claim of disparate impact arising under the FHA, the plaintiff

must show that the municipality's action had a greater adverse impact on the elderly handicapped

than it had on others. See Lapid-Laurel, LLC v. Zoning Bd. of Adj. of Twp. of Scotch Plains, 284

F.3d 442, 466-67 (3d Cir. 2002). Plaintiffs must demonstrate a prima facie case of discrimination

to prevail on an FHA disparate impact claim. Id. If plaintiffs succeed in demonstrating a prima

facie case, then the burden shifts to the defendant to show that it had a legitimate, non-

discriminatory reason for the action and that no less discriminatory alternatives were available. Id.

(internal citations omitted).

This Court needs to look no further than the Third Circuit's decision in Lapid-Laurel, to

deny Plaintiffs' request in this case. The plaintiff in Lapid-Laurel applied for a variance to the

zoning board, was subsequently denied, and proceeded to argue that defendant's zoning plan had

a disparate impact by designating only one location in the Township for senior housing. Id. The

plaintiff argued that the location was in an undesirable location because it was a light industrial

area rather than a residential area and that defendants permitted no development of senior

residences as of right in any other part of the municipality besides the one aforementioned area.

Id. In holding that plaintiff failed to establish a prima facie case of disparate impact, the Lapid-

Laurel Court held that plaintiff:

> [I]gnore the fact that under New Jersey law, developers of group homes for the
> handicapped (including the elderly) may apply for use variances as an "inherently
> beneficial use" in any zone. See Smart SMR of N.Y., Inc. v. Borough of Fair Lawn
> Bd. of Adjustment, 152 N.J. 309 (1998) (noting that the New Jersey Supreme Court
> has recognized nursing homes as "inherently beneficial uses"). Applicants for an
> "inherently beneficial use" under New Jersey law face a reduced standard for
> demonstrating that the use qualifies for a use variance (as opposed to applicants for
> commercial use variances) . . . Therefore, even though Scotch Plains' land use
> regime affirmatively provides for senior housing in only one location, that alone
> does not establish a prima facie case of discriminatory impact, especially in light of
> the fact that the Township will entertain use variances for elderly housing on a
> preferential basis in all other locations. Furthermore, as the District Court noted,
> the plaintiff does not present any evidence of a pattern of the town refusing to grant
> variances for housing for the elderly or any other conduct or statistics that would
> evince a disparate impact.

Id. at 467-68.

The aforementioned Lapid-Laurel disparate impact standard makes it impossible for

Plaintiffs to show a likelihood of success on the merits. In identical fashion to defendants in Lapid-

Laurel, the City's RIM zone allows for elder care facilities as a permitted use, and is zoned for

some residential housing. There is simply no evidence of a pattern of the City refusing to grant

variances for housing for the elderly or any conduct or statistics that would evince a disparate

impact. The facts demonstrate otherwise. Plaintiffs' baseless allegation is easily defeated by the

fact that the Bristal Assisted Living Facility was recently approved in the RIM zone and has been

expanded upon. Several other use variances have been approved in the R-AAA zone, the very zone

Plaintiffs seek for their project. (See Scott Declaration).

Plaintiffs rely heavily upon the Hovson case and attempt to draw similarities between that case and the current matter where no similarities exist. As previously argued under Point I, Hovson is not binding and was decided before Lapid-Laurel. Nonetheless, in Hovsons, 89 F.3d at 1099-100, the Third Circuit addressed plaintiff's claim only after plaintiff had applied for a variance, which was ultimately denied after being debated extensively over a total of seventeen public hearings. In Hovsons, even after the Law Division reversed the denial of plaintiff's application, the matter was remanded back to the zoning board for further reconsideration. Id. at 1100. While the Third Circuit found that the blanket exclusion of nursing homes from its residential areas **coupled** with the zoning board's refusal to permit the construction of this specific facility in question defied the purpose of the FHAA, the Third Circuit recognized that in order to establish that the accommodation was not reasonable, the Township of Brick was required to prove that it could not have granted the variance "without imposing undue financial and administrative burdens."

In this case, the Zoning Board has never even been afforded any opportunity whatsoever to address Plaintiffs' proposal in any manner and the fact remains that the RIM zone includes residential housing and assisted living facilities are a permitted use in the RIM zone. In **every** land use case cited by Plaintiffs, the developers/plaintiffs all applied for variances and were subsequently denied.[5] As previously stated, Plaintiffs made no attempt to apply for variances. Other than submitting one request for rezoning, which the City has no duty to hear, Plaintiffs have neither taken any action whatsoever nor pursued any administrative remedy that remains fully available to them.

---

[5] See footnote 1.

Plaintiffs also allege that no City residential zone allows their application to proceed. However, this is patently false, as every residential zone allows for Plaintiffs to apply for variances with the Zoning Board, as discussed by Lapid-Laurel, supra. Finally, Plaintiffs argue that the City should have promptly approved their application after reviewing submissions from Plaintiffs' professional planner and hearing Plaintiffs' "testimony" at the May 7, 2019 Council Meeting. See Pl.'s OTSC at 13. Plaintiffs intentionally misrepresent the nature of these proceedings. Plaintiffs were aware that their public presentation was not a quasi-judicial hearing, Plaintiffs' witnesses were never sworn in and therefore gave no testimony, and Plaintiffs admit that their presentation was in furtherance of their January 14, 2019 request to rezone Plaintiffs' property. See Herten Cert. Ex. "K" at 105:5-7.

