**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey  07602-0800
201-489-3000
201-489-1536  Facsimile
Attorneys for Plaintiffs, 431 E Palisade Avenue Real Estate, LLC
and 7 North Woodland Street, LLC

| | |
|---|---|
| 431 E PALISADE AVENUE REAL ESTATE, LLC and 7 NORTH WOODLAND STREET, LLC, on behalf of themselves and prospective residents, JOHN and JANE DOES 1-10,<br><br>                Plaintiffs,<br><br>    v.<br><br>CITY OF ENGLEWOOD and CITY COUNCIL OF ENGLEWOOD,<br><br>                Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY Civil Action No. 2:19-cv-14515 (BRM) (JAD)<br><br>          <u>Civil Action</u> |

**MEMORANDUM OF LAW: (i) IN FURTHER SUPPORT OF PLAINTIFFS' APPLICATION TO PRELIMINARY ENJOIN THE CITY OF ENGLEWOOD AND THE CITY COUNCIL OF ENGLEWOOD FROM ENFORCING THE DISCRIMINATORY ZONING CODE; AND (ii) IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)**

On the Brief:
    Warren A. Usatine
    Michael R. Yellin

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

MATERIAL AND UNDISPUTED FACTS........................................................... 4

LEGAL ARGUMENT.......................................................................................... 5

I.      PLAINTIFFS' CLAIMS ARISE FROM "ACTUAL, CONCRETE"
INJURIES AND ARE RIPE FOR ADJUDICATION BY THIS COURT. ........... 5

        A.    The Doctrine Of Ripeness Requires The Existence Of An Actual
Case Or Controversy.................................................................. 5

        B.    Defendants' Ripeness Analysis Erroneously Conflates Ripeness
With The Exhaustion Of Administrative Remedies. ................................. 6

        C.    Plaintiffs' Fair Housing Act, Americans With Disabilities Act, And
Rehabilitation Act Claims Are Ripe For Adjudication.............................. 7

                1.    Plaintiffs' Disparate Treatment And Disparate Impact
Claims Pursuant to 42 U.S.C. 3604(f)(1) Are Ripe For
Adjudication.................................................................. 8

                2.    Plaintiffs' Claim That Defendants Failed To Provide A
Reasonable Accommodation In Violation Of 42 U.S.C.
3604(f)(2) Is Ripe For Adjudication. ........................................... 10

        D.    Plaintiffs Will Face Significant Hardship If This Matter Is Not
Adjudicated By This Court. ....................................................... 16

II.     PLAINTIFFS ARE ENTITLED TO PRELIMINARY INJUNCTIVE
RELIEF........................................................................................ 17

        A.    A Preliminary Injunction Should Issue Because Plaintiffs Have
Established A Likelihood Of Success On Their FHA, ADA,
Rehabilitation Act, RLUIPA, And Constitutional Claims........................ 17

                1.    Plaintiffs Will Prevail On Their "Disparate Treatment"
Claim.......................................................................... 17

                2.    Plaintiffs Will Prevail On Their "Disparate Impact" Claim. ........ 20

                3.    Plaintiffs Are Likely To Succeed On Their Claim Based On
Failure To Provide Reasonable Accommodations....................... 22

47967/0023-17778928v4

4.      Plaintiffs Have Standing To Pursue Their Claim That Defendants Violated the ADA. ................................................... 23

5.      Plaintiffs Are Likely To Prevail On Their RLUIPA Claim. .......... 24

6.      Plaintiffs Are Likely To Prevail on Their Claim That Defendants Violated The Equal Protection Clause. ..................... 25

B.      Plaintiffs Have Demonstrated That They Will Suffer Irreparable Harm In The Absence Of Preliminary Injunctive Relief. ........................ 25

C.      The Balance of Hardships Ways In Favor Of A Preliminary Injunction. ............................................................................. 26

D.      The Public Interest Strongly Favors The Issuance Of Injunctive Relief. ..................................................................................... 27

III.    DEFENDANTS' CROSS-MOTION MUST BE DENIED BECAUSE PLAINTIFFS HAVE STATED VIABLE CLAIMS FOR RELIEF. .................... 28

A.      Plaintiffs Have Stated Viable Claims For Violations of 42 U.S.C. 1983. ....................................................................................... 28

B.      Plaintiffs Have Sufficiently Alleged Violations of State Law. ................. 29

C.      Plaintiffs Have Stated A Viable Claim Under 42 U.S.C. 1983 That Defendants Violated The Free Exercise Clause. ....................................... 29

CONCLUSION ................................................................................... 30

47967/0023-17778928v4

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

901 Ernston Rd., LLC v. Borough of Sayreville Zoning Bd. of Adjustment,
    2018 WL 2176175 (D.N.J. May 11, 2018) ............................................................................23

*Abbott Labs. v. Gardner*,
    387 U.S. 136 (1977), <u>overruled on other grounds by</u> <u>Califano v. Sanders</u>, 430
    U.S. 99 (1977)......................................................................................................................16

Advocacy and Resource Center v. Town of Chazy,
    62 F. Supp. 2d 686 (N.D.N.Y. 1999)..............................................................................11, 12

Arc of N.J., Inc. v. N.J.,
    950 F. Supp. 637 (D.N.J. 1996) ..........................................................................................17

Ass'n for Advancement of the Mentally Handicapped, Inc. v. City of Elizabeth,
    876 F. Supp. 614 (D.N.J. 1994) .......................................................................................9, 19

Assisted Living Assocs. of Moorestown, L.L.C. v. Moorestown Twp.,
    996 F. Supp. 409 (D.N.J. 1998) ..................................................................................... *passim*

Bay Area Addiction Research v. City of Antioch,
    179 F.3d 725 (9th Cir.1999) ................................................................................................24

Bell Atlantic Corp. v. Twombly,
    127 S. Ct. 1955 (2007).........................................................................................................28

Blake Gardens, LLC v. New Jersey,
    309 F. Supp. 3d 240 (D.N.J. 2018) .....................................................................................18

Blanche Rd. Corp. v. Bensalem Twp.,
    57 F.3d 253 (3d Cir. 1995), <u>abrogated for other reasons by</u> <u>United Artists</u>
    <u>Theatre Circuit, Inc. v. Twp. of Warrington, Pa.</u>, 316 F.3d 392 (3d Cir. 2003) .......................8

Brown v. Board of Ed.,
    347 U.S. 483 (1954).............................................................................................................2

Bryant Woods Inn, Inc. v. Howard Cty., Md.,
    124 F.3d 597 (4th Cir. 1997) ...........................................................................6, 11, 12, 23

Byrne v. Calastro,
    205 Fed. Appx. 10 (3d Cir. 2006) ......................................................................................17

Caron Found. of Fla., Inc. v. City of Delray Beach,
    879 F. Supp. 2d 1353 (S.D. Fla. 2012) .................................................................................9

iii

Children's All. v. City of Bellevue,
  950 F. Supp. 1491 (W.D. Wash. 1997)...................................................................19

Cmty. Servs., Inc. v. Wind Gap Mun. Auth,
  421 F.3d 170 (3d Cir. 2005).................................................................................7

Cohen v. Twp. of Cheltenham, Pennsylvania,
  174 F. Supp. 2d 307 (E.D. Pa. 2001) ..................................................................11

Cty. Concrete Corp. v. Town of Roxbury,
  442 F.3d 159 (3d Cir. 2006)........................................................................5, 8, 29

Curto v. A Country Place Condo. Ass'n, Inc.,
  921 F.3d 405 (3d Cir. 2019) (Fuentes, J., concurring).......................................2, 20

Diamond House of SE Idaho, LLC v. City of Ammon,
  381 F. Supp. 3d 1262 (D. Idaho 2019) ...............................................................27

Ferraro v. Zoning Bd. Of Adj. of Twp. of Holmdel,
  119 N.J. 61 (1990) ...............................................................................................16

Freedom Baptist Church of De. Cty. V. Twp. of Middletown,
  204 F. Supp. 2d 857 (E.D. Pa. 2002) ..................................................................24

Innovative Health Sys., Inc. v. City of White Plains,
  117 F.3d 37 (2d Cir.1997)....................................................................................24

Instant Air Freight Co. v. C.F. Air Freight, Inc.,
  882 F.2d 797 (3d Cir. 1989).................................................................................27

Kessler Inst. For Rehab. Inc. v. Mayor and Council of Borough of Essex Fells,
  876 F. Supp. 641 (D.N.J. 1995) ......................................................................23, 24

King v. Christie,
  981 F. Supp. 2d 296 (D.N.J. 2013), aff'd, 767 F.3d 216 (3d Cir. 2014) ................30

Lapid Ventures, LLC v. Twp. of Piscataway,
  2011 WL 2429314 (D.N.J. June 13, 2011)...................................................... passim

Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains,
  284 F.3d 442 (3d Cir. 2002).......................................................................... passim

