

MARTIN W. KAFAFIAN (NJ, NY, DC BARS)
ADOLPH A. ROMEI (NJ, NY BARS)
JOHN J. LAMB (NJ BAR)
ANTIMO A. DEL VECCHIO (NJ, NY, DC BARS)
ROBERT A. BLASS (NJ, NY BARS)
IRA J. KALTMAN (NJ, NY BARS)
ARTHUR N. CHAGARIS (NJ BAR)
STEVEN A. WEISFELD (NJ, NY BARS)
IRA E. WEINER (NJ BAR)
DANA B. COBB (NJ, NY BARS)
RENATA A. HELSTOSKI (NJ, NY BARS)
MICHAEL STERNLIEB (NJ BAR)
DANIELE CERVINO (NJ, NY BARS)
ARTHUR M. NEISS (NJ, NY BARS)

OF COUNSEL
JAMES R. BEATTIE (NJ BAR)
ROGER W. BRESLIN, JR. (NJ BAR)
THOMAS W. DUNN (NJ BAR)
JOSEPH A. RIZZI (NJ BAR)
PATRICK J. MONAGHAN, JR. (NJ, NY BARS)
MARY ELLEN B. OFFER (NJ, NY BARS)
EMERY C. DUELL (NJ, NY BARS)

RALPH J. PADOVANO (1935-2016)

**BEATTIE PADOVANO** LLC

COUNSELLORS AT LAW
50 CHESTNUT RIDGE ROAD, SUITE 208
MONTVALE, NEW JERSEY 07645-1845

(201) 573-1810

www.beattielaw.com

NEW YORK OFFICE:
99 MAIN STREET, SUITE 319
NYACK, NEW YORK 10960
(845) 512-8584

COUNSEL TO THE FIRM
BRENDA J. STEWART (NJ BAR)
JAMES V. ZARRILLO (NJ, NY BARS)
JEANETTE A. ODYNSKI (NJ, NY BARS)
DANIEL L. STEINHAGEN (NJ, NY BARS)
CRISTIN M. KEEGAN (NJ, NY BARS)

MARTIN R. KAFAFIAN (NJ, NY BARS)
MARIYA GONOR (NJ, NY BARS)
JOHN M. BOEHLER (NJ BAR)
JOHN B. STEPHENSON (NJ BAR)
IAN M. EASTWICK (NJ, NY BARS)
KIMBERLEY A. BRUNNER (NJ BAR)

FAX: (201) 573-9736
FAX: (201) 573-9369

Reply to New Jersey Office
Writer's Direct Access
Email: jlamb@beattielaw.com
Direct Dial: (201) 799-2173

September 19, 2019

OUR FILE NO. 190533-1

Hon. Brian R. Martinotti, U.S.D.J.
United States District Court - District of New Jersey
Martin Luther King Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

Re: *431 E. Palisade Avenue Real Estate, LLC, et al. v. City of Englewood, et al.*,
Case No. 2:19-cv-14515-BRM-JAD

Dear Judge Martinotti:

As you know, we represent the Concerned Citizens of Englewood, Inc., a non-profit corporation of the State of New Jersey (hereinafter the "Concerned Citizens"). The Court has granted the Concerned Citizens leave to appear as *amicus curiae* and also granted us the right to argue at the hearing before Your Honor. You have asked that participants provide a post-hearing letter as to any additional comments. This will provide the argument of the Concerned Citizens.

A major issue is whether Plaintiff's claim is ripe and whether Plaintiff should first file an application before the Board of Adjustment. We obviously believe an application to the Board of Adjustment is the proper procedure.

First, we note that *if* the City's Ordinance is facially *per se* invalid under the FHA and other statutes, then as noted by the City's attorney during oral argument, virtually every zoning ordinance in almost every municipality in New Jersey (and every other state, for that matter) would likewise be invalid. This is because *no* municipality allows assisted living or senior housing in every zoning district, and in particular, every zone that allows residential use. Take any town in Bergen County and see where such uses are permitted. No municipality allows this in every zone or most zones. The central question becomes what language in the R-AAA zone only makes it "facially" invalid? Respectfully, there is nothing.

