**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey  07602-0800
201-489-3000
201-489-1536  Facsimile
Attorneys for Plaintiffs, 431 E Palisade Avenue Real Estate, LLC
and 7 North Woodland Street, LLC

| | |
|---|---|
| 431 E PALISADE AVENUE REAL ESTATE, LLC and 7 NORTH WOODLAND STREET, LLC, on behalf of themselves and prospective residents, JOHN and JANE DOES 1-10,<br><br>                  Plaintiffs,<br><br>   v.<br><br>CITY OF ENGLEWOOD and CITY COUNCIL OF ENGLEWOOD,<br><br>                  Defendants. | UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF NEW JERSEY<br>Civil Action No. 2:19-cv-14515 (BRM) (JAD)<br><br>Civil Action |

**SUPPLEMENTAL SUBMISSION: (i) IN FURTHER SUPPORT OF PLAINTIFFS' APPLICATION TO PRELIMINARY ENJOIN THE CITY OF ENGLEWOOD AND THE CITY COUNCIL OF ENGLEWOOD FROM ENFORCING THE DISCRIMINATORY ZONING CODE; AND (ii) IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)**

On the Brief:
    Warren A. Usatine
    Michael R. Yellin

**SUPPLEMENTAL SUBMISSION**[1]

On June 13, 2019, the New Jersey Department of Health issued a Certificate of Need authorizing the development of a 150-bed assisted living facility (the "**Facility**") in the City's R-AAA district.  See Herten Cert., Exh. A.  The Certificate of Need confirms that the proposed Facility is "necessary to provide required health care in the area to be served" **and** can be "economically accomplished and maintained."  Id., p. 1.  Once developed, the Facility will enable handicapped citizens (as defined in the FHA) who wish to reside in the R-AAA zone to do so.

The Code prohibits the development of assisted living facilities in the R-AAA district, thus discriminating against the handicapped in violation of the FHA.  This Court should enjoin enforcement of any Code provisions that would render it impermissible and/or impracticable to develop the Facility consistently with the Department of Health's requirement that the Facility be economically constructed and operated.  Reserving for the City the ability to *de facto* continue its discriminatory practices by not authorizing the development of a facility with sufficient beds so as to make the project economically feasible would render a finding of facial discrimination pyrrhic in nature.  Enjoining the enforcement of the Code's facial discrimination and requiring the City to allow the Facility in its contemplated scale achieves the FHA's dual goals of both remedying existing discrimination and "preventing future violations."  MHANY Mgmt. Inc. v. Inc. Vill. of Garden City, 985 F. Supp. 2d 390, 429 (E.D.N.Y. 2013), aff'd sub nom., 819 F.3d 581 (2d Cir. 2016).

**The Facility**

Under New Jersey law, assisted living facilities provide "a coordinated array of supportive personal and health services, available 24 hours per day, to residents who have been assessed to need these services including persons who require nursing home level of care."  N.J.AC. 8:36-1.3.  A

---

[1] Plaintiffs' prior submissions are incorporated herein by reference.  Capitalized terms used but not defined herein have the meanings ascribed to them in the Verified Complaint (Dkt. No. 1).

47967/0023-17843740v3

typical resident "needs assistance with two or more basic daily activities, such as, toileting, bathing, or dressing . . . ." Assisted Living Assocs. of Moorestown, L.L.C. v. Moorestown Twp., 996 F. Supp. 409, 416 (D.N.J. 1998).

New Jersey law also requires that a Certificate of Need be issued before any "health care facility [is] constructed or expanded . . . ." N.J.S.A. 26:2H-7.  A Certificate of Need will not be issued unless the proposed facility is "necessary to provide required health care" in the area **and** "can be financially accomplished and maintained . . . ." N.J.A.C. 8:33-1.2(c).[2]  As noted above, the Certificate of Need issued to Plaintiffs confirms that the Facility meets both criteria. Herten Cert., Exh. A, p. 1. Stated simply, the Facility can and will provide much needed residences to handicapped individuals requiring congregate care.

By Defendants' own admission, the Facility, as proposed, can be developed as of right in the City's RIM district, which is one of the twenty-four districts in the City that permit residential use. See Tr., 42:1-16.[3]  The Property, however, is in the R-AAA district. Like the City's other non-RIM residential districts, the R-AAA expressly precludes assisted living facilities. See Herten Cert., Exh. C ("**Code**"), §§ 250-59 to 250-78.1. The Code's disparate treatment of handicapped individuals in need of congregate care violates the FHA.

## The Fair Housing Act

The FHA prohibits the imposition of terms or conditions "which have the effect of excluding . . . congregate living arrangements for persons with handicaps" from select neighborhoods. Hovsons, Inc. v. Twp. of Brick, 89 F.3d 1096, 1106 (3d Cir. 1996) (citations omitted). A municipality violates the FHA if, among other things, it enacts zoning ordinances that are facially discriminatory against

---

[2] As set forth below, New Jersey's description of the typical assisted living resident is in accord with the FHA's definition of a "handicapped" person.

[3] "Tr." references are to the transcript of the September 13, 2019 hearing before the Court.

2

(*i.e.* provide "disparate treatment" to) the handicapped. Cmty. Servs., Inc. v. Wind Gap Mun. Auth, 421 F.3d 170, 176 (3d Cir. 2005); see also Community House, Inc. v. City of Boise, 490 F.3d 1041, 1048 (9th Cir. 2007) (a zoning ordinance is considered "facially discriminatory" if the ordinance, on its face, "applies less favorably" to a person in a protected group).

