<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| 431 E PALISADE AVENUE REAL ESTATE, LLC, and 7 NORTH WOODLAND STREET, LLC, on behalf of themselves and prospective residents, JOHN and JANE DOES 1-10,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF ENGLEWOOD and CITY COUNCIL OF ENGLEWOOD,<br><br>Defendants. | Case No. 2:19-cv-14515 (BRM) (JSA)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is a motion (ECF No. 100) by the City of Englewood and City Council of Englewood (collectively, "Defendants") to dismiss Plaintiffs 431 E Palisade Avenue Real Estate, LLC and 7 North Woodland Street, LLC's (collectively, "Plaintiffs") Second Amended Complaint (ECF No. 94) pursuant to Federal Rule of Civil Procedure 12(b)(6). On January 30, 2023, Plaintiffs filed an Opposition (ECF No. 101), and Defendants filed a Reply (ECF No. 102). Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint is **GRANTED IN PART** and **DENIED IN PART**.

**I.    BACKGROUND**

For the purpose of Defendants' Motion to Dismiss, the Court accepts the factual allegations in the Second Amended Complaint as true and draws all inferences in the light most favorable to

Plaintiffs. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted).

Plaintiffs are limited liability companies located in Fort Lee, New Jersey that propose to establish an assisted-living facility in a residential zone in Englewood, New Jersey. (ECF No. 94 ¶¶ 13, 18–19.) Defendants are a municipal legislative body and a municipal corporation located in Englewood, New Jersey that are empowered to enact and enforce a zoning ordinance code. (*Id.* ¶¶ 15–16.) Under Defendants' zoning ordinance code, Plaintiffs' assisted-living facility cannot be built in a residential zone. (*Id.* ¶ 21.)

Plaintiffs propose to establish the assisted-living facility on a busy road in the place of abandoned and neglected units and in the style and landscaping of surrounding structures. (*Id.* ¶ 7.) If built, the assisted-living facility will be located on four parcels, three of which are under contract. (*Id.* ¶ 18.) However, if the necessary approvals are not obtained, there is a "risk that the seller will exercise its right to terminate agreement." (*Id.* ¶ 8.) From 2017 through 2019, Plaintiffs sought the necessary approvals through rezoning efforts, but Defendants encouraged the pursuit of variances with the Board of Adjustment, rather than changes to the zoning ordinance code. (*Id.* ¶¶ 99–136.) On June 28, 2019, Plaintiffs filed suit and submitted a petition for order to show cause why a preliminary injunction should not be issued against Defendants. (ECF Nos. 1–2.)

On behalf of themselves and prospective residents, Plaintiffs allege that Defendants' zoning ordinance code "impermissibly segregates assisted living facilities" by removing them from "residential zones" and placing them into "industrial zones." (ECF No. 94 ¶¶ 1, 21.) Specifically, Plaintiffs allege that Defendants' zoning ordinance code has "deprived elderly and handicapped residents of the right to live in residential neighborhoods while receiving assistance

2

with life's daily activities" and has "precluded members of [Englewood's] Orthodox Jewish community from visiting elderly family, friends, and congregants on Shabbat." (*Id.* ¶ 3.) According to Plaintiffs, Defendants' zoning ordinance code "particularly burdens [Englewood's] handicapped population that practices Orthodox Judaism" because Orthodox Jews are prohibited from driving or carrying during Shabbat, and the industrial neighborhoods are not within "walking distance" of other congregants or within the "religiously-designated geographic area" where the carrying prohibition is suspended. (*Id.* ¶¶ 46, 50, 52–54.) Plaintiffs seek injunctive relief, compensatory damages, punitive damages, and attorneys' fees and costs from Defendants for alleged violations of the Fair Housing Act ("FHA") (Count I), the Americans with Disabilities Act ("ADA") (Count II), the Rehabilitation Act ("RA") (Count III), and 42 U.S.C. § 1983 (the "Equal Protection Act") (Count IV). (*Id.* ¶ 10.)