Furthermore, the City Council does not have the authority to immediately approve Plaintiffs' "application." See N.J.S.A. 40:55D-62.1 (requiring notice of a hearing on an amendment to any zoning ordinance proposing a change to the classification or boundaries of a zoning district to be given at least ten (10) days prior to the hearing to the owners of all real property within 200 feet in all directions of the proposed new boundaries); see also N.J.S.A. 40:55D-64 (requiring that the governing body, prior to the hearing on adoption of a zoning ordinance or any amendments thereto, shall refer any such proposed ordinance or amendment thereto to the planning board); N.J.S.A. 40:55D-26(a) (requiring that the planning board draft and submit a report to Council within 35 days of a matter being referred to the planning board, which identifies any provisions in the proposed development regulation or revision which are inconsistent with the master plan and any other matters the board deems appropriate). The City would have violated multiple sections of the MLUL if it had approved Plaintiffs' "application" in the method recommended by Plaintiffs.

At page 12 of Plaintiffs' brief, Plaintiffs readily admit that the Dwight-Englewood School was afforded substantial relief from the Code and has been allowed to develop and expand by a series of waivers from Code requirements over the years; yet, Plaintiffs argue that they have been denied these same privileges. Plaintiffs' entire argument supports the Defendants' position that there is no evidence of discriminatory intent; the mere fact remains, that Plaintiffs have attempted to circumvent the procedural requirements and instead have run into this Court with unclean hands. The facts clearly demonstrate that there is no disparate impact. Englewood is licensed for 501 long-term care facility beds, representing approximately 32% of the total of the surrounding areas, with the next highest surrounding area being Teaneck with 340 beds. (See Antonelli Certification, Exhibit A). The City already has the Bristal, the Actors' Home, and the Housing Element and Fair Share Plan adopted in 2014 demonstrates the "fair share" housing in the City, including but not limited to, Shepherd House, Independence Hall, J-ADD Group Home, PSCH-Phelps Avenue, PSCH-Knickerbocker Rd., and First Baptist Church. (See Scott Declaration, ¶ 23). Plaintiffs cannot possibly show a likelihood of success on the merits regarding their FHA disparate impact claim nor are there sufficient facts plead to set forth a disparate impact claim against Defendants.

3.  **Plaintiffs Failed to Appropriately Request a Reasonable Accommodation and Nonetheless, Fail to Assert Allegations Sufficient to Establish that Their Request is Reasonable and Necessary.**

As already argued under Point I, the Third Circuit Court has held that reasonable accommodation claims arising under the FHA are not ripe until the reasonable accommodation request is denied by a Zoning Board. See Lapid-Laurel, supra., 284 F.3d at FN5. Even assuming, arguendo, that Plaintiffs' reasonable accommodation claim was ripe, Plaintiffs have failed to set forth sufficient allegations to state a claim.

The Court in Hovsons, Inc. v. Tp. of Brick, 89 F.3d 1096 (3d Cir. 1996), established the legal framework for determining whether a requested accommodation was reasonable under the

FHA. In Hovsons, plaintiffs applied for a reasonable accommodation variance and their request was denied. The Hovsons Court held that the FHA requires a focus on three (3) factors of "whether the requested accommodation is (1) reasonable and (2) necessary to (3) afford handicapped persons an equal opportunity to use and enjoy housing." The Court in Lapid-Laurel, supra, held that under the FHA, "the plaintiff bears the initial burden of showing that the requested accommodation is necessary to afford handicapped persons an equal opportunity to use and enjoy a dwelling." Id. at 457. The Lapid-Laurel Court defined "equal opportunity" as an opportunity "to give handicapped individuals the right to choose to live in single-family neighborhoods, for that right serves to end the exclusion of handicapped individuals from the American mainstream." Id. at 459. The Lapid-Laurel Court further held that the FHA "prohibits local governments from applying land use regulations in a manner that will exclude people with disabilities entirely from zoning neighborhoods, particularly residential neighborhoods, or that will give disabled people less opportunity to live in certain neighborhoods than people without disabilities." Id. at 459-60.

The Lapid-Laurel Court defined "necessary" to require that plaintiff show "that but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." Id. at 460 (internal citations omitted). The Lapid-Laurel Court cited to the case of Bryant Woods Inn, Inc. v. Howard County, 124 F.3d 597 (4th Cir. 1997), in holding that a plaintiff who applied for a reasonable accommodation variance to the zoning board must show that the size of the proposed facility either would be necessary for the facility's financial viability or would serve a therapeutic purpose. See Lapid-Laurel, 284 F.3d at 461 (interpreting the FHA to require an applicant to show that the size of its proposed facility is required to make it financially viable); see also Bryant Woods, 124 F.3d at 605 (concluding that the plaintiff had failed to demonstrate why expanding its group home was necessary other than it would increase profits). In Lapid-Laurel,

plaintiffs' expert testified that facilities above a certain size were less desirable from a therapeutic standpoint, and the proposed facility size of between 80 – 100 beds "seem to work very well." Id. at 461. The Lapid-Laurel plaintiffs' expert did not testify that care facilities for the elderly that are smaller than the proposed facility are unable to provide the range of care required or that it would be economically infeasible to operate a smaller facility. Id. The Lapid-Laurel Court held that a reasonable jury could not find that plaintiffs had shown that the specific features of its proposed facility were necessary to afford handicapped persons an equal opportunity to live in residential neighborhoods. Id.