Liberty Res., Inc. v. Se. Pa. Transp. Auth.,
  155 F. Supp. 2d 242 (E.D. Pa. 2001), judgment vacated and appeal dismissed
  54 F. App'x 769 (3d Cir. 2002) ...........................................................................23

Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch,
  510 F.3d 253 (3d Cir. 2007)................................................................................29

iv

McKivitz v. Twp. of Stowe,
    769 F. Supp. 2d 803 (W.D. Pa. 2010)................................................................7, 24

Montana Fair House, Inc. v. City of Bozeman,
    854 F. Supp. 2d 832 (D. Mont. 2012)............................................................1, 17, 18

Mt Holly Citizens In Action, Inc. v. Twp. of Mount Holly,
    2008 WL 4757299 (D.N.J. Oct. 28, 2008)..........................................................5, 9

New Directions Treatment Servs. v. City of Reading,
    490 F.3d 293 (3d Cir. 2007)................................................................................8

Oxford House, Inc. v. Twp. of Cherry Hill,
    799 F. Supp. 450 (D.N.J. 1992)........................................................................15, 19

Oxford House v. City of Virginia Beach, 825 F. Supp. 1251 (E.D. Va. 1993). ............................15

Peachlum v. City of York, Pa.,
    333 F.3d 429 (3d Cir. 2003)..............................................................................5

Raab Family P'ship v. Magnolia,
    2009 WL 361135 (D.N.J. Feb. 13, 2009) .............................................................26

ReMed Recovery Care Ctrs. v. Twp. of Willistown,
    36 F. Supp. 2d 676 (E.D. Pa. 1999) ...................................................................27

Resident Advisory Bd. v. Rizzo,
    564 F.2d 126 (3d Cir. 1977)..............................................................................18

Rinaldo v. Komar,
    2007 WL 130796 (D.N.J. Jan 12, 2007) ..............................................................28

Sharpvisions, Inc. v. Borough of Plum,
    475 F.Supp.2d 514 (W.D. Pa. 2007).....................................................................7

Suitum v. Tahoe Reg'l Planning Agency,
    520 U.S. 725 (1997)........................................................................................8

Taylor Inv., Ltd. v. Upper Darby Twp.,
    983 F.2d 1285 (3d Cir. 1993).........................................................................7, 28

Torres v. Franklin Twp.,
    2011 WL 6779596 (D.N.J. Dec. 22, 2011) ...........................................................9

United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.,
    316 F.3d 392 (3d Cir. 2003)...............................................................................29

47967/0023-17778928v4

Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City,
    473 U.S. 172 (1985), overruled on unrelated ground by Knick v. Twp. of
    Scott, Pa., 139 S. Ct. 2162 (2019)......................................................................6, 7, 11

Yates Real Estate, Inc. v. Plainfield Zoning Bd. of Adjustment,
    2019 WL 3453175 (D.N.J. July 31, 2019)...........................................................20

**Statutes**

42 U.S.C. 1983..................................................................................................... *passim*

42 U.S.C. 3604..................................................................................................... *passim*

42 U.S.C. 2000cc-2(b) ............................................................................................25

42 U.S.C. 3612........................................................................................................25

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...........................................................................................28

Fed. R. Civ. P. 12(c) ...............................................................................................28

## **PRELIMINARY STATEMENT**[1]

The City of Englewood's Zoning Code (the "**Code**") expressly discriminates against handicapped individuals.  That unlawful discrimination violates federal law, is ripe for judicial review, and cannot be justified.  Preliminary injunctive relief is necessary to prohibit the City from continuing its unlawful discrimination against the handicapped pending a trial on the merits.

On the one hand, the Code permits people to reside in twenty-four different zoning districts within the City.  On the other, the Code expressly confines individuals requiring the healthcare services of an assisted living facility to a single district: the City's "RIM" district, which the Code describes as a "light industrial" area.  This divergent treatment of the handicapped is patently unlawful, just as it would be if the Code confined individuals of different races or religions to different zones.  Because the Code "discriminates against the handicapped on its face" it violates the FHA, the ADA, and the Rehabilitation Act.  Montana Fair House, Inc. v. City of Bozeman, 854 F. Supp. 2d 832, 837 (D. Mont. 2012) (granting summary judgment FHA, ADA, and Rehabilitation Act claims because the zoning code at issue expressly allowed non-handicapped housing in every district yet limited the districts in which assisted living facilities could be built).

Unable to defend the plain text of the Code, Defendants urge this Court not to reach the merits of Plaintiffs' claims. [2]  Understandably given the facially discriminatory nature of the Code, Defendants' principal argument is that Plaintiffs' claims are not ripe for judicial review.  That ripeness argument, however, is fundamentally flawed.

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Verified Complaint (Dkt. No. 1).

[2] Defendants' brief and the Amicus Curiae submission are largely comprised of different iterations of the same arguments and thus are addressed together throughout this reply brief.

First, Defendants conflate the doctrine of ripeness with the doctrine of exhaustion of administrative remedies.  The Supreme Court has made clear that these are distinct concepts.  The concept of ripeness concerns whether a party's claims arise from an "actual, concrete injury."  Exhaustion, on the other hand, refers to the need to satisfy administrative procedures before a party can proceed with a lawsuit.  Despite Defendants' contentions, the FHA does not require exhaustion of administrative remedies before filing a discrimination claim.[3]  Indeed, just as the law does not require someone asserting overt racial discrimination to go to the zoning board, it is equally well-settled that challenges to an ordinance discriminating against the handicapped are ripe for consideration by the courts.

Because the Code facially discriminates against handicapped individuals, Plaintiffs are highly likely to prevail on the merits of this dispute.  To avoid an order enjoining enforcement of the facially discriminatory Code, Defendants must establish a "legitimate, bona fide" interest and demonstrate that "no alternative course of action could be adopted that would enable that interest to be served with less discriminatory impact."   Having all but rested on their ripeness argument, Defendants do not dispute that the Code is discriminatory or even attempt to justify its discrimination.  Instead, Defendants argue that, although handicapped individuals cannot reside in most of the City's residential zoning districts, the Code is not discriminatory because it allows them to reside in the City's separate and allegedly equal "RIM" district.  That argument falls woefully short of satisfying Defendants' burden of justifying the discriminatory Code.

Defendants shameful "separate but equal argument" cannot be countenanced.   Federal courts have long "denounced the very notion of 'separate, but equal' policies" as a justification for

_____

[3] The FHA was amended in 1988 by the Fair Housing Amendments Act ("**FHAA**"), Pub. L. 100–430, *434 102 Stat. 1620.  Courts use the terms "FHA" and "FHAA" interchangeably when referring to the amended version of the statute.  Because the parties have used "FHA" throughout the briefing, Plaintiffs will employ that term to refer to the statute as amended.

overt discrimination. Curto v. A Country Place Condo. Ass'n, Inc., 921 F.3d 405, 411 (3d Cir. 2019) (Fuentes, J., concurring) (citing Brown v. Board of Ed., 347 U.S. 483, 495 (1954)).  As the Brown Court aptly held, "separate" is "inherently unequal."  347 U.S. at 495.  "Separate but equal" also is prohibited by the FHA, which precludes local governments from applying land use regulations in a manner that will give disabled individuals less opportunity to live in certain neighborhoods than people without disabilities.

The City's RIM district is separate, but certainly not equal.  Rather, the RIM district is segregated from the City's other residential zones and is surrounded by "light industrial" properties and a railroad track.  Defendants cannot credibly argue that such a district is in any way "equal" to the other residential districts (especially those that are exclusively residential), that are geographically separate and (allegedly) are maintained to "preserve and protect the integrity of such district[s]" for residential use.

Defendants' remaining arguments, including those made in support of their cross-motion, are largely predicated on their flawed ripeness argument or their offensive contention that offering a "separate but equal" district for handicapped residents salvages the Code.  Because the facially discriminatory nature of the Code entitles Plaintiffs to preliminary injunctive relief, however, the balance of Plaintiffs' claims need only be sufficiently pled to defeat Defendants' cross-motion. Plaintiffs have more than adequately pled those claims.

Accordingly, this Court should preliminarily enjoin Defendants from enforcing the use restrictions of the R-AAA zone as they apply to the properties under Plaintiffs' control.  That relief is necessary to allow the development of a 150 unit assisted living/memory care facility as proposed and as approved by the New Jersey Department of Health, and to allow Plaintiffs to prosecute a non-discriminatory site plan application before the Planning Board.

## MATERIAL AND UNDISPUTED FACTS

A fulsome recitation of facts underlying Plaintiffs' request for preliminary injunctive relief is set forth in Plaintiffs' Verified Complaint (Dkt. No. 1) and in the Certification of Thomas Herten ("**Herten Cert.**") (Dkt. No. 2-1).  Defendants' Answer and Opposition Papers (Dkt. Nos. 19 and 20), however, concede certain material facts that independently are sufficient to compel the issuance of injunctive relief.  For the Court's convenience, those facts are set forth below:

- Under the Code, all City lands are assigned a zoning district.  <u>See</u> Verified Complaint, ¶ 32; Answer, ¶ 32 ("Admit.").