The fact is that the City does allow the assisted living use in at least one large zoning district. This is because that is a good place for that use, located close to services and businesses

*Forty-Nine Years of Service*

Hon. Brian R. Martinotti, U.S.D.J.
United States District Court - District of New Jersey
September 19, 2019
Page 2

useful to senior and/or those needing assistance. That zone was established relatively recently – in 2015. That zone is in close proximity to many residential zones and homes and retail stores, to a far greater extent than a facility located in the R-AAA zone on the easterly most border of the City. Also, there are other multi-family dwellings in that zone as well, not limited to assisted living homes.

Moreover, the fact that one property owner alleges it should be allowed, not everywhere in the R-AAA zone but on one single piece of property, shows the fallacy of the argument. As we noted during oral argument, there are nearby properties that exceed five acres in size. What about those parcels? Plaintiff would seek a remedy that allows the senior housing use on its property only. That is spot zoning, which is antithetical to proper zoning procedures that rely on a careful review of the Master Plan. There are also no limitations on such housing proposed by Plaintiff. That is something that arises from the zoning process. It may be dangerous to have such a facility so close to a school. That needs to be reviewed.

Moreover, Plaintiff said nothing in its reply brief or during oral argument about all the other types of housing for seniors, handicapped and those needing assistance, and which were listed in the Scott Certification. They were listed in the Brief of *Amicus Curiae* as well. And the recitations of those facts appeared to be just a preliminary review by the City to provide some, but not all, relevant facts that may inform whether Plaintiff ultimately succeeds on the merits. These smaller assisted living facilities are spread throughout the City and throughout its residential districts.

Suppose the City in good faith after a careful review of its Planning Board thought that it had sufficient "fair housing" after the 2015 Housing and Fair Share Plan and Master Plan review, allowing the use in the RIM District? The facts show the City Planning Board identified the need to add assisted living in at least the RIM zone, despite all the other assisted living facilities, large or small, and the City, consistent with its Planning Board's recommendations, immediately passed an ordinance allowing such a use. Moreover, an assisted living facility was developed shortly thereafter in the RIM zone (*i.e.*, the Bristal House). The zoning process worked.

In this case, Plaintiff's Complaint downplayed or did not fully specify or list the extent of assisted living and senior housing in the City. These facts critically show that there is a serious question as to whether Plaintiff will succeed on the merits, as required for a preliminary injunction. The allegations or omissions in Plaintiff's Complaint include the following:

- Plaintiff did not discuss that part of the RIM zone is for "medical" use (i.e., RI**M** zone), so Defendant City thought that was an appropriate place to locate a large assisted living facility (*i.e.*, a facility of 300+ beds). (Plaintiff's principal was a resident of the City but never complained about the zoning in that process.)

- Plaintiff claimed the assisted living in the RIM zone was not a "residential zone" in its Complaint. But that zone does allow residential uses, as noted in the Brief of *Amicus Curiae*.

Hon. Brian R. Martinotti, U.S.D.J.
United States District Court - District of New Jersey
September 19, 2019
Page 3

- Plaintiff made no mention of the fact that there are a multitude of other assisted living residential uses. *See* Scott Certification and Brief of *Amicus Curiae*.

- Plaintiff, to downplay the substantial amount of assisted living beds in the City, relegated the Actors Fund assisted living facility to a footnote, even though it is also in a residential zone.

- Plaintiff did not even mention the Inglemoor Center facility with 88 beds (*see* Antonelli Certification attaching Department of Health information).

Plaintiff offered little (if any) opposition to the facts submitted by the City. Plaintiff did, however, cite *Montana Fair Housing, Inc. v. City of Bozeman*, 854 F.Supp.2d 832 (2012). It was not cited in Plaintiff's moving papers but only in the reply brief, at which time the Defendants and *Amicus Curiae* were unable to brief it or otherwise respond, except during oral argument.

The *Montana Fair Housing* case rejected the defense of a town to a *per se* ordinance challenge, and held that the subject ordinance was facially invalid. It was decided, however, *on a motion for partial summary judgment*, which was filed after two years of litigation and full discovery. *See generally docket of Montana Fair Housing, Inc. v. City of Bozeman, et al.*, Case No. 2:09-cv-0090 (United States District Court, District of Montana), ECF ##14 (Joint Discovery Plan); 77 (Amended Scheduling Order); 92 (Motion to Partial Summary Judgment); 137 (Order granting partial summary judgment). Critically, the facts in *Montana Fair Housing, Inc.* were much more developed than they are in this case.