A person is considered "handicapped" (and thus protected by the FHA) if he or she "has a physical or mental impairment which substantially limits one or more major life activities . . ." Ass'n for Adv. of the Mentally Handicapped, Inc. v. City of Elizabeth, 876 F. Supp. 614, 621 (D.N.J. 1994) (citations omitted). "[P]rospective residents of [an] assisted living facility," therefore, "are handicapped within the meaning of the FHA . . . .'" Id.

In assessing whether an ordinance is facially discriminatory against the handicapped, the motives of its drafters are irrelevant. City of Elizabeth, 876 F. Supp. at 620. Rather, "[t]he court must focus on the explicit terms of the ordinance." Id. Contrary to the Amicus' argument (see Tr., 9:3-19), it is also "irrelevant that [an ordinance] may incidentally catch within its net some unrelated groups of people without handicaps . . . ." Horizon House Developmental Servs., Inc. v. Twp. of Upper Southampton, 804 F. Supp. 683, 694 (E.D. Pa. 1992), aff'd, 995 F.2d 217 (3d Cir. 1993).

"Where a plaintiff establishes that a statute is facially discriminatory, the burden shifts to the government to justify the disparate treatment." Blake Gardens, LLC v. New Jersey, 309 F. Supp. 3d 240, 249 (D.N.J. 2018) (citations omitted). Here, the Code is facially discriminatory, and Defendants have put forward **no** justification for their discrimination.[4]

---

[4] As set forth in Plaintiffs' prior submissions, Defendants have also violated the FHA because the Code has a disparate impact on protected classes of individuals and because the City failed to provide Plaintiffs with reasonable accommodations from the Code.

### The Facially Discriminatory Zoning Code

The Code is facially discriminatory because it "applies less favorably" to handicapped individuals than to non-handicapped individuals. City of Boise, 490 F.3d at 1048. Specifically, the City has twenty-four zoning districts that allow for residential housing. See Scott Decl., ¶ 7. The Code defines eight of those districts, including the R-AAA, as "one-family residence districts." See Code, § 250-59(A). Pursuant to the Code, "[w]ithin a one-family residence district, no land or building shall be used, nor shall any building be constructed, altered or designed to be used, for any purposes other than" for "one-family dwellings" and other related uses. Id., § 250-59(B). Assisted living facilities are not permitted. Id. In fact, the RIM district is the sole "residential" district that permits assisted-living facilities. Id., §§ 250-59 to 250-78.1.

The City's decision to confine the handicapped to the RIM district is facially discriminatory, as it treats such individuals differently from non-handicapped individuals, who are free to live in all twenty-four residential districts. Mont. Fair House, Inc. v. City of Bozeman, 854 F. Supp. 2d 832, 837 (D. Mont. 2012). This is a quintessential case of disparate treatment.

Because the Code is facially discriminatory, the burden shifts to Defendants to justify their disparate treatment. City of Elizabeth, 876 F. Supp. at 620 (citations omitted). A justification must serve, "a legitimate, bona fide interest . . . and the defendant must show that no alternative course of action could be adopted that would enable that interest to be served with less discriminatory impact." Id. Defendants have articulated no such interest or alternative. See Reply Br., pp. 19-20. Because Defendants have not met their burden, Plaintiffs have established a violation of the FHA. Resident Advisory Bd. v. Rizzo, 564 F.2d 126, 149 (3d Cir.1977), cert. denied, 435 U.S. 908 (1978).

### The Court Should Preliminarily Enjoin Enforcement of the Code

The FHA provides this Court "the power it needs to fashion affirmative equitable relief calculated to eliminate as far as possible the discriminatory effects of violation of

4

the Fair Housing Act." Arc of New Jersey, Inc. v. N.J., 950 F. Supp. 637, 646 (D.N.J. 1996)(c)(1). It may not be enough, for example, if "an injunction merely prohibits what is already prohibited [by law] . . . ." MHANY Mgmt. Inc., 985 F. Supp. at 429 (E.D.N.Y. 2013). Rather, the "Court must craft injunctive relief with a view toward the [FHA's] goals of preventing future violations and removing . . . past discrimination." Id.

Here, it is not enough to merely prohibit enforcement of the facially discriminatory Code so as to render it facially neutral (*i.e.*, "prohibit[] what is already prohibited [by law])". The Court must eliminate the existing discrimination **and** prevent future discrimination by not leaving the door open for the City to rely on facially neutral provisions in the Code in a manner that would render it impracticable for an assisted living facility to be developed.

The Certificate of Need reflects the Department of Health's determination that the Facility is economically viable as proposed. Defendants cannot be allowed to impose limitations on the Facility (such as restricting the number of beds) that would render it impracticable for the Facility to operate. This narrow relief is "limited strictly to preventing the enforcement of the [R-AAA] zoning ordinance[s] that purport to bar construction of [the Facility] . . . ." Hovsons, 89 F.3d at 1106 n.5. Plaintiffs "still must adhere to the size and capacity restrictions set forth in the State-issued certificate of need, building code requirements, [etc.]," all of which will be the subject of proceedings before the City planning board. Id. In summary, the requested relief is the only effective means of both remedying the City's overt discrimination and preventing future violations of the FHA.

                                    Respectfully submitted,

                                    COLE SCHOTZ P.C.

                                    By: */s/ Warren A Usatine*
                                           Warren A. Usatine

DATED: September 19, 2019

47967/0023-17843740v3