On October 10, 2019, the Court granted Plaintiffs' application for a preliminary injunction against Defendants. (ECF No. 33.) The Court found Plaintiffs' claims were ripe for adjudication as facial challenges, and that the existence of other assisted-living facilities and the grant of other zoning variances were irrelevant to a determination of facial discrimination. (*Id.* at 19–20 & n.15.) Furthermore, the Court found Defendants' zoning ordinance code prohibited assisted-living facilities in single-family and multi-family residential districts, and that the allowance of assisted-living facilities in only one district limited the ability of the handicapped elderly to choose their places of residence. (*Id.* at 22–23.) The Court also found the exclusion of the handicapped elderly from all but one district was intentional, as the non-handicapped elderly were allowed to reside in a multi-family residential district. (*Id.* at 20.) Finally, the Court concluded the "creation of a health-care village" did not justify limiting the ability of the handicapped elderly to choose their places of residence, and that the "protection of the integrity of one-family residential districts" was neither

3

justified nor responsive to non-stereotypical concerns.[1] (*Id.* at 24–25.) On November 8, 2019, Defendants filed a notice of appeal. (ECF No. 39.)

On October 8, 2020, the Third Circuit reversed and remanded the Court's decision. *See 431 E. Palisade Ave. Real Estate, LLC v. City of Englewood*, 977 F.3d 277 (3d Cir. 2020). The Third Circuit held that the inquiry should have focused on the zoning ordinance governing residential districts, but that even the zoning ordinance governing industrial districts did not regulate assisted-living facilities in other areas. *Id*. at 285–86. Likewise, the Third Circuit held that the zoning ordinances governing residential and industrial districts did not discriminate on their face, and that "[t]here [was] no indication that disabled status . . . [was] the dispositive trait, singled out for different treatment." *Id.* at 286–87. The Third Circuit concluded that the arguments were "more in line with a disparate impact claim" than a disparate treatment claim. *Id.* at 288.

In April 2021, Plaintiffs intervened in a related state court action and commenced negotiations with Defendants, which culminated in a development offer from Defendants that Plaintiffs deemed unfeasible. (ECF No. 94 ¶¶ 137–150.) Shortly before the intervention, Defendants had filed a Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 67), which was administratively terminated while the case was stayed for the pendency of the state court action (ECF Nos. 72, 74). After the stay was lifted (ECF No. 91), Defendants filed this

---

[1] The City's Code contemplates that locating assisted-living centers in the RIM district would "foster the development of medical and health-care facilities that complement the existing medical and health care services located throughout the City," while siting senior housing in close proximity to future medical and health care services would "contribute to a sense of a health care village that offers care and living opportunities for older persons." Englewood Code § 250-72(A). Separately, the Zoning Ordinances state that the City defined the single-family districts in order "to preserve and protect the integrity of such districts for one-family residential purposes, to establish one-family residence districts that provide for a range of lot sizes, and to permit in such districts only such other uses as will be compatible with one-family residential use." *Id*. § 250-59(A).

4

Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 100). On January 30, 2023, Plaintiffs filed an Opposition (ECF No. 101), and Defendants filed a Reply (ECF No. 102).[2]

## II.   LEGAL STANDARD

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. However, the district court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* at 678 (citations omitted). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; the

---

[2] The parties filed their submissions simultaneously in accordance with the Court's order. (*See* ECF No. 91.)

complaint must include "factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss, the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to a motion for summary judgment]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). For example, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (citations omitted). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### III. Decision

Defendants argue that Plaintiffs' Second Amended Complaint fails to state a claim for relief. (ECF No. 100-1 at 6.) First, Defendants assert "the Doctrine of Ripeness prevents this Court's intervention, warranting dismissal of Plaintiff's Second Amended Complaint." (*Id.*) Second, Defendants contend "Plaintiffs' [Second] Amended Complaint should be dismissed because Plaintiffs fail to set forth a prima facie case of disparate impact and the binding authority in this jurisdiction previously rejected Plaintiffs' allegations with respect to same." (*Id.* at 7.) The Court addresses each argument in turn.