If the plaintiff is able to show that the requested accommodation is necessary to afford handicapped persons an equal opportunity to use and enjoy a dwelling, the burden shifts to the defendant to show that the request is unreasonable. Id. In order to "establish that the accommodation proffered by [the applicant] was not reasonable, [the municipality] [i]s required to prove that it could not have granted the variance without . . . requiring a fundamental alteration in the nature of the [zoning] program." Hovsons, 89 F.3d at 1104 (internal citations omitted). This inquiry is "highly fact specific, requiring a case by case determination." Id. (internal citations omitted). In Lapid-Laurel, the municipal defendants argued in part that certain features of the proposed facility that resulted from its excessive size were unreasonable (that they would impose an undue hardship on the municipal defendants) and that the proposed facility would have required the defendants to fundamentally alter their zoning program. Lapid-Laurel, 284 F.3d at 462. The Lapid-Laurel Court found these reasons to be sufficient in determining that plaintiff's request was unreasonable, and further affirmed the District Court's grant of summary judgment due to the negative impact on the municipal zoning plan that would be caused by allowing an indisputably commercial use in a residential area. Id.

In this case, Plaintiffs attempt to confuse this Court by stating they have requested a reasonable accommodation when in fact they have acknowledged that they have bypassed the variance process and process by which to request a reasonable accommodation. At page 11 of Plaintiffs' brief, they specifically state that, "Plaintiffs, therefore, pursued a rezoning." Even assuming *arguendo* that they made an appropriate request for a reasonable accommodation, there has been no hearing or testimony taken as to necessity, nor has the Zoning Board been given an opportunity to question and to render a decision on such a request as occurred in Lapid-Laurel. In short, Plaintiffs have failed to show why their reasonable accommodation is "necessary," and that the size of the facility is necessary, or "that but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." Lapid-Laurel, 284 F.3d at 460 (internal citations omitted).

Lastly, Plaintiffs' reliance in Assisted Living Associates of Moorestown, LLC v. Moorestown Township, 996 F.Supp. 409, 414 (D.N.J. 1998), is completely misplaced. In that case, the Plaintiffs' proposed land-use had been a permissible use under the zoning law until the very moment when plaintiffs had cleared other regulatory hurdles and in a "Catch-22," Moorestown passed a zoning ordinance which effectively "spot zoned" Plaintiffs' proposed land use out of one chosen area and imposed special requirements on plaintiff. The Defendants in this case have taken no such action whatsoever.  Notably, however, the plaintiffs in that case, applied to the Planning Board and Zoning Board of Adjustment before seeking judicial intervention.

As such, Plaintiffs cannot establish a likelihood of success on the merits and furthermore, based upon the facts alleged in the pleadings, Plaintiffs cannot state a claim against Defendants requiring a denial of Plaintiffs' requested relief and a dismissal of the reasonable accommodation claim.

## C. DEFENDANTS HAVE NOT VIOLATED THE REHABILITATION ACT OR AMERICANS WITH DISABILITIES ACT.

Despite Plaintiffs' contentions, there is nothing in the record evidence to show that the City has violated the Rehabilitation Act ("RA") or the Americans with Disabilities Act. As argued under Point I, preliminarily, Plaintiffs' claims are not ripe as no application has been made before the Zoning Board. Notwithstanding same, Plaintiffs fail to assert facts sufficient to establish these claims against Defendants.

Plaintiffs cite to New Directions Treatment Servs. v. City of Reading, 490 F.3d 293, 304-305 (3d Cir. 2007) (the application of a law that discriminates with respect to "zoning procedures is facially discriminatory under the ADA and the Rehabilitation Act"). Notably, the plaintiff in that case applied to the zoning board for variances. Id. The Court in New Directions held that "to make out a claim under the ADA, the plaintiff need only show that intentional discrimination was the *but for* cause of the allegedly discriminatory action." New Directions, 490 F.3d at 301 (citing Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 157-58 (3d Cir. 1995) (requiring that a plaintiff must prove that an illicit motive played a role in the decision-making process and that it had a determinative effect on the outcome of that process) (internal citations omitted)).

In New Directions, the Third Circuit Court held that a zoning ordinance banning the establishment of methadone clinics within 500 feet of many structures was facially discriminatory because it singled out methadone clinics. Id. at 304-05. This is readily distinguishable from the instant matter, as the City's Zoning Code is not facially discriminatory against the elderly or disabled because it does not single out the elderly or disabled. Plaintiffs fail to allege or to provide any record evidence to show that the City harbored an illicit bias against the handicapped or elderly. Plaintiffs are not precluded in any way from living in a variety of residentially zoned areas for housing. Plaintiffs need only follow the same variance procedures that every resident is

required to follow by law. The record evidence in this case establishes that there is no bias towards

the elderly or disabled. Plaintiffs are also unable to show how any alleged bias against the

handicapped or elderly played any role in the outcome of any process as they have failed to follow

the appropriate process. Therefore, as there are no facts alleged that show any illicit bias on the

part of the City, Plaintiffs have no likelihood of success on the merits of the RA or ADA claim

and judgment on the pleadings is warranted.