- The Code sets forth the permitted uses for every zoning district.  <u>Id.</u>; <u>see</u> <u>also</u> Code §§ 205-59 through 250-78.1.

- The City has twenty-seven total zoning districts, twenty-four of which allow for residential use.  <u>See</u> Declaration of Wayne Scott in Opposition to Plaintiffs' Application ("**Scott Decl.**"), ¶ 7.

- Although twenty-four districts permit residential use, only one zoning district, the RIM zone, permits assisted living facilities to be built.  <u>See</u> Verified Complaint, ¶ 38; Answer, ¶ 38.

- Unlike non-handicapped citizens who can choose to live in any of the City's twenty-four zoning districts, handicapped individuals requiring an assisted living facility are limited to the RIM district.  <u>Id.</u>

- In fact, the City's zoning officer confirmed to the Council that the City intentionally created the RIM district as the exclusive zone where the handicapped elderly could receive reside in a congregant setting.  <u>See</u> Herten Cert. ¶ 2 at Exh. J; Tr. at 80-81.

- The RIM district is described in the Code as "permit[ting] land uses that reflect contemporary light industrial economies."  <u>See</u> Code, § 250-72.

- That description of the RIM district can be contrasted with exclusively residential districts, such as the R-AAA district, which are intended to "preserve and protect the integrity of such districts" for residential use, but which permit houses of worship, schools, and other conditional non-residential uses.  <u>See</u> Code, § 250-59.

- Defendants have not offered any justification for the Code's discrimination against handicapped residents in need of daily care in a congregant setting.  <u>See</u> <u>generally</u> Opposition Brief and Supporting Certifications and Declarations (Dkt. No. 20).

**LEGAL ARGUMENT**

## I.   PLAINTIFFS' CLAIMS ARISE FROM "ACTUAL, CONCRETE" INJURIES AND ARE RIPE FOR ADJUDICATION BY THIS COURT.

This case arises from Defendants' discriminatory actions—i.e. the City's adoption and enforcement of the discriminatory Code—that resulted in "actual, concrete" harm to Plaintiffs. Under well-settled law, Plaintiffs' claims are ripe for adjudication by this Court.

### A.   The Doctrine Of Ripeness Requires The Existence Of An Actual Case Or Controversy.

The ripeness doctrine ensures an actual "case or controversy" exists between the parties; it is a "prerequisite to all federal actions, including those for declaratory or injunctive relief." Peachlum v. City of York, Pa., 333 F.3d 429, 433 (3d Cir. 2003) (citations omitted). Determining if a case is ripe requires consideration of whether "there is a substantial controversy between parties having adverse legal interests, 'of sufficient immediacy and reality' to justify judicial resolution." Id. (citing, inter alia, Abbott Labs. v. Gardner, 387 U.S. 136, 148–49 (1977), overruled on other grounds by Califano v. Sanders, 430 U.S. 99 (1977)).  Courts look to each claim presented and determine: (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." Id. (the "**Abbott Labs Factors**").

As discussed below, in the land use context, whether an issue is ripe depends on whether the claims alleged resulted in an "actual, concrete injury." Cty. Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 164 (3d Cir. 2006).  In that regard, ripeness challenges in land use disputes typically are resolved using only the first Abbott Labs Factor (existence of an actual controversy).

For example, "facial" challenges to a zoning ordinance are ripe regardless of whether prior administrative action was taken. Cty. Concrete Corp., 442 F3d at 164.  Because such claims rest on events "that have already occurred," i.e., adoption of a discriminatory ordinance, "[they are]

ripe for adjudication." Mt Holly Citizens In Action, Inc. v. Twp. of Mount Holly, 2008 WL

4757299, at *4 (D.N.J. Oct. 28, 2008).[4]

> **B.    Defendants' Ripeness Analysis Erroneously Conflates Ripeness With The Exhaustion Of Administrative Remedies.**

Before turning to the ripeness of the claims in this case, however, Plaintiffs are compelled

to analyze the flaws in Defendants' ripeness argument.  First, Defendants conflate ripeness with

the exhaustion of administrative remedies.  See Opp. Br., pp. 3-13.  That mistake is fatal to

Defendants' analysis.

Contrary to Defendants' contentions, ripeness and exhaustion are distinct concepts.  As the

Supreme Court has observed:

> While the policies underlying the . . . concepts [of exhaustion and
> ripeness] often overlap, the finality [or ripeness] requirement is
> concerned with whether the initial decisionmaker has arrived at a
> definitive position on the issue that inflicts an actual, concrete
> injury;
>
> the exhaustion requirement generally refers to administrative and
> judicial procedures [through] which an injured party [must first]
> seek review of an adverse decision . . . .

Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 193

(1985), overruled on unrelated ground by Knick v. Twp. of Scott, Pa., 139 S. Ct. 2162 (2019).[5]

---

[4] In contrast, an "as applied" challenge to a municipality's action often requires a final
decision by a municipality because, absent an actual application by the town (or some exception
from the application process), the requirement for an "actual, concrete" injury cannot be satisfied.
See Lapid Ventures, LLC v. Twp. of Piscataway, 2011 WL 2429314, at *4, *7 (D.N.J. June 13,
2011) (holding that although the plaintiff's "as applied" challenges would not ripen until "the
zoning authorities [] had an opportunity to" take some future action, the plaintiff's "facial
challenge to the [Ordinance]" was "ripe for judicial review").

[5] Although "Williamson involved a challenge to a regulatory taking, subsequent Circuit
Court decisions have applied this ripeness reasoning to land use disputes . . . ." Id. (citations
omitted).

Although FHA claims (like all civil claims) must be ripe, the FHA does not require exhaustion of administrative remedies.   Thus, the FHA permits private enforcement by plaintiffs suffering an actual injury "whether or not [an administrative] complaint has been filed."  Bryant Woods Inn, Inc. v. Howard Cty., Md., 124 F.3d 597, 601 (4th Cir. 1997).

Defendants further err in their analysis of controlling case law.  Contrary to Defendants' contentions, the Williamson decision addressed when a claim predicated upon the discriminatory decision of a land use board was ripe for review by a federal court.   Critically, however, Williamson "does not apply to facial challenges to a zoning ordinance."  Taylor Inv., Ltd. v. Upper Darby Twp., 983 F.2d 1285, 1294 (3d Cir. 1993).  Rather, Williamson only addresses the ripeness of a challenge to a zoning board's decision.  Id.  Thus, Defendants' reliance on Williamson to analyze the ripeness of Plaintiffs' disparate treatment and disparate impact claims, which are not predicated upon a decision made by the local land use board, is wholly without merit.

Stated simply, this Court's ripeness inquiry must begin with an analysis of the claims to determine if a case or controversy exists.  Id.  Because Plaintiffs' claims arise from "actual, concrete" harm from the facially discriminatory Code, they are ripe for judicial review.

## C.   Plaintiffs' Fair Housing Act, Americans With Disabilities Act, And Rehabilitation Act Claims Are Ripe For Adjudication.

The FHA has two different provisions prohibiting discrimination based on handicap in municipal zoning:  42 U.S.C. 3604(f)(1) and §604(f)(3)(B).  The first, is to "otherwise make unavailable or deny, a dwelling because of handicap."  42 U.S.C. 3604(f)(1).  This is a prohibition on discrimination that allows an injured party to bring claims based on: (i) an ordinance's "disparate treatment," i.e., intentional discrimination, or (ii) the disparate impact of a facially neutral ordinance.  Cmty. Servs., Inc. v. Wind Gap Mun. Auth, 421 F.3d 170, 176 (3d Cir. 2005).[6]

---

[6]  The FHA, the Rehabilitation Act, and the ADA "are all applicable to zoning decisions."  McKivitz v. Twp. of Stowe, 769 F. Supp. 2d 803, 823–24 (W.D. Pa. 2010) (citing

The FHA also makes it unlawful to "refusal to make reasonable accommodations in rules, accommodations and practices." Id. (citing 42 U.S.C. 3604(f)(3)(B)).

Here, Plaintiffs' FHA claims are predicated upon three distinct issues: (1) that the Code is intentionally discriminatory (disparate treatment claim); (2) that the Code's enforcement is discriminatory (disparate impact); and (3) that Defendants failed to provide Plaintiffs with a reasonable accommodation. As set forth below, each of those claims is ripe for adjudication.

1. **Plaintiffs' Disparate Treatment And Disparate Impact Claims Pursuant to 42 U.S.C. 3604(f)(1) Are Ripe For Adjudication.**

The Code expressly discriminates against handicapped individuals by excluding congregate living arrangements for persons with handicaps from twenty-three of the twenty-four residential districts in the City and forcing such individuals to reside in the "light industrial" RIM district.  Plaintiffs' challenge to the express terms of the Code pursuant to 42 U.S.C. 3604(f)(1), therefore, ripe for judicial review.