Here, Plaintiffs seek the same relief but on an application for preliminary injunctive relief, based on empty allegations made without granting the City an opportunity to engage in discovery or develop a record in defense. This distinction is critical. Plaintiffs fail to satisfy the heavy burden attendant to this extraordinary remedy.

Also, the legal framework relied upon by the Montana District Court cuts against granting Plaintiff's application for a preliminary injunction. The *Montana Fair Housing* court held that "a facially discriminatory policy is one which on its face applies less favorably to a protected group." *Id.* at 837, *citing Community House, Inc. v. City of Boise*, 490 F.3d 1041, 1048 (9th Cir. 2007). The exception is where the "discrimination [is] objectively legitimate." It also allowed defendant to show that the restriction benefits the protected class or that it responds to a legitimate safety concern raised by the individuals affected.

Here, single family housing dwellings were not permitted as principal uses in every district in the City. In this case, there are limitations on community residential facilities or cooperative housing districts in Englewood, so they are also not permitted in "all districts" like they were in *Montana* (which facilitated the discrimination). Here, the City has indeed refuted the charge that uses are facially discriminatory. As the City argued, the limitations apply to all types of housing—assisted living and multi-family housing. Moreover, even if they were

3561517_2\190533

Hon. Brian R. Martinotti, U.S.D.J.
United States District Court - District of New Jersey
September 19, 2019
Page 4

facially discriminatory, there still is a defense under the applicable balancing test. As set forth in *Montana*:

> Bozeman justifies the limitations in the Authorized Uses Section as necessary "to preserve the residential character of each of the residential districts and to provide that the uses in each district are compatible." *See Montana Fair Housing, Inc.*, 854 F.Supp.2d at 839.

The Court did conclude that "*Bozeman* has failed to show that its discriminatory policy is objectively legitimate because the preservation of a neighborhood's residential character," in that case, was not a proper justification. The Court noted that the "residential character neither benefits the disabled nor responds to a legitimate, non-stereotypical safety concern." Here, the examples of all the group homes in residential zones distinguishes the *Bozeman* case. Moreover, that should be contrasted here where the City submitted the Three Mayor Certification which specifically notes that the City has carefully reviewed this particular zone, the R-AAA zone, to up-zone the lots and has this zoning to increase open space and decrease impervious coverage (which helps minimize the flooding and stormwater management issues where the zone is located primarily on the slopes of the Palisades Cliffs), and preserves the character of this historic district. And that zoning scheme was all done before the adoption of the federal statutes alleged to be violated. Is a scheme that minimizes flooding by up-zoning the property and decreasing impervious coverage a safety issue? We think the answer is clear. The City has a huge and well-documented flooding problem.

The Court therefore does not have sufficient reason to invalidate this R-AAA zoning on its face. There is a substantial factual defense. That is the case even if the burden of proof is shifted to the City (assuming arguendo there was even a bona fide per se challenge). There are numerous reasons as stated. Moreover, it has been a theme that is prevalent for more than three decades, long before this case was filed. These facts are totally different than the generalized defense offered in *Montana*.

As Defendant City has already briefed this issue (as also noted by Mr. Antonelli during oral argument), we further refer the Court to Defendant City's Brief, page 15, Section B(1) entitled "The Zoning Code is Not Discriminatory on its Face and Does Not Create a Case of Disparate Treatment Against the City's Elderly and Handicapped Citizens." The City's focus was on the explicit terms of the legislation, and the need to demonstrate that some "discriminatory purpose was a motivating factor behind the challenged action." *Community Services, Inc. v. Wind Gap Mun. Auth.*, 421 F 3d 170, 177 (3d Cir. 2005); emphasis supplied. Simply put, the record produced by Plaintiff fails to establish a *prima facie* case of "discriminatory intent." Rather, the facts indicate the opposite. And as noted by Your Honor, who was quite familiar with the City of Englewood's affordable housing process, the City has been historically outstanding when it comes to compliance with any such housing obligations.