#### A.   Ripeness

Defendants maintain Plaintiffs' claims are not ripe. (ECF No. 100-1 at 10.) Specifically, Defendants argue the Municipal Land Use Ordinances ("MLUO") require development

applications to be submitted to a zoning officer, who is required to refer development applications to municipal agencies, and Plaintiffs have failed to follow this procedure. (*Id.* at 10–11.) According to Defendants, Plaintiffs' rezoning requests have not amounted to formal development applications, no final decision has been issued with respect to any rezoning requests, and there is no indication that future proceedings will be undermined or rendered futile. (*Id.* at 14, 17.)

In opposition, Plaintiffs assert Defendants' ripeness analysis is only appropriate for "reasonable accommodation claims, or similar 'as-applied' challenges," not for the facial challenge of a disparate impact claim. (ECF No. 101 at 12–13, 19.) Similarly, Plaintiffs contend the MLUO requirements do not pose an obstacle "when the issue in dispute concerns the zoning ordinances on their face, rather than a specific board action." (*Id.* at 18.) In reply, Defendants maintain Plaintiffs have disguised a reasonable accommodation claim as a disparate impact claim in order to escape a ripeness analysis. (ECF No. 102 at 8.)

Generally, "facial challenges to regulation are . . . ripe the moment the challenged regulation . . . is passed" into law. *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 736 n.10 (1997) (citations omitted). As such, a facial challenge to a zoning ordinance is ripe, even if a final decision has not been issued. *Cnty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006) (sustaining a facial challenge to a zoning ordinance under the Equal Protection Act); *see also Lapid Ventures, LLC v. Twp. of Piscataway*, No. 10-6219, 2011 WL 2429314, at *6 (D.N.J. June 13, 2011) (sustaining a facial challenge a to zoning ordinance under the FHA, RA, and ADA). Moreover, "disparate impact claims are properly categorized as facial challenges" under the law. *Hansen Found., Inc. v. City of Atl. City*, 504 F. Supp. 3d 327, 335 (D.N.J. 2020).

Here, the Second Amended Complaint repeatedly alleges "disparate impact" (ECF No. 94 ¶¶ 22, 24, 45, 148, 160, 167, 169, 171, 196), as well as "discriminatory impact" (*id.* ¶ 7), "adverse

impact" (*id.* ¶ 159), and "impact" in general (*id.* ¶¶ 165, 168, 197). Although the Second Amended Complaint also assures that "the Facility will reasonably accommodate housing for elderly, handicapped persons" in residential areas (*id.* ¶ 98), and that "rezoning to accommodate a fair share housing requirement is not illegal" in New Jersey (*id.* ¶ 118), the crux of the allegations amounts to a facial challenge rather than a reasonable accommodation claim or as-applied challenge. Accordingly, the matter is ripe for adjudication.

### B.     Disparate Impact

Defendants argue that Plaintiffs fail to plead disparate impact because the Second Amended Complaint contains no "statistical analysis" of causal connections and no "evidence demonstrating a pattern" of denied variances. (ECF No. 100-1 at 21.) According to Defendants, in the industrial zone where Plaintiffs' assisted-living facility is allowed, residential housing is not excluded, and other assisted-living facilities and multi-residential units exist. (*Id.* at 22–23.) Likewise, an assisted-living facility exists in the residential zones where variances have also been granted for schools and other organizations. (*Id.* at 23.) Additionally, Defendants assert Plaintiffs do not allege "any discriminatory motive or animus" and that the "desire to preserve the integrity of [Englewood's] single-family residential zone should be given deference" by the Court. (*Id.* at 24, 26.)

In opposition, Plaintiffs contend disparate impact allegations do not require statistics. (ECF No. 101 at 22.) Similarly, Plaintiffs maintain they "need not show discriminatory intent or motive under a disparate impact theory" and that "a legitimate non-discriminatory reason for an action, is not appropriately raised at the motion to dismiss stage." (*Id.* at 23–24.) In reply, Defendants argue

8

that "Plaintiffs simply parrot the elements of a cause of action for disparate impact and do not set forth any facts or evidence supporting these allegations." (ECF No. 102 at 12.)