### D. PLAINTIFFS DO NOT HAVE STANDING TO SUE UNDER THE AMERICANS WITH DISABILITIES ACT.

Plaintiffs make unsubstantiated allegations that the City's Zoning Code violates the

Americans with Disabilities Act ("ADA") by subjecting Plaintiffs to discrimination on the basis

of disability and establishing requirements that subject qualified individuals with disabilities to

discrimination on the basis of disability. In addition to the previous arguments set forth above,

Plaintiffs also do not have standing to bring a claim under the ADA. The New Jersey District Court

in Kessler Inst. for Rehab. Inc. v. Mayor and Council of Borough of Essex Fells, 876 F.Supp. 641

(1995), held that plaintiffs, operators of a health care facility for disabled persons who applied for

a variance and were subsequently denied, lacked standing to bring a claim arising under the ADA.

Id. In arriving at this conclusion, the Court in Kessler found in relevant part that:

> Subchapter II of the ADA confers rights upon a much more narrow class of persons:
> only the disabled. Both 42 U.S.C. § 12132, which confers a substantive right to be
> free from discrimination in the provision of public services, and 42 U.S.C. § 12133,
> the enforcement provision (which incorporates 29 U.S.C. § 749 by reference), are
> limited to "qualified individual(s) with a disability". Since Kessler, an entity that
> serves the disabled, does not fall within this definition, Subchapter II of the ADA
> confers no substantive rights upon it to provide a basis for standing. Consequently,
> Kessler's claim based upon the ADA is dismissed for lack of subject matter
> jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

Id. at 652-63.

Plaintiffs in the instant matter allege they are being discriminated against pursuant to 42

U.S.C. § 12132. This aforementioned section of the ADA falls within Subchapter II of the ADA

and therefore, by definition, Plaintiffs are not a qualified individual with rights conferred pursuant to the ADA. Plaintiffs in the instant matter, like <u>Kessler</u>, do not have standing to bring their ADA claim.[6] Therefore, Plaintiffs have failed to show a likelihood of success on their ADA claim and such a claim must be dismissed.

### E.   PLAINTIFFS CANNOT SHOW THAT DEFENDANTS VIOLATED RLUIPA.

Plaintiffs allege a violation of RLUIPA's substantial burden provision, 42 U.S.C. § 2000cc(a)(1). RLUIPA requires that no substantial burden be placed on religious exercise via land use regulations unless: (1) it is in furtherance of a compelling government interest; and (2) it is the least restrictive means of furthering the compelling government interest (strict scrutiny). <u>Id.</u>

As argued extensively under Point I, Plaintiffs' RLUIPA claim is not ripe. Moreover, even assuming that the claim was ripe, the first step required in RLUIPA's substantial burden analysis is to determine that an applicant's proposed use was for religious exercise. RLUIPA defines religious exercise to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief" and "is to be defined broadly and to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. § 2000cc-5(7)(A); 3(g). Furthermore, RLUIPA states that "[t]he use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." <u>Id.</u> at 5(7)(B). To establish a prima facie case under RLUIPA, a plaintiff must allege facts sufficient to show that the defendants' conduct in denying a zoning

---

[6] Furthermore, the prospective John and Jane Doe Plaintiffs lack standing to bring their ADA claims as well. <u>See</u> <u>Kessler</u>, 876 F.Supp. at 655 (holding that an individual and disabled plaintiff, Ms. Benney, was not a "qualified individual" under the ADA because a municipal zoning amendment is not a "public service, program, or activity" under the ADA, and refusal to amend same did not deny Ms. Benney any "municipal service", a requirement for standing under the ADA).

application: (i) imposes a substantial burden; (ii) on the religious exercise; (iii) of a person, institution or assembly. 42 U.S.C. § 2000cc(a)(1).

Neither RLUIPA nor the Third Circuit have defined "substantial burden" in a land-use context; however, the Third Circuit has previously followed the Seventh Circuit in a non-precedential case, and held that a substantial burden exists where the land-use regulation "necessarily bears direct, primary and fundamental responsibility for rendering religious exercise — including the use of real property for the purpose thereof within the regulated jurisdiction generally – effectively impracticable." Lighthouse Institute for Evangelism Inc. v. City of Long Branch, 100 Fed.App'x. 70 (3d Cir. 2004) (citing Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752 (7th Cir. 2003)). It is undisputed that the only use of Plaintiffs' proposed Facility is an assisted living and memory care home. There is no conceivable interpretation of Plaintiffs' proposed use that would qualify Plaintiffs as a religious assembly or institution. Plaintiffs are a developer for a for-profit commercial entity whose purpose is to provide assistance and care to elderly and disabled potential clients. If this Court was to accept Plaintiffs' argument any property owner could allege violations under RLUIPA.