"The only way to alter a facially discriminatory ordinance is to remove the discriminatory language." New Directions Treatment Servs. v. City of Reading, 490 F.3d 293, 303 (3d Cir. 2007). Thus, facial challenges "are generally ripe the moment the challenged regulation or ordinance is passed."  Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, 736, n.10 (1997).  Indeed, an "an actual, concrete injury exists" with respect to every facial challenge, "making Defendants' express violation of Plaintiffs' federal rights ripe for this Court's review."  Cty. Concrete Corp.,

---

Forest City Daly Housing, Inc. v. Town of North Hempstead, 175 F.3d 144, 150–151 (2d Cir.1999)).  "Since the requirements of the FHAA, ADA and Rehabilitation Act are essentially the same, courts have concluded that the FHAA analysis can be applied to ADA and Rehabilitation Act claims as well in such cases where claims are brought under all three statutes."  Lapid Ventures, LLC v. Twp. of Piscataway, 2011 WL 2429314, at *5 (D.N.J. June 13, 2011) (citations omitted); see also Sharpvisions, Inc. v. Borough of Plum, 475 F.Supp.2d 514, 522 (W.D. Pa. 2007) (claims under the FHA, the Rehabilitation Act, and the ADA may proceed under a "disparate treatment," "disparate impact," or "reasonable accommodation" theory).

442 F.3d at 164.  Likewise, claims that an ordnance has a disparate impact on the handicapped is also ripe for review, notwithstanding whether earlier administrative action took place, because such claims are not predicated upon a decision being reached by the local planning board.  Lapid Ventures, 2011 WL 2429314, at *6; see also Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 267 (3d Cir. 1995), abrogated for other reasons by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa., 316 F.3d 392 (3d Cir. 2003).

Defendants' suggestion that this Court's ripeness inquiry should focus only on the Municipal Land Use Law ("**MLUL**"), N.J.S.A. 40:55D-1, et seq., is without merit.  See Opp. Br., pp. 6-11.[7]  Irrespective of compliance with the MLUL, a "facial challenge to a township ordinance based on a statutory cause of action," is always ripe for adjudication.  Assisted Living Assocs. of Moorestown, L.L.C. v. Moorestown Twp., 996 F. Supp. 409, 427 n. 10 (D.N.J. 1998).

For example, in Torres v. Franklin Twp., 2011 WL 6779596, at *5 (D.N.J. Dec. 22, 2011), a housing developer asserted a facial challenge under the FHA to a town's conduct.  The developer alleged that Franklin Township had intentionally failed to develop by an affordable housing plan, which was necessary to approve the developer's proposed project, because of racial and anti-Semitic animus.  The town argued, among other things, that the claim was not ripe because the developer did not first file a site plan or proposal with the town to develop the property and, therefore, there had been "no denial of housing to an individual, nor was there a denial of a housing development plan to a developer."  Id.  Relying on prior decisions based on facial challenges to an ordinance, the trial court held that disparate treatment claims are ripe even though no site plan or proposal had been filed with respect to the proposed development.  Id. (citations omitted); see also

---

[7] Defendants' reliance on the MLUL to defend FHA violations also is misplaced because the "MLUL is invalid under the FHAA, to the extent that it permits municipalities to adopt zoning ordinances which would violate the FHAA."  Ass'n for Advancement of the Mentally Handicapped, Inc. v. City of Elizabeth, 876 F. Supp. 614, 625 (D.N.J. 1994).

Caron Found. of Fla., Inc. v. City of Delray Beach, 879 F. Supp. 2d 1353 (S.D. Fla. 2012) (finding a facial challenge to be ripe because "[d]isparate treatment claims do not require [proceeding first with a] municipal application process"); Mt Holly Citizens In Action, 2008 WL 4757299, at *4 (challenges to actions a Township has already taken "rest[] on events that have already occurred, [and are thus] ripe for adjudication"); Marriott Senior Living , 78 F. Supp. 2d 376 (E.D. Pa. 1999) (finding a facial challenge to be ripe).  In fact, Defendants do not (and cannot) cite a single case in which a facial challenge was found not ripe for adjudication.  See Opp. Br., pp. 3-13

The Code facially discriminates against handicapped individuals requiring care in congregant settings by expressly limiting construction of assisted living facilities to the RIM district.  Non-handicapped individuals are not treated the same way.  The Code also has a disparate impact on the elderly Jewish population in Englewood in that it substantially burdens Orthodox Jewish citizens ability to travel to and from congregate care facilities on the Sabbath.  "Plaintiffs' claims of disparate treatment and disparate impact in violation of the FHAA, the ADA, and the Rehabilitation Act are . . . ripe for adjudication."  Lapid Ventures, 2011 WL 2429314, at *6.

2.  **Plaintiffs' Claim That Defendants Failed To Provide A Reasonable Accommodation In Violation Of 42 U.S.C. 3604(f)(2) Is Ripe For Adjudication.**

Plaintiffs' claims arising from Defendants' failure to provide a reasonable accommodation also are ripe for judicial review.  As an initial matter, Plaintiffs did seek, and were denied, a reasonable accommodation.  Herten Cert., ¶ 8.  Regardless, Plaintiffs satisfy established exceptions to the requirement that they pursue a variance before pursuing a reasonable accommodation claim, namely: (i) further action before the Board would be futile; and (ii) the City's application process is inherently discriminatory.  See Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains, 284 F.3d 442, 452 (3d Cir. 2002) (citing with approval the standard adopted by the

10

Seventh Circuit in <u>Vill. of Palatine</u>, 37 F.3d 1230 (7th Cir. 1994)).  Each of those bases is sufficient

to find Plaintiffs' reasonable accommodation claims ripe for adjudication.

>          **i.      This Matter is Ripe Because Defendants Failed To**
>                   **Provide Reasonable Accommodations.**

On January 14, 2019, Plaintiffs' requested a reasonable accommodation by submitting the

Application, where they asked the Council to rezone the Property for the Facility.  The City

effectively denied the Application by refusing to take any action, in contravention of the FHA.

Instead, Defendants repeatedly told Plaintiffs to abandon the Application and seek a variance from

the Board of Adjustment.  Verified Complaint, ¶ 102.  Defendants' failure to act, as well as their

attempt to avoid the Application altogether, constitute a failure to provide reasonable

accommodations that is ripe for review by this Court.

In the context of a reasonable accommodation request, a ripeness analysis does not focus

on whether all possible municipal proceedings were exhausted.  <u>See</u> <u>Williamson</u>, 473 U.S. at 193

(distinguishing ripeness from exhaustion).  Rather, "[i]n deciding whether an issue is ripe," this

Court's inquiry should be "whether the issue is substantively definitive enough to be fit for judicial

decision . . . ."  <u>Bryant Woods</u>, 124 F.3d at 602.  Under the FHA, "a violation occurs when the

disabled resident is first denied a reasonable accommodation."  In other words, once a municipality

is "afforded an opportunity to make a final decision, the issue is sufficiently concrete for judicial

resolution . . . ."  <u>Id.</u>  The fact that an alternative municipal remedy is available is irrelevant.  <u>Id.</u>;

<u>see also</u> <u>Cohen v. Twp. of Cheltenham, Pennsylvania</u>, 174 F. Supp. 2d 307, 319–20 (E.D. Pa.

2001) (adopting the standard articulated in <u>Brant Woods</u>).[8]

---

[8] Defendants cite <u>Lapid-Laurel</u> as the definitive Third Circuit decision on ripeness in
reasonable accommodation cases.  <u>See</u> Opposition Br., p. 8.  The Third Circuit expressly noted in
<u>Lapid-Laurel</u>, however, that it was "not presented with and [did] not reach questions of ripeness
or exhaustion in [that] case."  <u>Id.</u> at 452, n.5.  <u>Hovsons</u>, the other Third Circuit case Defendants
rely on, does not address ripeness at all.  89 F.3d at 1096.

In Advocacy and Resource Center v. Town of Chazy, 62 F. Supp. 2d 686 (N.D.N.Y. 1999), for example, a new community residence informed the town of its intention to operate as a residence for people with developmental disabilities.  After several neighbors complained to the planning board, the zoning enforcement officer issued a violation letter to the facility, indicating that it was a "nonprofit recreational facility" expressly prohibited within the district. The facility was invited to "either apply for a variance or seek to amend the zoning code." Id. at 688.  Instead, the facility filed an FHA suit, arguing that the town was required to provide a reasonable accommodation.  The town moved for summary judgment, arguing that the claims were not ripe because the facility failed to seek a variance or a zoning change.  The court rejected the town's argument, holding the "case was ripe from the moment the Town issued its violation letter since it could have acted against the residence anytime thereafter." Id. at 689.

Like the enforcement officer in Town of Chazy, the City's zoning officer, Wayne Scott has taken the position here that the proposed use of the Property for an assisted living facility is improper.  Mr. Scott's testimony before the Council makes clear that he supports the *status quo*: congregating assisted living and memory care residents exclusively in the "light industrial" RIM district.  It also makes clear that he will not support legislative or quasi-judicial efforts to allow such uses in residential districts.  Lastly, he indicates he considers the RIM district the only appropriate zone for the Facility.  See Herten Cert., ¶ 2, Exh. K, Tr. 81-82.