Hon. Brian R. Martinotti, U.S.D.J.
United States District Court - District of New Jersey
September 19, 2019
Page 5

As stated during oral argument, the two major cases cited by Plaintiff were the *Moorestown* case and the *Hovsons* case. However, as we specifically noted in the *Moorestown* case, the municipality placed the zone allowing assisted living facilities on the outskirts of the very large municipality (about 15 square miles in size), compared to the City of Englewood (approximately five square miles). We noted that while Plaintiff cited that case in its moving brief and during oral argument, it ignored the simple fact that the subject property is literally on the outskirts of the City of Englewood, to a greater extent than frankly the RIM zoning district which Plaintiff criticizes. Plaintiff had attacked the zoning in the *Moorestown* case but proposes a re-zoning in the outskirts of Englewood that is worse. In essence, according to Plaintiff, it is okay to have assisted living on the borders of a municipality when it comes to Plaintiff's property, but it is not okay to be on the outskirts in the *Moorestown* case.

As was also argued, in both the *Moorestown* and *Hovsons* cases, an administrative record was established through a land use board proceeding, upon notice to the public and adjacent property owners. None of that occurred here. Moreover, not only was there a variance applied for, but there was also an appeal of the denial of the developer's applications to the Law Division in both those cases. That also is a situation that has not occurred here. Therefore, while the Plaintiff's may have a claim in the future depending upon what happens in the Board of Adjustment, their claim is premature. Respectfully, it is not ripe.

We cannot emphasize enough that there is no proof of a "bad motive" against the Defendant City. There are facts that show that the City of Englewood has indeed provided more than its "fair share" of the assisted living and senior housing and housing for the disabled, when compared to surrounding municipalities. *See* Certification of Antonelli as to number of beds in the City. There are simply a myriad of group homes and smaller facilities that provide for such housing, which was also not contested or disputed by Plaintiff. But there has not yet been an exhaustive study of the assisted living and disabled housing and senior housing in the City. Certainly, Plaintiff in its Complaint missed or omitted a great deal of the facilities, and had no response to the substantial factual information provided by Defendant City.

The allegation that members of the Orthodox Jewish community will walk to Plaintiff's proposed facility ignores that the surrounding properties are large-lot properties (*i.e.*, 2+ lots) and the subject property and area is on the sloped area of Palisades Avenue, a heavily trafficked thoroughfare. How many visitors to this facility, based upon its location, are really going to walk to it based upon the area? Plaintiff is simply employing the latest tactic from a developer's playbook: adding a use that implicates a protected class in an application directly unrelated to that use (*i.e.*, there is currently an application pending in the City of Teaneck where the applicant has proposed an Orthodox meeting-sanctuary space attached to its regular for-profit health club).

It should also be made clear that this is a for-profit entity. At the hearing on May 7, 2019 before the Council, some members of the public were able to speak, and one member of the public even emphasized that fact. (The Plaintiff in the *Montana v. Bozeman* case was the Montana Fair Housing, Inc., not a private developer.)

Hon. Brian R. Martinotti, U.S.D.J.
United States District Court - District of New Jersey
September 19, 2019
Page 6

  Finally, we will not further discuss the issue of "futility." It seems clear, based upon the wealth of uncontroverted information, that making application to the Board of Adjustment could not reasonably be concluded as "futile" based upon the record and Certifications filed by Defendant City. The Board of Adjustment could review this on an expedited basis. The Plaintiff still has the opportunity to ask the Planning Board to review the Master Plan on an expedited basis.

* * *

  The Concerned Citizens, as noted, advocates for a Zoning Board of Adjustment process that vets the application through professionals, provides notice to all other interested parties, including indispensable parties, and including but not limited to, the School across the street, and the Borough of Englewood Cliffs on its border. The detriment to the public if a judicial re-zoning is determined seems clear. The Plaintiff does not prove there is no substantial detriment to the public. By definition, Plaintiff is proposing a substantial public detriment by avoiding the zoning process and Master Plan review under the facts of this case.

  We thank Your Honor for your consideration. Please do not hesitate to contact us if you have any questions with regard to the above.

Respectfully yours,

John J. Lamb

JJL:lb
cc: Concerned Citizens of Englewood, Inc.
   Attn: Trustees
  Antonelli Kantor, PC (Counsel for the City of Englewood)
   Attn: Daniel Antonelli, Esq.
   Attn: Vivian Lekkas, Esq.
  Cole Schotz P.C. (Counsel for Plaintiff)
   Attn: Warren A. Usatine, Esq.
  Huntington Bailey LLP (General Counsel for City of Englewood)
   Attn: William J. Bailey, Esq.