       1.  <u>Violations of the FHA</u>

Under the FHA, it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap[.]" 42 U.S.C. § 3604(f)(2). Plaintiffs may bring both "(1) intentional discrimination claims (also called disparate treatment claims) and (2) disparate impact claims" pursuant to this provision. *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005). Unlike intentional discrimination, a *prima facie* case of disparate impact may be brought "without proof of discriminatory intent." *Arc of New Jersey, Inc. v. State of N.J.*, 950 F. Supp. 637, 643 (D.N.J. 1996); *see also Bryan v. Gov't of Virgin Islands*, 916 F.3d 242, 247 (3d Cir. 2019) ("Disparate impact claims do not require proof of discriminatory motive like disparate treatment claims"). However, "to make a prima facie case of disparate impact under the FHA[], the plaintiff must show that the [defendant's] action had a greater adverse impact on the protected group (in this case the elderly handicapped) than on others." *Lapid-Laurel v. Zoning Bd. of Adjustment of the Twp. of Scotch Plains*, 284 F.3d 442, 466–67 (3d Cir. 2002).

Here, Plaintiffs' allegations show that Defendants' zoning ordinance code has a greater adverse impact on the elderly handicapped, including some who practice Orthodox Judaism, than on others. For example, Plaintiffs allege that Defendants' zoning ordinance code only allows assisted-living facilities to be located on land assigned the industrial "RIM" designation, not on land assigned the residential "R-AAA" designation "or any other residential category." (ECF No. 94 ¶ 33.) Plaintiffs also allege that no Orthodox Jewish synagogues are located in any industrial district and that, on Shabbat and the high holy days, Orthodox Jews in the assisted-living facility

9

will be prevented from receiving religious items or food, leaving with and carrying canes or medication, or communicating with family or community members. (*Id.* ¶¶ 49, 55–57.) According to Plaintiffs, assisted-living facilities can only be located in a residential district if Defendants' zoning ordinance code is modified or if applicants seek variances. (*Id.* ¶¶ 39–40.) Plaintiffs insist that numerous variances would have to be sought, that the absence of guiding standards would render the process nearly impossible, and that the undertaking would be lengthy, uncertain, and futile.  (*Id.* ¶¶ 40–42, 44, 109–10, 115–16.) Plainly, these allegations are sufficient to plead disparate impact.

      The cases cited by Defendants do not show that statistics are necessary to plead disparate impact or that Plaintiffs' allegations are otherwise insufficient. In *Mt. Holly Gardens Citizens in Action, Inc.*, the Third Circuit reversed a grant of summary judgment and held that "[n]o single test controls in measuring disparate impact," even if statistical evidence provides a typical avenue for relief. 658 F.3d 375, 382 (3d Cir. 2011) (citations omitted). Likewise, in *Lapid-Laurel*, the Third Circuit affirmed a grant of summary judgment because it found that there was not "*any* evidence" of disparate impact, whether in the form of statistics or other forms of proof. 284 F.3d at 467–68 (emphasis added). *Hansen* also involved a grant of summary judgment, and the district court found that statistical evidence of "relative levels of poverty . . . in different zoning districts" was immaterial because it did not demonstrate disparate impact upon individuals recovering from addiction, but merely concerned "justifications" for the alleged discrimination. 504 F.Supp.3d at 339. Similarly, *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.* involved a reversal of a grant of summary judgment, and the Supreme Court held that "a decision to build low-income housing in a blighted inner-city neighborhood instead of a suburb" was not necessarily discriminatory, as "statistical evidence demonstrating a causal connection" to the

10

alleged disparate impact was required. 576 U.S. 519, 542–43 (2015).[3] At most, these cases show that statistics represent one of many methods to establish disparate impact at summary judgment, that any statistical evidence must be material, and that the evidence must also demonstrate causality. These cases do not show that statistical analysis is required to state a claim at the pleading stage.[4]

Accordingly, the motion to dismiss Count I for violations of the FHA is **DENIED**.

2. Violations of the RA and ADA

Defendants incorporate disparate impact arguments, not only into the cause of action for FHA violations, but also into the causes of action for RA and ADA violations. (ECF No. 100-1 at 26, 28.) Moreover, Defendants assert Plaintiffs are not qualified individuals with disabilities under the ADA. (*Id.* at 26.) Separately, Defendants contend prospective residents of the assisted-living facility are not covered by the ADA because zoning ordinances are not public services, programs, or activities within the meaning of the statute. (*Id.* at 27 n.2.)