Plaintiffs cannot maintain their contention that their RLUIPA claims are ripe. Plaintiffs have presented no facts to establish a prima facie case under RLUIPA. Plaintiffs are not a religious institution or assembly and there is not a single use of Plaintiffs' Facility that would constitute religious exercise under RLUIPA. Therefore, Plaintiffs cannot show a likelihood of success on the merits of their RLUIPA substantial burden claim nor are there facts sufficient to state a claim against Defendants requiring a dismissal of the RLUIPA claim in its entirety.[7]

---

[7] Although Defendants did not brief their RLUIPA claims under 42 U.S.C. § 2000cc(b)(1), the equal terms provision, this claim would similarly fail as a matter of law, as Plaintiffs are not a religious assembly or institution nor is the claim ripe for review. See Lighthouse Institute for Evangelism, Inc. v. City of Long Branch, 510 F.3d 253, 270 (3d

## F. ENFORCEMENT OF THE ZONING CODE DOES NOT VIOLATE THE FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE

Preliminarily, as argued under Point I, this claim is not ripe for review. Moreover, in analyzing Fourteenth Amendment Equal Protection claims, "federal courts accord substantial deference to local government in setting land use policy". Congregation of Kol Ami v. Abington Twp., 309 F.3d 120, 125 (3d. Cir. 2002). Equal protection challenges use a two-step inquiry. See Id. at 135 (quoting City of Cleburne, Texas v. Cleburne Living Ctr., 473 U.S. 432, 448 (1985)). The plaintiffs in both Kol Ami and Cleburne had applied for variances and were denied. First, the Court must determine if the uses are "similarly situated" and second, whether there is a rational basis for distinguishing between them. Id. at 137. Furthermore, this two-step inquiry "properly places the initial burden on the complaining party first to demonstrate that it is similarly situated to an entity that is being treated differently before the local municipality must offer a justification for its ordinance." Id. The Kol Ami Court held that, **If, and only if, the entities are similarly situated,** then the city must justify its different treatment of the two[.] Id.

In the instant matter, Plaintiffs do not give a single example of a "similarly situated" entity. This alone is enough to defeat Plaintiffs' meritless Equal Protection claim. See County Concrete Corp. v. Twp. of Roxbury, 442 F.3d 159, 171 (3d Cir. 2006) (holding that a complaint's conclusory allegations alone are insufficient to state a claim arising under Equal Protection, and that a plaintiff must identify a similarly situated property and provide facts to demonstrate how this property is similarly situated).

The plaintiffs in County Concrete had applied for variances and were denied. In County Concrete, the Third Circuit affirmed the District Court's dismissal of plaintiffs' Equal Protection

---

Cir. 2007). Plaintiffs similarly cannot state claims under 42 U.S.C. § 2000cc(b)(2),(3) a non-discrimination claim and exclusions and limits claim under RLUIPA, on the basis of ripeness, standing, and the fact that there are no facts plead to support a secular comparator under RLUIPA or a law burdening religions that is not neutral and generally applicable. Id. at 264. As such, all claims under RLUIPA should be dismissed with prejudice.

claim because plaintiffs failed to identify a similarly situated property and support their allegations with facts that show a finding of irrational or arbitrary legislative inaction by defendants. Id. In identical fashion to County Concrete, Plaintiffs here only make conclusory allegations that are wholly unsupported by any facts. Therefore, it is impossible for Plaintiffs to have a likelihood of success on the merits of this claim. Even assuming, *arguendo*, that Plaintiffs had mentioned even one similarly situated entity in support of their Equal Protection argument, Plaintiffs still cannot prevail. The Kol Ami Court held that "[a] necessary corollary of the extensive zoning authority bestowed upon local municipalities, including the authority to create extensively residential districts, is the authority to make distinctions between different uses and to exclude some uses within certain zones." Kol Ami, 309 F.3d at 136. Therefore, the City's desire to preserve a single-family residential zone by preventing a six-story entirely commercial facility from being built would be rationally related to a legitimate government interest. Plaintiffs have absolutely no chance of showing a likelihood of success on the merits of their Equal Protection claim and the facts plead are insufficient to state a claim requiring a dismissal of Plaintiffs' claim.

## G. PLAINTIFFS WILL SUFFER NO IRREPARABLE HARM

The Third Circuit Court refuses to issue injunctions where the claimed injury constitutes a loss of money or loss capable of recoupment in a proper action at law. See In re Arthur Treacher's Franchisee Litigation, 689 F.2d 1137, 1145 (3d. Cir. 1982); See also Punnett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980) (holding that a party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity); Continental Group, Inc. v. Amoco Chemicals Corp., 614 F.2d 351, 358 (3d Cir. 1980) ("[M]ore than a risk of irreparable harm must be demonstrated" and plaintiff must make a "clear showing of immediate irreparable injury or a presently existing actual threat" instead of "a possibility of a remote future injury") (internal quotations omitted); In re Four Three Oh, Inc., 256 F.3d 107, 110 (2001) (holding

that zoning board's nine-month delay in a hearing for variances was insufficient to issue an injunction). Here, Plaintiffs may only lose future revenue and can seek redress before the Zoning or Planning Board. Plaintiffs seek to upset the status quo, which is a heavy burden that Plaintiffs cannot meet, and any harm is therefore only a remote possibility. Plaintiffs allege that they will suffer irreparable harm by August 9, 2019. However, we are currently beyond this date, and Plaintiffs have not been irreparably harmed. Despite Plaintiffs contentions, they have not lost contractual control over a portion of their Property essential to carry out development of their Facility. Plaintiffs mistakenly cite the non-precedential case of Caron Found. Of Fla. Inc., v. City of Delray Beach, 879 F.Supp.2d 1353, 1373 (S.D.Fla. 2012) (finding irreparable harm where a discriminatory zoning ordinance forced protected individuals (recovering drug addicts) to move elsewhere, thus endangering their chances of recovery), and Easter Seal Soc. v. Twp. of N. Bergen, 798 F.Supp. 228, 237 (D.N.J. 1992) (finding that "[f]or each day this project is delayed, protected individuals [recovering drug addicts] are forced to move into other environments which endanger their recent recovery constituting threatened irreparable harm") (emphasis added). In both Easter Seal and Charon, plaintiffs applied for variances and were denied by the local land use body prior to commencing litigation, unlike here. Plaintiffs inexplicably fail to address the plethora of differences between Caron, Easter Seal, and the instant matter. Plaintiffs fail to reconcile how the very-real threat of relapse into drug addiction from denying a variance to a drug rehabilitation facility applies here. Put another way, Plaintiffs should not be allowed to sit on their rights until they create their own crisis and then run to Court in the eleventh hour claiming irreparable harm.[8] Moreover, their claim that some "future" potential residents will suffer is nothing more than