Mr. Scott had the opportunity to address these issues in the Declaration he submitted in opposition to Plaintiffs' application.  See Scott Decl.  Quite tellingly, he made no attempt to explain or modify his prior statements or the Verified Complaint's allegations concerning his statements. In fact, other than addressing certain variances previously granted by the Board of Adjustment, Mr. Scott's only other statements concern the RIM district, which Mr. Scott insinuates is somehow separate but equal to the exclusively residential zones.  See Scott Decl., ¶¶ 6-9.

Plaintiffs have established that they sought, and were denied, a reasonable accommodation from Defendants, i.e. a zoning modification.  See Bryant Woods, 124 F.3d at 601 (holding that a "violation of the FHA occurs when the disabled resident is first denied a reasonable accommodation").  Having done so, the burden shifts to Defendants to prove that the proposed accommodation is not reasonable.  Hovsons, 89 F.3d at 1103.  Rather than attempting to meet that burden, Defendants instead have argued that Plaintiffs' claims are not ripe.  As set forth above, the City's actions are "substantively definitive enough to be fit for judicial decision," such that Defendants' failure to meet Plaintiffs' request for a reasonable accommodation is ripe for review.

### ii.  This Matter Also Is Ripe Because Further Action Before Municipal Boards Would Be Futile.

Even if this Court were to determine that Plaintiffs did not make a proper request for a reasonable accommodation, this matter would still be ripe for review because further action before the Board of Adjustment would be futile.  See Moorestown, 996 F. Supp. at 425-26.   In Moorestown, developers of an assisted living facility "moved for a preliminary injunction under the [FHA], demanding a reasonable accommodation to allow the construction of an assisted living facility in the R-1 district" in Moorestown.  996 F. Supp. at 414.  The zoning ordinance reflected an "intention to relegate the handicapped to the periphery of residential areas or 'transitional' parts of Moorestown."  Id.

The township moved to dismiss, arguing the "controversy is not ripe."   Id. at 425. Specifically, the township argued that because the plaintiff "never applied to the Zoning Board for a variance, it [could not] be determined how the applicable zoning regulations . . . which prevent[] [the facility] from being even conditionally allowable in the R–1 district, [would] apply to [plaintiff]."  Id.

After distinguishing many of the same cases Defendants have cited in this case, here, the court held that "there [was] no question as to what the result of an application for a variance . . . would be."  Specifically:

> The Township's own witness, McVey, one of the most knowledgeable and influential figures within the Township, if not the most, with respect to zoning and planning, testified that it is 'extremely unlikely' that a variance would be granted and that he would not recommend such a variance . . . .  This testimony was unrebutted and unchallenged.

Id. at 426.  Thus, the court held the matter was ripe for adjudication notwithstanding that the plaintiff did not pursue a variance.  Id.  ("litigants are not required to make futile gestures to establish ripeness. . . ."  Id. (citing, inter alia, Sammon v. New Jersey Bd. of Med. Exam'rs, 66 F.3d 639, (3d Cir. 1995)).

The instant case is closely analogous to the situation in Moorestown.  First, Plaintiffs here are seeking preliminary injunctive relief under the FHA to prevent the City from enforcing an ordinance that prohibits assisted living facilities in an exclusively residential district in the City. Second, the Code, like the ordinance at issue in Moorestown, reflects an "intention to relegate the handicapped to the periphery of residential areas or 'transitional' parts of" the City.  Third, Plaintiffs tried to obtain a reasonable accommodation by asking for a rezoning of the Property, but were met with silence.  Finally, the City's zoning officer, Wayne Scott, like Moorestown's witness, has taken the position that Plaintiffs' proposed use of the Property is improper.  See Herten Cert., ¶ 2, Exh. K, Tr. 81-82.  In fact, when given a second bite at the apple, Mr. Scott made no effort to modify or supplement his prior statements.  See Scott Decl., ¶¶ 6-9.

Based on the foregoing, and just like in Moorestown, this matter is ripe for adjudication notwithstanding that Plaintiffs did not undertake the wasteful exercise of pursuing a variance. There exists an actual controversy between the parties that requires the intervention of the Court,

as "any further efforts to work within the municipal administrative apparatus [by pursuing appeals] would be an exercise in futility."  Easter Seal Soc'y, 798 F. Supp. at 236.

### iii. The Onerous Procedures Imposed Only On The Handicapped Make This Matter Ripe For Review.

Finally, the onerous process the City imposes on the handicapped constitutes a separate and independent basis for finding this matter ripe for judicial adjudication.  See Vill. of Palatine, 37 F.3d at 1233 (requiring plaintiff "to utilize the procedures for obtaining a special use approval is itself a failure on the part of the [defendant] to make a reasonable accommodation to the needs of the handicapped.  This claim is of course currently ripe").  As set forth in Plaintiffs' complaint (and not rebutted by Defendants), requiring handicapped individuals to obtain a use variance from the Board of Adjustment is an onerous and improper burden imposed on handicapped persons but not non-handicapped persons who want to reside in the City' residential districts.  For example:

- Although the Council can act by a simple majority on a rezoning application, the Board of Adjustment must have a super-majority to approve a use variance.  N.J.S.A. 40:55D-70(b); Code, § 250-27(B).

- Unlike the Council's ability to take all necessary actions under the law, the Board of Adjustment must conduct a four-part balancing test to determine whether to grant a variance for an inherently beneficial use.  Id.

- In practice, the Board of Adjustment hearing process can span months or even years.  See Herten Cert. ¶ 6.

- The Board of Adjustment can impose conditions on approvals.  Plaintiffs, however, would not know what conditions would be imposed until after a substantial investment in the approval process (beyond their significant investment to date) and the passage of many months, at a minimum.  Herten Cert., ¶ 6.

Defendants' "suggestion that making the process of [obtaining housing in a residential area] more onerous for [P]laintiffs than it is for the majority of applicants, somehow constitutes a 'reasonable accommodation,' stands the concept on its head."  Oxford House, Inc. v. Twp. of Cherry Hill, 799 F. Supp. 450, 462 (D.N.J. 1992).  That argument is "analogous to arguing

15

that a rule requiring only handicapped people to pay a special fee before entering a building constitutes a reasonable accommodation." Id. In Twp. of Cherry Hill, for example, the court found a failure to provide a reasonable accommodation when, rather than waive a minor requirement and grant a certificate of occupancy, the town instead suggested that the developer undertake a variance process. Id. at 462. Because the Board's suggested additional procedures would impose an additional burden on the prospective handicapped residents, no further administrative remedies need be pursued, and this matter is ripe for judicial review. See Oxford House v. City of Virginia Beach, 825 F. Supp. 1251, 1260 (E.D. Va. 1993) (to the extent plaintiffs "claim that the permit application process itself violates their rights under federal law, resort to that process cannot be a precondition to bringing suit in federal court").[9]

### D.   **Plaintiffs Will Face Significant Hardship If This Matter Is Not Adjudicated By This Court.**

As noted above, the Supreme Court's test for ripeness requires consideration of two separate points. First, courts consider the fitness of the issues for judicial decision. Abbott Labs., 387 U.S. at 149. Although FHA cases focus largely on that analysis, the second part of the Abbots Labs test, i.e. "the hardship to the parties of withholding court consideration" must also be considered. Because Plaintiffs will face significant harm if this matter is not promptly adjudicated, Plaintiffs' claims are ripe for judicial review.

---

[9] Defendants also note that a portion of Plaintiffs' property is Englewood Cliffs and argue that that because Plaintiffs did not also apply to Englewood Cliffs' governing body that Plaintiffs' claims are not ripe. See Opposition Br., p. 7 fn. 3 (citing Ferraro v. Zoning Bd. Of Adj. of Twp. of Holmdel, 119 N.J. 61 (1990)). The Ferraro decision, however, has nothing to do with ripeness. Rather, Ferraro stands for the proposition that Plaintiffs may need approval from both Englewood and Englewood Cliffs to proceed with their planned use for the Property. The cases cited in the Amicus Curiae submission are likewise inapposite. Even if an application to Englewood Cliffs were necessary, however, it would not absolve Englewood of its obligation to comply with the law and to cease its unlawful discrimination against the handicapped.

Plaintiffs will face substantial hardship if the Court declines to consider the merits of this dispute. Sending Plaintiffs to the Board of Adjustment is "remarkably unlikely to shed light on whether the accommodation requested is reasonable or necessary." Moorestown, 996 F. Supp. at 428. Rather, "[a]pplying for such a variance will only delay resolution of this" dispute. Id. Moreover, requiring Plaintiffs to continue to expend funds to maintain their option to purchase part of the Property (to the extent that is even a possibility) will impose a significant financial hardship. Id. Id.; see also Sunrise Development, Inc. v. Town of Huntington, New York, 62 F. Supp. 2d 762 (E.D.N.Y. 1999) (failure to consider the claim would result in hardship to the parties, i.e., loss of a considerable financial investment). In fact, failure to grant the requested relief may result in Plaintiffs' loss of portions of the Property altogether. See Verified Complaint, ¶ 8.