In opposition, Plaintiffs maintain Defendants' analysis "is contravened by the plain terms of the ADA and its implementing regulations." (ECF No. 101 at 25.) Specifically, Plaintiffs argue the implementing regulations extend the statute to entities associated with disabled persons, such

---

[3] In *Inclusive Communities*, the Supreme Court held that "a disparate-impact claim that relies on statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity." 576 U.S. at 542. So too, in *Smith v. City of Jackson, Miss.*, the Supreme Court affirmed a grant of summary judgment where the plaintiff could not point to a specific policy of the defendant that caused a disparate impact, but could only "point to a generalized policy that le[d] to such an impact." 544 U.S. 228, 241 (2005).

[4] Although *Bida v. Shuster Mgmt. LLC* involved a motion to dismiss, the district court granted dismissal because the plaintiff had not "factually alleged a discriminatory effect" and "relie[d] primarily on conclusory statements about the hypothetical effect" of defendant's policy. No. 18-10975, 2019 WL 1198960, at *5 (D.N.J. Mar. 14, 2019).

organizations that manage assisted-living facilities. (*Id.*) Additionally, Plaintiffs assert that "zoning constitutes a 'service' covered by the ADA." (*Id.* at 26 n.9.)

Under the RA, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability . . . be denied the benefits of, or be subjected to discrimination under[,] any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). Likewise, under the ADA, "no qualified individual with a disability shall, by reason of such disability . . . be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Courts in the Third Circuit "analyze the two provisions together." *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 302 (3d Cir. 2007). Moreover, "courts have concluded that the FHA[] analysis can be applied to ADA and [RA] claims as well in such cases where claims are brought under all three statutes." *Yates Real Estate, Inc. v. Plainfield Zoning Bd. of Adjustment*, 404 F. Supp. 3d 889, 914 (D.N.J. 2019) (citations omitted).

Here, claims are brought under the FHA, RA, and ADA, so the FHA analysis applies to the RA and ADA claims, and Plaintiffs' allegations are sufficient. In other words, for the same reasons that Plaintiffs adequately pleaded disparate impact with respect to the FHA (*see supra* Section III.B.1), Plaintiffs state a claim for relief under the RA and ADA.

The case cited by Defendants does not alter the calculus. In *Kessler Inst. for Rehab. v. Mayor of Essex Fells*, the district court found that "[a] zoning amendment . . . is not a public service, program, or activity" within the meaning of the ADA. 876 F. Supp. 641, 655 (D.N.J. 1995). Additionally, the court found that "an entity that serves the disabled[] does not fall within [the] definition" of a qualified individual under the statute. *Id.* at 653. However, courts in this district have regularly applied the ADA to disparate treatment claims involving zoning ordinances,

*see, e.g.*, *Hansen*, 504 F. Supp. 3d at 338, and the enforcement provisions of the ADA and the RA empower "any person alleging discrimination on the basis of disability" and "any person aggrieved" to secure relief, 42 U.S.C. § 12133; 29 U.S.C. § 794a(2). Moreover, the implementing regulations clarify that the ADA prohibits discrimination against an "entity because of the known disability of an individual with whom the . . . entity is known to have a relationship or association." 28 C.F.R. § 35.130(g). In this case, Plaintiffs are known to have an association with disabled individuals through operation of assisted-living facilities, so the ADA prohibition applies. *See Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 405–06 (3d Cir. 2005) (finding that drug-treatment facility operator had "association" with disabled individuals pursuant to ADA implementing regulations).

Accordingly, the motion to dismiss Count II for violations of the ADA and Count III for violations of the RA is **DENIED**.

### 3. Violations of the Equal Protection Act

Defendants contend Plaintiffs cannot plead violations of the Equal Protection Act because a similarly situated entity is not included in the allegations, and the "desire to preserve a single-family residential zone should not be disturbed, particularly when [Englewood] provides numerous other zones in which Plaintiffs' proposed facility may be built." (ECF No. 100-1 at 29.) In opposition, Plaintiffs argue that the allegations include ample information because "[t]he Second Amended Complaint makes clear that tens of thousands of residents are free to live in any of [Englewood's] twenty-four districts" and that "handicapped individuals, in contrast, are confined to just one [district]." (ECF No. 101 at 27.)