---

[8] Plaintiffs also cannot argue that their New Jersey Certificate of Need holds any weight, as the Lapid-Laurel Court held that Certificates of Need were immaterial to the question of whether a proposed facility is necessary to provide an equal opportunity for a plaintiff. See Lapid-Laurel, 284 F.3d at FN8.

speculation and does not constitute irreparable harm. As such, Plaintiffs fail to establish irreparable harm requiring a denial of their request.

## H. THE BALANCE OF HARDSHIPS WEIGHS DECISIVELY AGAINST APPROVING PLAINTIFFS' "APPLICATION"

Plaintiffs' allegation that granting this preliminary injunction would result in no harm to the City is patently untrue. Granting this injunction would give Plaintiffs absolute immunity from all zoning laws. Granting this injunction would allow Plaintiffs to use this Court as a means for circumventing all appropriate land use bodies. Plaintiffs attempt to draw a false equivalency between Plaintiffs' Facility and the Dwight-Englewood School (the "School"). However, Plaintiffs fail to inform this Court that private non-profit schools are permitted as conditional uses in the City's R-AAA zone. Additionally, Plaintiffs incorrectly claim that they seek the same waivers that the School sought. Plaintiffs do not seek waivers; Plaintiffs seek absolute immunity from all zoning laws, and simultaneously seek a Court order that usurps the legitimate legislative authority of the City Council, Zoning and Planning Boards, and denies all members of the public their right to participate in a public forum. Plaintiffs will suffer no harm if they are required to follow the procedures set forth in the MLUL and City's Ordinance and apply to the Zoning Board for variances before attempting to build their six-story 150-bed commercial facility in a single-family residential zone. This is what has been done by all prior applicants.

The balance of hardships weighs decisively in favor of denying Plaintiffs' extraordinary request for injunctive relief. Granting this injunction would deprive the City and every resident of the City their rights afforded to them under the MLUL while simultaneously depriving the City of all legislative authority over local land use matters. The balance of hardships does not tip in Plaintiffs' favor simply because Plaintiffs refuse to follow the law. Plaintiffs would not suffer any injury if they are required to apply for variances. The City would suffer severely if this Court grants

an injunction that denies the legislature and the public their right to be involved in local land use matters. Therefore, we respectfully ask that this Court find that the balance of hardships weighs decisively against granting Plaintiffs' extraordinary request.

## I. THE PUBLIC INTEREST STRONGLY FAVORS DENYING THE INJUNCTIVE RELIEF REQUESTED BY PLAINTIFFS

Plaintiffs, in their request for injunctive relief, seek to deprive every member of the public of their rights to notice and comment for development applications. Plaintiffs further seek to undermine the public's confidence in their elected officials by having this Court make determinations that the people have already made at the polls. Granting Plaintiffs' injunction would be an insult to every resident of the City who followed the proper procedures when applying for a variance. It would render meaningless the work of every developer that submitted a site plan application to the Planning Board or appeared and gave testimony before the Zoning Board. The public interest is best served by preserving the public's right to receive adequate notice of a public hearing and by affording members of the public a meaningful opportunity to comment at these proceedings. Democracy should not be conducted behind closed doors with determinations impacting the public made by unelected officials. Doing so risks disenfranchising voters and corroding confidence in the electorate. Granting Plaintiffs' request would defy the very purpose of the MLUL and the highly regulated area of land use law where localized knowledge must be applied.

The City has not failed to act on Plaintiffs' "application." Despite Plaintiffs' unfounded and conclusory accusations, the City allowed Plaintiffs to present at multiple Council meetings, and even recommended that Plaintiffs proceed before the Zoning Board. Plaintiffs were never prevented in any way from applying to the Zoning Board for variances. The public interest is best served by allowing legislators to legislate. Giving Plaintiffs carte blanche to proceed with their

commercial venture in outright defiance of local zoning laws and the MLUL cannot possibly be in the public interest. Therefore, we respectfully ask this Court to find that the public interest weighs heavily in favor of denying Plaintiffs' request.

**POINT III**
**DEFENDANTS ARE ENTITLED TO JUDGMENT ON THE PLEADINGS**

### A. THE LEGAL STANDARD APPLICABLE TO A MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO F.R.C.P 12(C)

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings. The same standard of review applies to a motion for judgment on the pleadings based on the defense that plaintiff has failed to state a claim as a motion to dismiss for failure to state a claim in lieu of an answer pursuant to Rule 12(b)(6). Revell v. Port. Auth. of N.Y. and N.J., 598 F.3d 128, 134 (3d Cir. 2010); see also Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010) (setting forth the standard of review for motion to dismiss); Rose v. Bartle, 871 F.2d 331, 342 (3d Cir. 1989) (equating the standard of review for motions to dismiss and motions for judgment on the pleadings).