Defendants have suggested no reason why rendering a decision, without requiring Plaintiffs to apply to the Board of Adjustment for a use variance, would impose a hardship on them. Accordingly, the hardship Plaintiffs will face if this matter is not considered is a separate and independent basis for finding this matter ripe for adjudication.

## II.  PLAINTIFFS ARE ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF.

Plaintiffs have satisfied each of the four factors necessary for the requested injunction to issue. See Byrne v. Calastro, 205 Fed. Appx. 10, 15 (3d Cir. 2006) (listing factors, citations omitted). Defendants' unavailing arguments in opposition to each factor are addressed below.

### A.  A Preliminary Injunction Should Issue Because Plaintiffs Have Established A Likelihood Of Success On Their FHA, ADA, Rehabilitation Act, RLUIPA, And Constitutional Claims.

#### 1.  Plaintiffs Will Prevail On Their "Disparate Treatment" Claim.

A disparate treatment claim is established "by demonstrating that a given legislative provision discriminates against the handicapped on its face, i.e., applies different rules to the disabled than are applied to others." Arc of N.J., Inc. v. N.J., 950 F. Supp. 637, 643 (D.N.J. 1996).

Contrary to Defendants' flawed recitation of the law, a plaintiff "need not prove malice or prejudice on the part of the drafters of the statute or ordinance, because the proper focus is on the explicit terms of the legislation." Id. In fact, a discriminatory purpose need not even figure "solely, primarily, or even predominantly" into the motivation behind the challenged action. Cmty. Hous. Trust, 257 F. Supp. 2d at 225; see e.g., Mont. Fair House, 854 F. Supp. 2d. at 834. If a plaintiff establishes an ordinance is discriminatory, the burden shifts to "the governmental defendant to justify the disparate treatment." Arc of N.J., 950 F. Supp. at 643.

The plaintiff in Mont. Fair House alleged that the City of Bozeman's zoning ordinance discriminated against handicapped individuals in violation of the FHA, ADA, and Rehabilitation Act. The zoning ordinance at issue permitted "single-household dwellings . . . in [all seven districts] in the city," but "categorically" disallowed assisted living facilities in four of those districts. Relying solely on the plaint text of the ordinance, the court granted summary judgment on the plaintiff's claim, holding that the ordinance "discriminates against the handicapped on its face" because it "applies less favorably to a protected group, i.e., individuals who require assisted living care due to disabilities." Id. at 837.

Here, the facts necessary to resolve Plaintiffs' disparate treatment claim are undisputed. As in Mont. Fair House, the Code categorically excludes assisted living facilities from twenty-three of the City's twenty-four residential districts. Because the Code "applies less favorably to a protected group, i.e., individuals who require assisted living care due to disabilities," it is facially discriminatory in violation of the FHA. Id.; see also, Blake Gardens, LLC v. New Jersey, 309 F. Supp. 3d 240, 249–50 (D.N.J. 2018) (finding an ordinance discriminated on its face by "restrict[ing] the housing choices of people based on their handicaps");

Because the Code is facially discriminatory, Defendants "must demonstrate [i] a justification that serves in theory and practice, a legitimate, bona fide interest . . . and [2] that no

alternative course of action could be adopted that would enable that interest to be served with less discriminatory impact." Id., at 249 (citing Arc of N.J., 950 F. Supp. at 643). If Defendants do not offer a sufficient justification, "a violation is proved." Resident Advisory Bd. v. Rizzo, 564 F.2d 126, 149 (3d Cir. 1977). Here, Defendants have failed to meet that burden.

Defendants only "justification" for the Code is that it seeks to "preserve the character of the City's various neighborhoods." See Declaration of Former Mayors, ¶ 11. Defendants offer no evidence, however, that the proposed Facility would "compromise the Township's legitimate interests in the residential character of the surrounding neighborhood." Oxford House, Inc. v. Twp. of Cherry Hill, 799 F. Supp. 450, 462 (D.N.J. 1992).

In fact, "the record is devoid of any evidence that allowing assisted living . . . facilities in residential districts would detract from a neighborhood's residential character." Ass'n for Advancement of the Mentally Handicapped, Inc. v. City of Elizabeth, 876 F. Supp. 614, 623 (D.N.J. 1994). To the contrary, the record reflects that the Facility would "replace vacant and dilapidated structures, and has been styled with Tudor architecture and landscaping to blend with and enhance its surroundings." Verified Complaint, ¶ 7.

Defendants remaining arguments similarly lack merit. First, Defendants argue that the Code cannot be considered discriminatory because: (i) the Bristal Assisted Living Facility (the "**Bristal**") was approved in the RIM district; and (ii) the Actor's Home exists in a single-family zone, purportedly reflecting the fact that variances can be provided in the residential zones. Opp. Br., p. 18. First, that the Bristal was approved in the RIM district has no bearing on whether the ordinance is discriminatory. The Bristal has the right to operate in the RIM district, but the handicapped also have the right to live in the City's twenty-three other residential districts.

The Actor's Home, on the other hand, was built in 1928 in a residential zone and apparently has been permitted to remain and granted variances to expand. Such facts, however,

do not salvage the discriminatory code.   Indeed, "a willingness to make a reasonable accommodation cannot rebut a finding of facial discrimination" and may, in fact, support a finding that "ordinance discriminates on the basis of handicap."   Children's All. v. City of Bellevue, 950 F. Supp. 1491, 1500 (W.D. Wash. 1997).[10]

Finally, Defendants' "separate but equal" arguments must be rejected outright.  As Judge Fuentes noted in his concurring opinion in Curto, "our jurisprudence has denounced the very notion of 'separate, but equal' policies.  In Brown v. Board of Education, the Supreme Court recognized that the doctrine of 'separate but equal' has no place because separate facilities are "inherently unequal."  921 F.3d at 411 (internal marks omitted).  As with other anti-discrimination laws, the FHA is not "receptive to arguments based on NIMBY ('not in my back yard') or separate-but-equal reasoning."  Yates Real Estate, Inc. v. Plainfield Zoning Bd. of Adjustment, 2019 WL 3453175, at *25 (D.N.J. July 31, 2019).  Regardless, the "light industrial" RIM district is not at all "equal" to the other residential zones in the City.

The Code is facially discriminatory, and Defendants failed to justify its discrimination.  For that reason alone, Plaintiffs are entitled to preliminary injunctive relief.

## 2. Plaintiffs Will Prevail On Their "Disparate Impact" Claim.

A disparate impact claim arises if Defendants' "action had a greater adverse impact on the protected group than on others."  Lapid-Laurel, 284 F.3d at 466–67.  Once a plaintiff makes such a showing, "the burden shifts to the defendant to show that it had a legitimate, non-discriminatory reason for the action and that no less discriminatory alternatives [are] available."  Id.

_____

[10] Moreover, Defendants' reliance on the fact that they provided use variances for the Moriah School and the Dwight Englewood School does not rebut the Code's facial discrimination. Notably, however, the Moriah School is directly across E Palisade Avenue from the Property and the Dwight Englewood School is directly across N Woodland Street from the Property.  See Scott Decl., ¶ 5.  Neither facility can be credibly said to enhance the area's "residential character," further undercutting Defendants' attempt to justify their discriminatory Code.

Plaintiffs have established that the Code has a greater impact on Orthodox Jews and the handicapped than on everyone else in the City, in contravention of the FHA. Specifically, the Code prevents the City's Orthodox Jewish community from traveling to and from assisted living facilities and the other residential areas on Shabbat, as the RIM district is not walkable from the City's residential districts. See Verified Complaint, ¶¶ 50-51. The Code does not similarly impact non-Orthodox Jewish individuals who may travel by car to the RIM district.

The City's land use regulations also hinder the residential choices of handicapped citizens, including their choice to live in congregate residential settings in most of the City's residential zones. In fact, there is no dispute that, other than the Actor's Home, there are no assisted living facilities in the City's residential districts (other than the RIM district), nor is it disputed that the RIM district, unlike the other residential districts, is surrounded by industrial and commercial uses.

Under the circumstances, Plaintiffs have met their initial burden of demonstrating a disparate impact against the Orthodox Jewish community and handicapped individuals. Defendants, however, do not attempt to establish a legitimate, non-discriminatory reason for the Code's disparate impact on these protected groups. Instead, Defendants argue that as a matter of law, a discriminatory impact claim cannot be predicated upon a "land use regime [that only] provides for senior housing in one location . . . ." See Opp. Br., p. 19 (citing Lapid-Laurel, supra). Defendants appear to misunderstand and thus misapply the Lapid-Laurel decision.

To appreciate the holding in Lapid-Laurel, it is first necessary to understand the context in which the decision was issued, i.e., an appeal from the District Courts' grant of summary judgment. Unlike in this case, the parties in Lapid-Laurel had the benefit discovery and had fully fleshed out the factual bases for their arguments. Id. at 448.