The Equal Protection Act prohibits the subjection of others, under color of law, to "the deprivation of any rights, privileges, or immunities secured by the Constitution" of the United

States. 42 U.S.C. § 1983. The Fourteenth Amendment to the Constitution, in turn, provides that no state can "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. To establish that a zoning ordinance denies equal protection, a plaintiff must show that it "is similarly situated to other uses that are either permitted as of right, or by special permit," and "[if] the entities are similarly situated, then the [defendant] must justify its different treatment . . . by demonstrating that the ordinance is rationally related to a legitimate government purpose." *Cnty. Concrete*, 442 F.3d at 171 (citations omitted). The same standard applies if the zoning ordinance subjects assisted-living facilities to different treatment, as "age classifications receive only rational basis review" under the Fourteenth Amendment, *Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 109 (3d Cir. 2014), and "the disabled are not a suspect class" for equal protection purposes, *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 (3d Cir. 2007). Although defendants need only satisfy the lowest level of scrutiny, "plaintiffs must prove the existence of purposeful discrimination." *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009) (citations omitted). Therefore, "[d]isproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination forbidden by the Constitution." *Washington v. Davis*, 426 U.S. 229, 242 (1976). In other words, "[p]roof of disparate impact alone . . . is not sufficient to succeed on an equal protection claim; a plaintiff also must prove that the defendant intended to discriminate." *Davis v. New Jersey Dep't of Corr.*, No. 17-6898, 2018 WL 4179462, at *7 (D.N.J. Aug. 31, 2018).

Here, Plaintiffs adequately plead disparate impact, but the Second Amended Complaint does not contain sufficient allegations regarding Defendants' intent to discriminate. At most, Plaintiffs offer the conclusory allegation that Defendants "intentionally" undertook conduct in violation of the FHA (ECF No. 94 ¶ 172), and the overarching theory underlying the Second

14

Amended Complaint sounds in disparate impact, not disparate treatment (*see supra* Section III.A). While Plaintiffs also offer the conclusory allegation that "Defendants have no legitimate governmental purpose for their divergent treatment of the handicapped" (*id.* ¶ 199), the Third Circuit held that "the building size or the commercial character of the development" could have been a reason for any disparate treatment in this matter, *431 E. Palisade Ave.*, 977 F.3d at 286–87, and Plaintiffs appear to acknowledge the legitimacy of "protecting single family character" in Englewood (ECF No. 94 ¶ 69). Moreover, the Third Circuit has repeatedly employed rational basis review to affirm dismissals of equal protection claims at the pleading stage. *See, e.g.*, *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 216–17 (3d Cir. 2013); *Ramsgate Court Townhome Ass'n v. W. Chester Borough*, 313 F.3d 157, 160 (3d Cir. 2002). Even if Plaintiffs allege religious discrimination, which is subject to "heightened scrutiny" that "must be met *after* [the] Motion to Dismiss" is decided, *Hassan v. City of New York*, 804 F.3d 277, 306 (3d Cir. 2015), Plaintiffs' failure to allege discriminatory intent is fatal to their equal protection claim. Additionally, the "conclusory allegations" in the Second Amended Complaint do not "offer any facts demonstrating how [other] properties were similarly situated." *Cnty. Concrete*, 442 F.3d at 171.

Accordingly, the motion to dismiss Count IV for violations of the Equal Protection Act is **GRANTED**.

IV. **CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 100) Plaintiffs' Second Amended Complaint (ECF No. 94) is **GRANTED IN PART** and **DENIED IN PART**. Defendants' Motion to Dismiss is **GRANTED** as to Count IV and that claim is **DISMISSED**

**WITHOUT PREJUDICE**. Defendants' Motion to Dismiss is **DENIED** as to Counts I, II, and III.

An appropriate order follows.

                                              */s/ Brian R. Martinotti*
                                              **HON. BRIAN R. MARTINOTTI**
                                              UNITED STATES DISTRICT JUDGE

Dated: September 19, 2023