In ruling on a Rule 12(b)(6) motion, the court must accept as true all well-pleaded allegations of fact in the plaintiff's Complaint and any reasonable inferences that may be drawn therefrom, and must determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Nami v. Faulver, 82 F.3d 63, 65 (3d Cir. 1996) (citations omitted). Nevertheless, in evaluating a plaintiff's pleadings, the court need not credit a complaint's "bald assertions" or "legal conclusions." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997). The moving party bears the burden of showing that no claim upon which relief can be granted has been plead. Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). Dismissal is appropriate if, accepting all of the facts alleged in the complaint to be true, the plaintiff

has failed to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In Twombly, the Court opined that "stating . . . a claim requires a complaint with enough

factual matter (taken as true) to suggest" each element of the plaintiff's claim. Id. Twombly was

further interpreted in Ashcroft v. Iqbal, 556 U.S. 662 (2009), in which the Court explained,

"[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to

relief." Id. at 679.  A two-step analysis is thus required when determining whether to dismiss a

complaint pursuant to F.R.C.P. 12(b)(6).  The court must first separate factual allegations from

legal conclusions of law.  Id.  Second, the court must determine whether the facts alleged in the

complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  Fowler v.

UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009). A complaint cannot survive where a court can

only infer that a claim is merely possible rather than plausible and the complaint must be dismissed

if the allegations pled would not plausibly suggest entitlement to relief. Iqbal, 556 U.S. at 679;

Twombly, 550 U.S. at 561.

A pleading that offers only "labels and conclusions," contains "a formulaic recitation of

the elements of a cause of action," or "tenders naked assertions devoid of further enhancement" is

insufficient to overcome a Rule 12(b)(6) motion since it does not allow the court to reasonably

infer that the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. at 678,

quoting Twombly, 550 U.S. at 557.  Therefore, "threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements" do not meet the "facial plausibility" requirement

and are not entitled to the assumption of truth. Id. at 678-79, citing Twombly, 550 U.S. at 555-56.

In other words, while we must take the factual allegations in the complaint as true, we "are not

bound to accept as true a legal conclusion couched as a factual allegation." Ibid. Moreover, only a complaint that states a plausible claim for relief survives a motion to dismiss. Ibid. For the reasons set forth below, the City is entitled to judgment on the pleadings on all of Plaintiffs' claims.

## B. PLAINTIFFS' CLAIMS ADDRESSED UNDER POINTS I AND II CANNOT SURVIVE A MOTION FOR JUDGMENT ON THE PLEADINGS

As set forth at length under Points I and II, all of Plaintiffs' claims must be dismissed as they are not ripe for judicial review and independently fail as Plaintiffs fail to plead facts sufficient to state a claim for the same reasons that Plaintiffs cannot establish a reasonable likelihood of success.[9] As such, judgment on the pleadings is warranted. The remaining claims asserted in Plaintiffs' Complaint and not addressed as part of Plaintiffs' Order to Show Cause as briefed above, are addressed below.

## C. PLAINTIFFS' FOURTH AND FIFTH CLAIMS FOR RELIEF, VIOLATIONS OF 42 U.S.C. § 1983 – POLICY DECISIONS BY THE COUNCIL AND RULE/REGULATION PROMULGATED BY THE COUNCIL, CANNOT SURVIVE A MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiffs fail to plead sufficient facts to establish violations of their constitutional rights. To maintain a claim under § 1983, a plaintiff's "conclusory pleadings do not suffice to state a claim". Pace Resources, Inc. v. Shrewsbury Tp., 808 F.3d 1023, 1035 (3d Cir. 1987) (internal citations omitted). Thus, to state a claim, plaintiff's complaint must allege facts that would support a finding of arbitrary or irrational legislative action by the Township. Id. (internal citations omitted). In the instant matter, Plaintiffs cannot survive a motion for judgment on the pleadings, as their § 1983 claims are neither ripe nor supported by sufficient facts to state a claim. Plaintiffs claim they were denied their Fifth and Fourteenth Amendment rights, but do not specifically state how these rights were violated by the City.  Moreover, it is Plaintiffs who have prevented

---

[9] As previously briefed above, the ripeness argument at Point I applies to all of Plaintiff's claims with the exception of Count Nine under the New Jersey Law Against Discrimination ("NJLAD"). However, as further briefed below, this court lacks jurisdiction to hear a LAD claim in the land use context; as such, dismissal with prejudice is warranted as to the LAD claim.

Defendants from engaging in the appropriate procedural process. Plaintiffs' bare accusations are insufficient to show that their constitutional rights were violated warranting that judgment be entered in favor of Defendants.