The court in Lapid-Laurel noted that the "**only evidence** that Lapid cites to support its *prima facie* case of disparate impact is that Scotch Plains's zoning plan designates only one

21

location in the Township for 'senior housing.'" Id. at 467 (emphasis added).  The court noted there was "no evidence of a pattern of the town refusing to grant variances for housing for the elderly or any other [evidence of] a disparate impact." Id. at 467-68.  Thus, the court concluded the ordinance alone "does not establish a prima facie case of discriminatory impact . . . ."[11]

The facts here differ significantly from Lapid-Laurel.  First, Plaintiffs' disparate impact claim is in its infancy and no discovery has taken place.  Regardless, Plaintiffs have provided the Court with evidence of the discriminatory impact of the Code, including the hardship the Code creates for the Orthodox Jewish community and on handicapped citizens.  Because Defendants have not refuted any of that evidence, preliminary injunctive relief is warranted.

### 3.     Plaintiffs Are Likely To Succeed On Their Claim Based On Failure To Provide Reasonable Accommodations.

Under the FHA, discrimination also includes "a refusal to make reasonable accommodations . . . when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. 3604(f)(3).  Once a plaintiff establishes that a requested accommodation is necessary, the burden shifts to the defendant to show that the request is unreasonable.  Lapid-Laurel, 284 F.3d at 457.

Plaintiffs requested reasonable accommodations by submitting the Application, which the City effectively denied.  See Herten Cert. ¶ 2, Exh. L.  The City's refusal to grant the requested accommodation has resulted in the continued preclusion of congregate care facilities in twenty-three residential districts in the City (other than the Actor's Home) —a clear violation of the FHA.

In fact, Plaintiffs offered to collaborate with the City to create a new, appropriate zoning category to accommodate the Facility, while generally respecting the same health, safety, and

---

[11] There was no "disparate treatment" claim at issue in Lapid-Laurel.  As noted above a prima facie disparate treatment" claim can be established by a facially discriminatory ordinance.

welfare requirements the RIM district uses for similar facilities.   In response, City officials admonished Plaintiffs to seek a use variance.   Thus, instead of taking steps to relieve the Code's burdens, the City imposed more onerous requirements on Plaintiffs.  See Herten Cert. ¶ 6.

Having been presented with a request for a reasonable accommodation, the burden shifts to Defendants to show why Plaintiffs' request is unreasonable.  901 Ernston Rd., LLC v. Borough of Sayreville Zoning Bd. of Adjustment, 2018 WL 2176175, at *8 (D.N.J. May 11, 2018). Defendants have not met their burden.  Instead, they argue that the Application did not constitute a request for a reasonable accommodation.  As set forth above, however, a plaintiff may satisfy its burden of requesting a reasonable accommodation by affording a municipality any "opportunity to make a final decision. . . ." Bryant Woods, 124 F.3d at 602.  Indeed, the "fact that an alternative municipal remedy is available is simply not relevant."  Id.

Rather than grant the requested accommodation, Defendants persisted with their "strict adherence to a rule which has the effect of precluding handicapped individuals from residing in the residence of their choice."  Hovsons, 89 F.3d at 1106 (citations omitted).  This is "precisely the type of conduct which the [FHA] sought to overcome."  Id.  Accordingly, Plaintiffs are likely to succeed on their claim that Defendants failed to provide reasonable accommodations.[12]

### 4.   Plaintiffs Have Standing To Pursue Their Claim That Defendants Violated The ADA.

Defendants rely on Kessler Inst. For Rehab. Inc. v. Mayor and Council of Borough of Essex Fells, 876 F. Supp. 641 (D.N.J. 1995) for the proposition that Plaintiffs lack standing to bring claims arising under the ADA.  Defendants' reliance on Kessler, however, is misplaced.  The Kessler decision has been widely criticized and is contravened by the plain terms of the ADA and

---

[12] As set forth above, Plaintiffs also are likely to prevail because (i) further efforts to obtain a reasonable accommodation would be futile and (ii) the onerous procedural process imposed on Plaintiffs also constitutes a denial of reasonable accommodations under the FHA.

its implementing regulations.  See e.g., Liberty Res., Inc. v. Se. Pa. Transp. Auth., 155 F. Supp.

2d 242, 250 (E.D. Pa. 2001), j'ment vacated and appeal dismissed 54 F. App'x 769 (3d Cir. 2002)

(the "reasoning in Kessler is flawed"); Oak Ridge, 896 F. Supp. at 871–72 (same).

Contrary to the Kessler decision, ADA standing must be construed as broadly as possible,

consistent with other anti-discrimination statutes, including the FHA.  Id. at 872.  Because

"Plaintiffs have standing . . . to assert their claims under the FHA, they also have standing to pursue

their claims under the Rehabilitation Act and the ADA."  McKivitz, 769 F. Supp. 2d at 818.

Accordingly, Defendants' challenge to Plaintiffs' standing is without merit.[13]

### 5.      Plaintiffs Are Likely To Prevail On Their RLUIPA Claim.

Defendants argue that Plaintiffs cannot state a claim under the RLUIPA because Plaintiffs'

proposed use of the Facility is not for purely religious purposes.  That argument lacks merit.  The

RLUIPA requires a showing that the Code imposes a substantial burden on a person's religious

exercise.  In that regard, the RLUIPA prohibits ordinances which, even if facially neutral,

nonetheless impose a substantial burden on religious exercise.  Freedom Baptist Church of De.

Cty. V. Twp. of Middletown, 204 F. Supp. 2d 857, 868-69 (E.D. Pa. 2002).  Here, the Code places

as substantial burden on the Doe Plaintiffs, elderly Orthodox Jewish residents of Englewood.

Plaintiffs, acting on behalf of those individuals, have demonstrated that the City's land use

regulations confine uses like the Facility to the RIM district, substantially burdening the exercise

of Orthodox Judaism in the City.  Plaintiffs have established (and Defendants have not refuted)

---

[13] Defendants also rely on Kessler to argue that the John and Jane Doe Plaintiffs lack standing under the ADA because zoning is not a "public service."  See Opposition Br., p. 28. Respectfully, the Kessler court also erred in its analysis of what constitutes a "public service." Indeed, the majority of courts to address the issue have determined that zoning constitutes a "service" covered by the ADA.  See e.g., Bay Area Addiction Research v. City of Antioch, 179 F.3d 725, 730–32 (9th Cir.1999); Innovative Health Sys., Inc. v. City of White Plains, 117 F.3d 37, 48–49 (2d Cir.1997).  Because zoning constitutes a "public service" under the ADA, the John and Jane Doe Plaintiffs have standing to pursue their claims.

that the Code imposes substantial burdens on Orthodox Jews, including by preventing travel between residential areas and assisted living facilities.  <u>See</u> Herten Cert. ¶ 2, Exh. K, Tr. at 51-52, 57, and 72-74.  Those substantial burdens that have not been refuted.

The existence of a substantial burden on religious practice shifts the legal burden to Defendants to demonstrate the Code furthers a compelling government interest by the least restrictive means possible.  <u>See</u> 42 U.S.C. 2000cc-2(b).  Defendants have not even attempted to meet that burden.  Plaintiffs are therefore likely to succeed on the merits of their RLUIPA claim.

## 6. <u>Plaintiffs Are Likely To Prevail on Their Claim That Defendants Violated The Equal Protection Clause.</u>

As noted above, Defendants make no effort to justify their different treatment of disabled and non-disabled individuals in the Code.  Instead, Defendants argue that they need not justify the Code because "Plaintiffs do not give a single example of a 'similarly situated' entity that was treated differently."  See Opp. Br., p. 30.  That argument is nonsensical.  The factual record makes clear that tens of thousands of residents are free to live in any of the City's twenty-four districts.  Handicapped individuals, in contrast, are confined to just one: the "light industrial" RIM district.

Handicapped individuals are entitled to the same rights and privileges as non-handicapped individuals under the law.  Because Defendants have satisfied their burden of justifying their discrimination, Plaintiffs are likely to prevail on their equal protection claim.