### D. PLAINTIFFS' SIXTH CLAIM FOR RELIEF, 42 U.S.C. § 1983, VIOLATIONS OF SUBSTANTIVE DUE PROCESS OF THE FIFTH AND FOURTEENTH AMENDMENTS BY COUNCIL, CANNOT SURVIVE A MOTION FOR JUDGMENT ON THE PLEADINGS

To prevail on a substantive due process claim arising from a municipal land use decision, a plaintiff must establish that (1) he has a property interest protected by due process, and (2) the government's deprivation of that property interest "shocks the conscience". See generally United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA, 316 F.3d 392 (2003); Cherry Hill Towers, L.L.C., v. Twp. of Cherry Hill, 407 F.Supp.2d 648, 654 (2006) (internal citations omitted). Plaintiffs in the instant matter cannot meet this "shocks the conscience" standard. The Third Circuit Court has held that "ownership is a property interest worthy of substantive due process protection." DeBlasio v. Zoning Bd. of Adj., 53 F.3d 592, 600 (3d Cir. 1995). In United Artists, then-Judge and current Justice Alito determined that the "shocks the conscience" standard was appropriate in cases concerning land disputes and that this standard helps prevent the Federal Courts from casting themselves in the role of a zoning board of appeals. Id. at 402 (citing Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45-46 (1st Cir. 1992) ("we have consistently held that the due process clause may not ordinarily be used to involve federal courts in the rights and wrongs of local planning disputes. The factual context of the instant matter is that the Council acted pursuant to legislative authority in requesting that Plaintiffs submit their application to the Zoning Board. There is no possible interpretation of this standard that the City's completely reasonable request was an abuse of official power that shocks the conscience. As such, a dismissal is warranted.

## E. PLAINTIFFS' SEVENTH AND EIGHTH CLAIMS FOR RELIEF, VIOLATIONS OF STATE LAW, CANNOT SURVIVE A MOTION FOR JUDGMENT ON THE PLEADINGS.

True to form, Plaintiffs make only conclusory remarks unsupported by facts in their allegations that the City violated "State Law." Plaintiffs fail to identify with particularity any State laws that the City violated. Plaintiffs cite two statutes, N.J.S.A. 40:55D-70(d), and N.J.S.A. 30:8. See Pl.'s Compl. at ¶¶ 237, 247. N.J.S.A. 30:8 itself is not a currently-existing statute. Additionally, N.J.S.A. 30:8-1 et seq. is wholly inapplicable to the instant matter.[10] N.J.S.A. 40:55D-70(d) is the section of the MLUL that grants a zoning board of adjustment the power to grant variances in certain circumstances. Given that it is undisputed that Plaintiffs failed to make any application to the Zoning Board, this statutory provision is irrelevant as well. Therefore, Plaintiffs fail to state a single law that the City allegedly violated, and Plaintiffs' Seventh and Eighth claims for relief must be dismissed.[11]

## F. PLAINTIFFS' NINTH CLAIM FOR RELIEF, VIOLATION OF THE NJLAD, CANNOT SURVIVE A MOTION FOR JUDGMENT ON THE PLEADINGS AS THIS COURT LACKS JURISDICTION.

Plaintiffs' claims arising under the NJLAD must be dismissed as a matter of law. NJLAD 10:5-12.5 prohibits unlawful discrimination through the exercise of power to regulate land use or housing in a manner that discriminates on the basis of disability, among other things. This section of the NJLAD provides that any person claiming to be aggrieved by an unlawful discrimination under this section shall enforce this section by private right of action in the Superior Court of New Jersey. Id. (emphasis added). The District Court in Kessler, 876 F.Supp. 641 (D.N.J. 1995), concluded that "the New Jersey Superior Court has exclusive jurisdiction over Plaintiffs' NJLAD

---

[10] N.J.S.A. 30:8-1 -69 deals exclusively with penal institutions and is therefore completely irrelevant to the instant matter.

[11] To the extent Plaintiffs are asserting violations of the MLUL, as argued under Point I above, Plaintiffs themselves have failed to follow the procedures of the MLUL and Defendants have advised Plaintiffs accordingly of those procedures. As such, Plaintiffs fail to state a claim against Defendants on the MLUL claim.

claims" and proceeded to dismiss these claims for lack of jurisdiction under F.R.C.P. 12(b)(1). Id. at 655. As applied to the instant matter, Plaintiffs' claims arising under the NJLAD must be dismissed from the instant matter for lack of jurisdiction under F.R.C.P. 12(b)(1) in identical fashion to Kessler.

### G. PLAINTIFFS' ELEVENTH CLAIM FOR RELIEF, VIOLATION OF 42 U.S.C. § 1983, UNDER THE FREE EXERCISE CLAUSE AND 14TH AMENDMENT, CANNOT SURVIVE A MOTION FOR JUDGMENT ON THE PLEADINGS.

Although it is unclear what exactly Plaintiffs are alleging in their Eleventh Claim for relief, Plaintiffs appear to allege that their future residents are deprived of their right to free exercise of religion. See Pl.'s Compl. at ¶ 269. If a law is neutral and generally applicable and burdens religious conduct only incidentally, the Free Exercise Clause offers no protection. See Employment Div. v. Smith, 494 U.S. 872, 879 (1990). A law is neutral and generally applicable if it does not target religiously motivated conduct whether on its face or as applied in practice. See King v. Christie, 981 F.Supp.2d 296, 331 (D.N.J. 2013) (internal citations omitted). The Court in King found that a law making no reference to any religious practice, conduct, or motivation was facially neutral. King, 981 F.Supp.2d. at 331. In this case, there are no facts alleged and the record evidence demonstrates that the ordinance is neutral on its face and as applied. As such, judgment on the pleadings in favor of Defendants is warranted.

### CONCLUSION

For the reasons stated above, Plaintiffs' request for injunctive relief should be denied and Defendants' cross-motion for judgment on the pleadings should be granted in its entirety.

Respectfully submitted,

By: /s/ Daniel Antonelli
Daniel Antonelli

Dated: August 21, 2019