## B. <u>Plaintiffs Have Demonstrated That They Will Suffer Irreparable Harm In The Absence Of Preliminary Injunctive Relief.</u>

Defendants irreparable harm argument focuses entirely on the fact that Plaintiffs may only lose future revenue and can, in any event, seek redress before the Board of Adjustment.  The FHA, however, provides that upon the showing of a violation the Court may grant as relief, "any permanent or temporary injunction . . . or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate)."  42

U.S.C. 3612(c)(1).  In that regard, the City's enforcement of the Code's discriminatory provisions "is presumed to be irreparable harm."  See Moorestown, 996 F. Supp. 409, 438–39 (D.N.J. 1998); see also Raab Family P'ship v. Magnolia, 2009 WL 361135, at *9 (D.N.J. Feb. 13, 2009)

Defendants do not dispute the presumption of irreparable harm exists.  Instead, Defendants simply reiterate that Plaintiffs' claims are without merit.  See Opp. Br., pp. 32-33.  As discussed at length above, that argument fails as a matter of law.  Irreparable harm, therefore, is presumed.[14]

## C.     The Balance of Hardships Ways In Favor Of A Preliminary Injunction.

Defendants mischaracterize the potential harm of a preliminary injunction.  Contrary to Defendants' dramatization, Plaintiffs have not sought immunity from all zoning laws.  See Opp. Br., p. 33.  Rather, the requested relief -- enjoining enforcement of the discriminatory Code provisions -- is narrowly tailored to address Defendants' unlawful discrimination.  Specifically, the injunctive relief sought will permit the non-discriminatory use of the Property for the development of a 150 unit assisted living/memory facility in the R-AAA district.  That use will be in the manner previously proposed to Englewood, which already has been determined to be a necessary and appropriate use by the Department of Health, as evidenced by its Certificate of Need.

The narrowly tailored request for relief specifically does not preclude public comment or review.  Plaintiffs acknowledge that they must prosecute a site plan application before the Planning Board of the City of Englewood, at which time the usual and customary detailed review is

---

[14] Defendants also disingenuously argue that there is no irreparable harm because Plaintiffs were able to obtain an extension of the August 9, 2019 deadline to close on their purchase contract. Defendants are well-aware that Plaintiffs only were able to negotiate a 60-day extension of that deadline as part of an agreement reached between the parties and the Court's July 23, 2019 Order [Docket No. 14.].  Putting aside Defendants' bad faith attempt to utilize that agreement as a sword in this litigation, the fact remains that if an injunction is not granted by the adjourned date, Plaintiffs will lose their equitable interest in a portion of the Property, thwarting development of the Facility completely.  See Raab Family P'ship, supra.

undertaken by the Board and its professionals and conducted at public hearings after due notice. At that time, the public may comment, present evidence and cross examine witnesses.

Accordingly, the relief proposed by Plaintiffs is limited to a preliminary injunction as to the use, scope and size of the building as evidenced by the Certificate of Need and it simply allows Plaintiff to be treated equally and in a non-discriminatory manner before the Planning Board, as any other landowner similarly situated with an allowed use and structure.

Defendants will suffer no harm if they are not permitted to discriminate.   Moreover, Defendants have not offered any legitimate justification for the discriminatory Code.   A balancing of the hardships, therefore, weighs substantially in favor of granting preliminary injunctive relief, especially because the public will have an opportunity to comment and "speak".

### D.  The Public Interest Strongly Favors The Issuance Of Injunctive Relief.

Defendants argue that the public favors denial of Plaintiffs' motion because the "people have already made [their decision on these issues] at the polls." See Opp. Br., pp. 34-35.   The public, however, has no right to allow or interest in allowing discrimination to take place.

In the FHA, Congress declared the policy of the United States to provide . . . for fair housing throughout the United States." 42 U.S.C. 3601.   Thus, courts have "emphatically declared the public interest is served by effective enforcement of the FHA." Diamond House of SE Idaho, LLC v. City of Ammon, 381 F. Supp. 3d 1262, 1279 (D. Idaho 2019) (citations omitted).   This is especially true given the FHA's "broad construction and remedial scope." ReMed Recovery Care Ctrs. v. Twp. of Willistown, 36 F. Supp. 2d 676, 688 (E.D. Pa. 1999) (citations omitted).[15]

---

[15] Congress' expression of public policy in the statute may be relied on to define "public interest" for purposes of preliminary injunction analysis.   See Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 803 (3d Cir. 1989).

In addition, because the New Jersey Department of Health has certified that there is a need for an assisted living facility in the City, further delays in adjudicating the motion for a preliminary injunction disserve the public interest, which weighs in favor of granting preliminary injunctive relief and in allowing the matter to be heard by the City of Englewood Planning Board, on notice to the public.  Moorestown, 996 F. Supp. at 428.

### III.   DEFENDANTS' CROSS-MOTION MUST BE DENIED BECAUSE PLAINTIFFS HAVE STATED VIABLE CLAIMS FOR RELIEF.

The same standards govern motions made under Rules 12(b)(6) and 12(c).   Rinaldo v. Komar, 2007 WL 130796 at *6 (D.N.J. Jan 12, 2007) (citations omitted).  Thus, Defendants' cross-motion must be denied if Plaintiffs' allegations are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true, (even if doubtful in fact)."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (citations omitted).   Defendants' motion fails because, in addition to the claims discussed above on which Plaintiffs are likely to prevail, Plaintiffs' remaining claims are also sufficiently pled as required.[16]

### A.   Plaintiffs Have Stated Viable Claims For Violations of 42 U.S.C. 1983.

Plaintiffs have stated a substantive due process claim by alleging "the [City] deprived them of a protected property interest" in a manner that did "not comport with due process of law." Taylor, 983 F.2d at 1293.  Indeed, Plaintiffs allege throughout their Verified Complaint that the City has enacted and enforced the discriminatory Code but deprived Plaintiffs of any meaningful opportunity to challenge the Code before the Council.

Plaintiffs have also sufficiently alleged a substantive due process claim because they have alleged that the: (i) the City acted "irrational[ly] and arbitrary[ly]" in drafting the Code and denying

---

[16] Plaintiffs acknowledge, however, that their Ninth Claim should be dismissed without prejudice so that it can be re-filed in State Court.

the Application and (ii) the City acted for "reasons unrelated to land use planning." Cty. Concrete, 442 F.3d at 170.[17]  For example, Plaintiffs allege that the City has enacted and enforced the discriminatory Code without any legitimate justification.  See e.g., Verified Complaint, ¶ 255. Thus, Plaintiffs have stated a viable claim for violation of their substantive due process rights.

### B.  Plaintiffs Have Sufficiently Alleged Violations of State Law.

Plaintiffs have sufficiently alleged violations of the MLUL.  In their Seventh Claim, Plaintiffs allege, among other things, that Defendants "illegally zoned assisted living and memory care out of all residential districts . . . ."  See Verified Complaint, ¶¶ 234, 235.  Likewise, in their Eighth Claim, Plaintiffs allege, inter alia, the Council's actions, including its failure to act on Plaintiffs' Application, were "in direct contravention of the MLUL . . . ."  Id., ¶ 250.  Thus, Plaintiffs allege that Defendants acted in an "arbitrary, capricious, and unreasonable manner."  Id., Ad Damnum Clauses For Seventh and Eight Claims.   Both Claims sufficiently plead violations of the MLUL and, therefore, Defendants' motion should be denied.  See Lapid Ventures, 2011 WL 2429314, at *7 ("arbitrary, capricious, or unreasonable" zoning decisions violate the MLUL).

### C.  Plaintiffs Have Stated A Viable Claim Under 42 U.S.C. 1983 That Defendants Violated The Free Exercise Clause.

To state a viable claim for violation of the Free Exercise Clause, a plaintiff must allege that an ordinance either: (i) facially targets religious conduct; or (ii) its application substantially burdens religious practice.  See Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch, 510 F.3d 253, 277 (3d Cir. 2007).  Plaintiffs allege that the "enforcement of the Code . . . places an

---

[17] Defendants improperly rely on United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa., 316 F.3d 392, 400 (3d Cir.2003) and its progeny for the proposition that Plaintiffs must establish that Defendants' actions "shock the conscience" to prevail on their Section 1983 claims.  As the Third Circuit made clear in Cty Concrete, however, the United Artists standard applies only to executive action. 442 F.3d at 170.  It does not apply to the adoption of the Code, which is legislative in nature. Id. at 170.  United Artists and its progeny are therefore inapplicable.

unreasonable burden upon Orthodox Jewish individuals" by, for example, restricting their ability to travel to or from an assisted living or memory care home on Shabbat."   See e.g., Verified Complaint, ¶ 15.[18]   Accepting that allegation as true, enforcement of the Code constitutes a violation of the Free Exercise Clause unless enforcement is "narrowly tailored to advance a compelling government interest."   King v. Christie, 981 F. Supp. 2d 296, 331 (D.N.J. 2013), aff'd sub nom. 767 F.3d 216 (3d Cir. 2014) (citations omitted).   The City has not alleged any "compelling" interest.   Regardless, Defendants' attempt to argue the merits of this claim is entirely improper.   Plaintiffs have sufficiently stated a claim and the cross-motion should be denied.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request this Court preliminarily enjoin Defendants' enforcement of the unlawful and discriminatory Code provisions.   Moreover, because Plaintiffs have pled viable causes of action, many of which are further substantiated by the undisputed factual record, Defendants' motion for judgment on the pleadings must be denied.

Respectfully submitted,

COLE SCHOTZ P.C.
Attorneys for Plaintiffs

By: _/s/ Warren A Usatine_
Warren A. Usatine

DATED:  September 6, 2019

---

[18] Even if the Code were neutrally applied, the City must still establish a rational basis for the Code, which it has not done.

30